# Exhibit A

"Notice of Verified Claim for Relief and Money Demand"

April 17, 2020

(No response from the respondents)

Certified Mail No.: *7018 2290 0001 9490 5092*

## NOTICE OF VERIFIED CLAIM FOR RELIEF AND MONEY DEMAND
### Claim No.: EDM-08211975-E10673-LVLD

PARTIES

TORTFEASOR(S)/OFFEREE:
CITY OF LOVELAND
c/o Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
    Loveland, CO 80537
      and
c/o Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
    Loveland, CO 80537

CLAIMANTS/OFFEROR:
Eyoel-Dawit: Matios, in sui juris Capacity,
A living man with common law rights
 c/o 3400 Stanford road, unit #B213
c/o Fort Collins, Colo. Republic near [80525]
      Non-Domestic/Non-Assumpsit
      united States of America

April *17*, 2020

Attention: Stephen C. Adams, City Manager and
         Emilie Loomis, Assistant City Attorney,

      This is a **Self-Executing Contract Agreement Fee Schedule Upon Contact of Public Servant** (Good Faith Ecclesiastical Notice of Introduction for All Jurisdictions). Eyoel-Dawit: Matios (hereinafter "Claimant"), hereby submits this **Notice of Verified Claim for Relief and Money Demand** in the nature of exhausting the Claimant's Private Administrative Process for remedy from the City of Loveland, and agent(s) to include the Magistrate, Assistant City Attorney, and Police Officer hereinafter "Tortfeasor(s)", within their respective offices pursuant to the Constitution of the United States of America Amendment I, Petition for Redress of Grievance, Amendment IX, reservation for resolution and equitable settlement under necessity, Constitution of the state of Colorado Article II section 24, common law Arbitrations, Arbitrations under the FAA Chapter 1 & Chapter 2 (9 U.S.C Title 9 — ARBITRATION), the Tucker Act, 2nd Restatement of Law, Contracts, Torts, Trusts, and pursuant to Title 4 Colorado Revised Statutes (UCC). Claimant offers the following factual and legal argument as grounds therefore:

### ARTICLE I.   STATEMENT OF CLAIMS AND DAMAGES

1.1    Claimant asserts damage claims grounded in theory of common-law, tort, equity, contract, and fraud from the tortious and criminal conduct of the tortfeasors referred to

herein by this notice. The unlawful conduct of the tortfeasors arising from, the above referenced case/cause/citation beginning with the traffic stop/citation of Claimant By the City of Loveland Police Officer Dylan Copello (agent), also includes numerous violations of Claimant's constitutional, Inalienable, and statutory rights; among which are as follows, without limitation or exclusion, and without regard to priority:

Identity theft of Claimant's Common-law Copyright Name; and,
Invasion of Privacy by using Claimant's Likeness and Name; and,
False Imprisonment by unlawful detainment without warrant; and,
Fraud by Concealment, Deception, and Fraud In Fact to obtain property; and,
Conspiracy in Violation of the Colorado Organized Crime Control Act; and,
Conversion of Claimant's Right to use the Public Right-of-Way into an Unlawful property claim by extortion of fees and fines for his Lawful access use; and,
Civil Conspiracy to Deprive Claimant of the Right to Use the Public Right-of-Way.

1.2    In addition to the above violations, <u>ALL</u> parties participating/involved did commit constitutional impermissible acts, and misapplication of statute/law have occurred;   <u>ALL</u> parties participating/involved did NOT establish upon the face of the court's record its jurisdiction in accordance with and pursuant to due process of law or the law of the land; The Claimant was NOT accorded proper and valid process and service therein; and, The court's jurisdiction therein as to both in personam jurisdiction and subject-matter jurisdiction wherein the court acquires/obtains its authority to act and enter/render valid enforceable judgments, orders and thereby was NOT complete and was and is fatally flawed. ALL proceedings and processes ensuing therefrom are NOT lawful, NOT proper, NOT valid, NOT constitutional, and thereby; and therein, procedurally and legally void and unenforceable.

1.3    As is set forth fully herein, incorporated by reference, the CITY OF LOVELAND municipal corporation derives its authority from the Colorado Constitution, subject to acting Lawfully within the bounds of the United States and Colorado Constitutions, and abiding by federal and state law; that agents, employees and officers of the CITY OF LOVELAND can subject the municipality to vicarious liability under theory of *respondeat superior* for Torts, and being subject to strict liability when acting in violation of the Law. Claimant has set forth in particular facts and citations of legal authority, which support his Damage Claims that, The CITY OF LOVELAND, through agent(s) acting under 'color of law' committed numerous Crimes and Torts, and violated the constitutional, Inalienable, and statutory Rights of Claimant in the course of conduct throughout the proceedings attempting to assert and unlawfully collect financial and other compensation based upon fraudulent claims against Claimant and his Person. As set forth fully herein, and incorporated by reference to Undisputed facts, evidence and Law, the CITY OF

LOVELAND, committed the following Crimes, Torts, and violations of Claimant's Constitutional, Inalienable and Statutory Rights:

## COLORADO TORTS

a) Abuse of legal process by using illegal means and unlawful intent;
b) Civil Conspiracy to deprive Claimant of property right to travel, money;
c) Colorado Organized Crime Control Act relief: See, C.R.S. § 18-17-106(7);
d) Conversion of property; converting Claimant's Right into licensed privilege;
e) False Imprisonment by unlawful detainment of Claimant without warrant;
f) Fraud by Concealment, Deception, and In Fact to unlawfully obtain property;
g) Interference with Contractual Relationship between Claimant and his Person;
h) Invasion of Privacy by use of Claimant's Name without permission;
i) Unjust Enrichment by Unlawful extorting fines, fees, and taxes from Claimant.

## FEDERAL CONSTITUTIONAL RIGHTS VIOLATIONS

a) The 4th Amendment to the U.S. Constitution (unwarranted seizure)
b) The 5th Amendment to the U.S. Constitution (property taken for public use)
c) The 7th Amendment to the U.S. Constitution (denial of the right to civil jury)
d) The 14th Amendment to the U.S. Constitution, (due process, equal protection)

## COLORADO CONSTITUTIONAL RIGHTS VIOLATIONS

a) Article II, Section 6 to the Colorado Constitution, (denial of justice / rights)
b) Article II, Section 7 to the Colorado Constitution, (unlawful seizure)
c) Article II, Section 14 to the Colorado Constitution, (property taken private use)
d) Article II, Section 15 to the Colorado Constitution, (property taken public use)
e) Article II, Section 24 to the Colorado Constitution (right to petition)
f) Article II, Section 25 to the Colorado Constitution (due process)

## COLORADO CRIMES

a) C.R.S. § 18-2-201. - Conspiracy, a class six felony,
b) C.R.S. § 18-2-301. - Criminal solicitation, a class five felony,
c) C.R.S. § 18-3-207. - Extortion, a class four felony,
d) C.R.S. § 18-5-102. - Forgery, a class five felony,
e) C.R.S. § 18-5-113. - Criminal impersonation, a class six felony,
f) C.R.S. § 18-5-114. - Offering a false instrument for recording, a class 5 felony,
g) C.R.S. § 18-8-113. - Impersonating a public servant,
h) C.R.S. § 18-8-406. - Issuing a false certificate, a class six felony,
i) C.R.S. § 18-11-101. - Treason, a class one felony,
j) C.R.S. § 18-17-104. - Colorado Organized Crime Control Act;

**FEDERAL CRIMES**

a) 18 U.S. Code § 241 – Conspiracy against Constitutional Rights – 10 years
b) 18 U.S. Code § 242 – Violation of Civil Rights under color of law – 1 year
c) 18 U.S. Code § 1341 – Frauds and swindles – 20 years imprisonment
d) 18 U.S. Code § 1342 – Fictious name or address – 5 years imprisonment
e) 18 U.S. Code § 1349 – Attempt and Conspiracy – 20 years imprisonment

## ARTICLE II.  SUMMARY OF CLAIMS AND DAMAGES

2.1     As set forth herein, supported by undisputed facts and evidence incorporated by reference, the CITY OF LOVELAND, by and through Agent(s), acting under color of law, stole Claimant's Name to unlawfully assert a claim that Claimant does not have the Right to use the Public-Right-of-Way, and that agents of the CITY OF LOVELAND may collect assessment for use of the Public-Right-of-Way.   Claimant asserts that the 'CITY OF LOVELAND', converted his Private Right to use the Public-Right-of-Way into public property, without compensation or due process, in violation of numerous Laws.   Claimant asserts that Agent(s) by, for, and on behalf of the 'CITY OF LOVELAND' have committed numerous Crimes, Torts, and violations of Claimant's Rights in attempt to unlawfully coerce and extort payment from Claimant under 'color of law'; **presented in summary form for purposes of Notice and Simplicity by the following:**

2.2     On October 26, 2019, the Claimant was pulled over by Loveland Police Officer Dylan Copello at 5:40am, without a warrant and issued an unlawful demand for payment (Exhibit A, citation # E10673) as a Bill of Exchange, without probable cause (known to the common law) to believe that Claimant had engaged, or had engaged, in criminal conduct (in which the officer testified in trial to having no warrant and no crime being committed), was bound by contract, subject to regulation, or engaged in commercial activity by transporting passengers or cargo.  Officer Copello stopped, detained, and imprisoned the Claimant and required him to identify himself in violation of the Fourth Amendment - see Brown v. Texas, 443 U.S. 47, (1979).

2.3     On October 30, 2019, Claimant responded by objecting to the Bill of Exchange, refused to accept and returned without dishonor as Illegal, Unlawful, Unconscionable, and Void, supported by affidavit and numerous citations of Law.  Claimant filed with the Loveland Municipal Court Clerk and served a copy to the prosecutor, Notice of Abatement, Notice of Dispute, and a Notice of Rights.  (Exhibits B, E, and H)  The prosecutor did not respond to these Notices; instead, the municipal judge responded to the Notice of Abatement with a fraudulent Summons in the name of the "People of the City of Loveland", which demanded that either Claimant appear or pay $80, or the municipal judge would enter a default judgment and that a Hold would be placed on his "Driver License" until Claimant paid an assessment of $105, signed by Loveland Municipal Court Judge, Geri Joneson.

2.4    On November 25, 2019, Claimant filed with the Loveland Municipal Court Clerk and served a copy to the prosecutor, a Motion to Dismiss, as supported by affidavit, and separate Memorandum, and asserted a counterclaim by his Claim of Right of Way. (Exhibit F)

2.5    The prosecutor did not respond to the Motion to Dismiss or to his Memorandum and Claim of Right of Way; instead, the municipal judge denied the Motion to Dismiss; again asserting a fraudulent claim that she had authority to act for and on behalf of a fictious entity, "The People of the City of Loveland".  (Exhibit G) Notably, Claimant does not have any contractual obligations to "The People of the City of Loveland".

2.6    On December 6, 2019, Claimant filed with the Loveland Municipal Court Clerk and served a copy to the prosecutor, an Answer to Complaint, supported by affidavit (Exhibit H)  The prosecutor, on behalf of the CITY OF LOVELAND, has not disputed any of the facts that Claimant asserted in the notarized affidavits within his documents filed with the Loveland Court. Therefore, all allegations, and assertions of Fact and Law are considered accepted by silent admission and determined to be established as Fact and Law; which include but are not limited to:

a) Claimant is a Living Man, one of the sovereign people of Colorado, with Constitutional, Inalienable, and Statutory Rights, liable only for Common-law Claims, in Article III Courts; he is not an all-capital-letter fictitious Person, nor liable for any claims against the all-capital-letter fictitious Person; and,

b) Claimant is not a U.S. Agent, Employee, Officer, or Resident; and,

c) Claimant is a Citizen of the Colorado Republic, guaranteed a Republican form of Government, with elected and appointed Public Officials who are bound by an Oath of Office to uphold the U.S. and Colorado Constitutions, and Obey the Laws of Colorado and the United States; and,

d) Officer Copello and Judge Joneson hold office by their Oath; and,

e) Claimant requested proof that the CITY OF LOVELAND provide evidence that the CITY had authority or standing to assert any claims against him and that the CITY, by and through representative agents have bonds or insurance to indemnify the CITY against common-law, Civil, Criminal, or Tort claims; however, the CITY refused to provide such evidence; therefore, Claimant is entitled to presume that the CITY and its representative agents have no insurance or bonds, and that the CITY has no evidence of its claims against Claimant; and,

f) Other than his Verified Claim of Private Rights and Status that was filed with the Larimer County Recorder, Claimant is not bound by any other contract with the

CITY OF LOVELAND, the People of the State of Colorado, or any other public, political corporate entity; and,

g) Claimant was not involved in any Commercial Activity; Claimant was not using the Public Right-of-Way to transport passengers or cargo for hire; rather, he was exclusively exercising his Common-law, Inalienable Right to Use the Right-of-Way for personal reasons; and,

h) Claimant has established a Common-law Claim of Right to use the Public Right-of-Way for personal reasons; and,

i) The CITY OF LOVELAND, by and through representative agents acting in the name of the fictitious entity, "the People of the City of Loveland" has Converted his Right to use the Public Right-of-Way, and asserted an unlawful claim of assessment of monetary relief and denial of Claimant's Right to use the Public Right-of-Way for personal reasons.

2.7    The Municipal Court issued numerous fraudulent documents in the name of the fictitious entity "The People of the City of Loveland", including, the "Plea of Not Guilty and Request for Court Trial (Judge)", "Notice of Trial Rights and Procedure", and the "Notice of Trial Procedure and Order", and "Notice of Trial" forms.  (Exhibit I) In addition to the aforementioned "ORDER RE: NOTICE OF ABATEMENT".  (Exhibit C)

2.8    The Loveland Municipal Court Judge, Geri Joneson lacked Authority and subject matter Jurisdiction to enforce citation # E10673 as a Bill of Exchange, or as a claim of breach of contract under strict liability because these are commercial claims under the commerce clause; nor did Geri Joneson have authority or Jurisdiction to decide claims of equity or tort because these are issues reserved for judicial courts, and the Loveland Municipal Court is administrative; therefore, the only subject matter jurisdiction that the Loveland Municipal Court has is to abide by the U.S. and Colorado Constitutions and to enforce Common-law claims; however, there was no proof of injury, nor injured party in this case and the CITY did not prove standing, nor provide proof of personal jurisdiction over Claimant.  Therefore, any judgment or order is void and unenforceable.

2.9    Claimant filed with the Loveland Municipal Court Clerk and served a copy to the prosecutor, numerous supporting documents to establish his Claim of Rights including his Affidavit of Identity, Notice of Common-law Copyright, Certificate of Naturalization, and Conditional Acceptance for Value of the Social Security Number.  Also, Claimant provided the 'CITY OF LOVELAND' constructive Notice of his common-law and UCC Claims of Personal Property by providing the filing numbers of his Claims filed in the Larimer Clerk and Recorder's Office and with the Colorado Secretary of State; each of these documents assert Claims of Rights and provide for Compensation for violation of his Constitutional, Inalienable, and Statutory Rights.  Further, Claimant asserts that he is entitled to Compensation for Torts committed against him, as provided by statute.

## ARTICLE III. BILL OF PARTICULARS

3.1     As fully set forth within this **Notice of Verified Claims for Relief and Money Demand**, incorporated herein by reference to all undisputed verified statements of Fact contained herein and within **Article IV, the "Claimant Claims"**, and supported by the "**Memorandum of Law** in Support of Notice of Verified Claim for Relief and Money Demand, Claim # EDM-08211975-E10673-LVLD", **Claimant declares**:

3.2     THAT, Officer Copello lacked probable cause to believe that Claimant had committed a crime, and lacked a warrant or lawful summons to serve Claimant; thus, Officer Copello unlawfully detained Claimant; thereby he Violated Claimant's Constitutional, Inalienable, and Statutory Rights, and committed crimes and Torts mentioned above in Article I, section 1.3, including but not limited to:

      1)    Violation of Federal Constitutional Rights: a, b, and d, and,
      2)    Violation of State Constitutional Rights: a, b, c, d, e, and f, and,
      3)    Violation of Colorado Statutes: a, b, c, f, h, i, and j, and,
      4)    Violation of Federal Statutes: a, b, c, and e, and,
      5)    Torts: a, b, c, d, g, and h; AND,

3.3     THAT, The CITY OF LOVELAND, by and through representative Agents, Geri Joneson and Emilie Loomis, has committed crimes, torts, and violated Claimant's Constitutional, Inalienable, and Statutory Rights, mentioned above in Article I, section 1.3, including but not limited to:

      1)    Violation of Federal Constitutional Rights: a, b, c, and d, and,
      2)    Violation of State Constitutional Rights: a, b, c, d, e, and f, and,
      3)    Violation of Colorado Statutes: a, b, c, d, e, f, h, i, and j, and,
      4)    Violation of Federal Statutes: a, b, c, d, and e, and,
      5)    Torts: a, b, c, d, e, f, g, h, and I: and,

3.4     THAT, Claimant has included within his **Notice of Verified Claim of Rights and Status** that was filed with the Larimer County Clerk & Recorder office, a twenty-four (24) page document with Reception No: 20190078553, the Right to claim Compensation for Relief for Violations of his Inalienable Rights, including, but not limited to, the Right to Use the Public Right-of-Way, and asserted His Right to claim Statutory Compensation for Relief for Tort Claims; and,

3.5     THAT, Claimant asserts His Common-law Right to claim Compensation equal to that awarded in Trezevant v. City of Tampa, 741 F.2d 336, **for each** violation (weather 1.565 million per day from the start to the end of the violation or weather 1.565 million per each count of violation) of His Inalienable Rights, and the Right to claim Compensation for Violation of His Civil, Constitutional, Inalienable, and Statutory Rights,

as determined by Law, whether under theory of admiralty, common-law, contract, equity, maritime, or Tort according to His choice of Jurisdiction and Venue; and,

3.6     THAT, Claimant requests Relief pursuant to the Federal Arbitration Act; and,

3.7     NOW, THEREFORE, Claimant asserts His Right to Claim Compensation for Violations of His Rights according to Article III, Section 2, of the U.S. Constitution, Article II, Section 15 of the Colorado Constitution, and Colorado and U.S. Law, including, but not limited to: Titles 18, 28, and 42 of the U.S. Code, and C.R.S. Titles 4, 13, 18, and 24, as well as, Relief afforded under the Uniform Commercial Code, abiding by relevant legal precedent, and in accordance with applicable Procedural Rules, to be determined using the Damage Calculation **formulas** provided by the following:

A. **<u>Formula 'A'</u>**, Claimant asserts his Common-law Right to claim Compensation equal to that awarded by Congress in Private Law 114-31, extrapolating the calculation of damages awarded by the jury in Trezevant v City of Tampa, 741 F2d 336 (1984) of 25,000 dollars for 23 minutes (1,565,000 million dollars per day or 1,086 dollars  per minute) of unlawful detainment / false imprisonment.

   1. For the time Claimant was restrained in His movement, and was summoned to attend Loveland Municipal Court, the calculation of Damages totals 80 minutes times 1,086 dollars per minute; this is itemized as follows:

      Traffic stop 10 minutes, arraignment 30 minutes, Trial 40 minutes = 80 minutes 80 minutes times 1,086 dollars = **86,880** United States Dollars, payable as defined by Law in grains of silver.

   2. In addition, Claimant asserts His Common-law Right to claim Compensation equal to that awarded in Trezevant v. City of Tampa, 741 F.2d 336, **for each** violation **(weather 1.565 million per day from the start to the end of the violation or weather 1.565 million per each count of violation)** of His Inalienable Rights, and the Right to claim Compensation for Violation of His Civil, Constitutional, Inalienable, and Statutory Rights, as determined by Law, whether under theory of admiralty, common-law, contract, equity, maritime, or Tort according to His choice of Jurisdiction and Venue; violation of <u>Constitutional</u>, <u>Inalienable</u>, and <u>Statutory Rights:</u>

      a. Totaling of at 44 count times 1,565,000 million dollars equals the sum of **68,860,000** Million United States Dollars, payable as defined by Law in grains of silver.
         Or
      b. From the **start** of tortfeasor(s) violation(s) (traffic citation) on October 26, 2019 to the **end** of tortfeasor(s) violation March 2, 2020 equals 129 day(s) times 1,565,000 million dollars equals the sum of **201,885,000**

million United States Dollars, payable as defined by Law in grains of silver.

3. **Total of Formula 'A'** combined sum (86,880 + 68,860,00) equals to **68,946,880** Million United States Dollars, payable as defined by Law in grains of silver **Or** (86,880 + 201,885,000) equals to **201,971,880** Million United States Dollars, payable as defined by Law in grains of silver.

B. **Formula 'B'**, Tort damages are calculated to provide the maximum relief allowed by Colorado Law (Colorado Revised Statute Title 13-21-102.5(3)(a)).

1. This anticipates any punitive damage Compensation awarded by the Arbitrator; Claimant asserts that the Tortfeasors committed acts constituting 15 Torts time $250,000 for each Tort committed equals to **3,750,000** million United States Dollars, payable as defined by Law in grains of silver.

2. In addition, Claimant asserts the Right to an award of compensation for each violation of His Constitutional, Inalienable, and Statutory Rights under Tort Law, and compensation for each Violation of His Right to equal protection of the Law under the 14th Amendment. Applying **Formula 'B'** with a base of $250,000 for each Violation, totaling the count of <u>Constitutional</u>, <u>Inalienable</u>, and <u>Statutory Rights</u> Violations of at 44, the sum equals to **11,000,000** United States Dollars, payable as defined by Law in grains of silver.

3. **Total of Formula 'B'** combined sum (3,750,000 + 11,000,000) equals to **14,750,000** million United States Dollars, payable as defined by Law in grains of silver.

Claimant <u>requests</u> Compensation under the calculation Formula that provides the greatest relief.

In the event that the Tortfeasor(s) do not voluntarily comply with the arbitration award, Claimant <u>requests</u> arbitrator imposes punitive damages at a rate of 10 times the amount of actual damages, in addition to other remedies awarded, pursuant to Pacific Mut Life Ins. Co. v. Haslip, 499 US 1(1991). Also see UNITED STATES OF AMERICA v. DEMERIUS JERMAINE HAWKINS No. 2:06-cr-00012-IJWC-04, Arbitration Awarded (Sep 4, 2014)

Note: Claims that involve Violations of criminal statutes are deemed Violation of Claimant's Right to equal protection of the law under the 14th Amendment. Violations that simultaneously constitute crimes and Torts are also deemed violation of the equal protection clause. Violations of Claimant's Right to equal protection are calculated by assessment of Damages applying the valuation in Claimant's **Notice of Verified Claim of Rights and Status Article IX filed with the Larimer County Clerk & Recorder**

**Office, a twenty-four (24) page document with Reception No: 20190078553.** Each criminal violation is assessed individually as would be the case if criminal charges were brought and Claimant would be entitled to victim compensation. Award for violations of Claimant's Right to equal protection is founded upon the premise that Claimant is Entitled to equal Protection and Enforcement of the Law for criminal violations committed by public officials the same as public officials are entitled to equal protection and enforcement for criminal violations by others. Further, whereas the criminal violations of Claimant's Right to equal protection is evidenced by documentation, Claimant asserts that such evidence is both clear and convincing, and would be considered proof beyond a reasonable doubt in a criminal case.

## ARTICLE IV.    CLAIMANT CLAIMS

4.1     Claimant claims, he has/have not joined in the UNIFORM SUMMONS & COMPLAINT/CITATION #E10673 or PENALTY ASSESSMENT suit and will not join voluntarily.

4.2     Claimant claims, in order for a court; and specifically the alleged court of record within the above referenced alleged Case/Cause/Citation, to have the jurisdictional right/authority to decide/act in a matter brought before it, and therein proceed to issue/enter order(s), decision(s) judgment(s), and the like, said court does  have to acquire both in; personam jurisdiction and subject-matter jurisdiction over and in the parties and "thing" (res) involved in the matter/controversy. [See: Thomas M. Cooley, A Treatise on the Constitutional Limitations, Little, Brown & Co., Boston, 1883, p. 493, which states: "The proceedings in any court are void if it wants jurisdiction of the case in which it has <u>assumed</u> to act. Jurisdiction is, first, of the subject-matter; and, second, of the persons whose <u>rights are to be passed upon</u>."; 21 Am.Jur., Criminal Law, § 338, p. 558, which states: "To try a person for the commission of a crime, the trial court must have jurisdiction of both the subject-matter and the person of the defendant."] Both the subject-matter Jurisdiction and personam jurisdiction <u>is a must in all matters weather civil or criminal.</u>

4.3     Claimant claims, if a "named" party in a suit, action, proceeding, indictment, complaint, information, and the like; is absent from court, there does exist a want of jurisdiction over said "named" party, and the court; and specifically the alleged court of record within the above referenced alleged Case/Cause, <u>cannot proceed with the trial and all related proceedings.</u> [See: State v. Brown, 64 S.W.2d 841, 849 (Tenn. 1933), which states: "Personal jurisdiction, or the authority to judge a person, is primarily one of <u>venue or procedure</u>. Generally, if one is standing in a court, it has some degree of jurisdiction over the person. Thus, if one is named in suit, but is 'absent' from court by being either in prison or by escape, there is a want of jurisdiction over the person, and the Court cannot proceed with the trial."] <u>Claimant was threatened, intimidated, and coerced to make an appearance</u> by Officer Dylan Copello in person when given a citation and by the Magistrate Judge, Geri R. Joneson through

the U.S. mail informing the Claimant of how they intend to violate the Claimant if he failed to appear. Claimants appearance in the above case/cause/citation was not, has/have not and is not a voluntary consent.

4.4     Claimant claims, a courts' jurisdiction over the person "named' in a matter brought before it; and specifically as this relates to and bears upon the "named" alleged defendant within the above referenced alleged Case/Cause/Citation, is not and was not conferred upon the court by/through consent, waiver, pleading to the merits, and/or by the "named' party/defendant/person appearing through counsel. [See: Smith v. State, 148 S. 858, 860 (Ala. App. 1933); State v. Smith, 70 A.2d 175, 177, 7 N.J. Super. 85 (1949)]. Claimant appearance was under extreme duress.

4.5     Claimant claims, the subject-matter jurisdiction of the court, involves the actual thing involved in the controversy; e.g., property, money, tort or wrong one committed against another, a contract, marriage, bankruptcy, lien; or, the crime or public offense that is allegedly committed, subject-matter jurisdiction would not exist if the "thing" involved in the controversy does not, and never did exist. [See: Stilwell v. Markman, 10 P..2d 15, 16 (Kan. 1932), which states: "The subject-matter of a criminal offense is the crime itself. Subject-matter in its broadest sense means the cause; the object, the thing in dispute."; Black's Law Dictionary, Rev. 4th Ed., 1968, p. 53 at ACTUAL, which states: "Real; substantial; existing presently in act, having a valid objective [of/or having to do with a material object as distinguished from a mental concept; having actual existence of reality] existence [as opposed to artificial; e.g. corporations, L.L.C.s, franchises, ens legis entities existing only in contemplation of/or by force of law; i.e., in the mind only, a mental concept, and its "by-laws' which are; ipso facto, artificial laws of the artificial entity existing only in contemplation of/or by force of law, a mental concept] as opposed to that which is merely theoretical or possible... Something real, in opposition to constructive or speculative." NOTE: bracketed material added by the Claimant.]

4.6     Claimant claims, the courts subject-matter jurisdiction is dependent upon and acquired by the subject-matter; whether by constitutional grant or valid statute, and the subject-matter of a Case/Cause/Citation being the actual crime or verified contract or offense alleged/charged against the "named" defendant itself, a court does lack subject-matter jurisdiction if the crime/offense alleged/charged as a violation(s) of law(s) within and upon the face of the charging document/instrument thereof is/are invalid, void, and a nullity by reason the violations of law complained of are unconstitutional; or un-un/non-constitutional for lack/want of nexus (contract), and therefore non-existent and alleging/charging no crime/offense. [See: Brown v. State, 37 N.E.2d 73, 77 (Ind. 1941), which states: "Jurisdiction over the subject matter of action is essential to power of court to act, and is conferred only by constitution or by valid statute."

4.7     Claimant claims, a law which is invalid and void for being <u>unconstitutional; or un-
un/non-constitutional for lack/want of nexus (contract)</u>, does fail in creating and
establishing a subject-matter within which a court and the alleged court of record can
exercise jurisdiction due to said alleged statute/law failing to create and establish an
actual crime/contract; or thing (res), which is itself the subject-matter of a criminal
(civil) proceeding. [See: 22 C.J.S., Criminal Law, § 157, p. 189, citing: People v.
Katrinak, 185 Cal.Rptr. 869, 136 Cal.App.2d 145 (1982), which states: "If a criminal
statute is unconstitutional, the court lacks subject-matter jurisdiction and cannot
proceed to try the case."

4.8     Claimant claims, a law that is unconstitutional; or a un/non-constitutional law
employed/used without nexus (contract) between the authority and the, a Private
Citizen, alleged to be bound thereby, is void and, a conviction under such cannot be
a lawful/legal cause of imprisonment and or even sanction; and, a conviction and
imprisonment imposed/ordered therein under such law is void [See: Kelley v. Meyers,
263 P. 903, 905 (Ore. 1928), which states: "If these sections are unconstitutional, the
law is void and an offense created by them is not a crime and a conviction under them
cannot be a legal cause of imprisonment, for no court can acquire jurisdiction to try a
person for acts which are made criminal only by an unconstitutional law."; State v.
Christensen, 329 N.W.2d 382, 383, 110 Wis.2d 538 (1983), which states: "Where the
offense charged does not exist, the trial court lacks jurisdiction."; cf. State ex rel.
Hansen v. Rigg, 104 N.W.2d 553, 258 Minn. 388 (1960)]

4.9     Claimant claims, subject-matter jurisdiction is the most critical aspect of the courts
authority to act, and cannot be waived, nor be conferred by consent, and can be
challenged/objected to at any time, even after judgment for the first time; and, there is
nothing that Claimant can do, or fail to do, which would cause the issue of subject-
matter jurisdiction to be lost, not even a guilty plea or verdict in the civil/criminal
proceeding (or alleged civil/criminal proceeding); which, is only a record admission to
whatever is well alleged in the indictment. [See:  Singleton v. Commonwealth, 208
S.W.2d 325, 327, 306 Ky. 454 (1948), which states: "The law creates courts and
defines their powers. Consent cannot authorize a judge to do what the law has not
given him the power to do."; cf. Brown v. State, 37 N.E.2d 73, 77 (Ind. 1941); 21
Am.Jur.2d, Criminal Law, § 339, p. 589, which states: "Jurisdiction of the subject
matter is derived from the law.  It can neither be waived nor conferred by consent of
the accused.  Objection to the court over the subject matter may be argued at any
stage of the proceedings, and the right to make such an objection is never waived.";
cf. Harris v. State, 82 A.2d 387, 389, 46 Del. 111 (1950); Matter of Green, 313 S.E.2d
193, 195 (N.C.App. 1984), which states: "It is elementary that the jurisdiction of the
court over the subject-matter of the action is the most critical aspect of the court's
authority to act. Without it, the court lacks any power to proceed; therefore, a defense
based upon this lack cannot be waived and may be asserted at any time. Accordingly,
the appellant may raise the issue of jurisdiction over the matter for the first time on
appeal although they initially failed to raise the issue before the trial court."; cf. Monaco

v. Carey Canadian Mines, Ltd., 514 F.Supp. 357 (D.C. PA 1981); Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531 (1970); Athens Community Hosp., Inc. v. Schweiker, 686 F.2d 989 (1982); Edwards on Behalf of Nagel v. Department of the Army, 545 F.Supp. 328 (1982); Zenith Radio Corp. v. Matsushita Elec. Indus. Co, Ltd., 494 F.Supp. 1161 (D.C.PA 1980); Basso v. Utah Power & Light Co., 494 F.2d 906, 910; Hill Top Developers v. Holiday Pines Service Corp., 478 So.2d 368 (Fla.2d DCA 1985); People v. McCarty, 445 N.E.2d 298, 304, 94 Ill.2d 28 (1983), (cases cited), which states: "Subject matter jurisdiction cannot be conferred by a guilty plea if it does not otherwise exist.... The guilty plea or verdict must confess some punishable offense to form the basis of a sentence.  The effect of a plea or verdict of guilty is a record admission of whatever is well alleged in the indictment.  If the latter is insufficient the plea or verdict confesses nothing."]

4.10   Claimant claims, the "presiding judge" within the above referenced alleged Case/Citation was acting therein without having "perfected titled" to her office; and, thereby; and therein, was  "trespassing upon title" to said "office"; and, thereby; and therein, was  "usurping" the right of and right to exercise/use (falsely holding out possession coupled with use) the "plenary powers" resident within said "office;" and, did not possess lawful title to said "office", and the right of and right to exercise/use of said powers; and, was  therefore acting under "color-of-law," "False Personation," "False Pretenses," "Usurpation," "Fraud," "Deceptive and Fraudulent Business Practices," and operating alone; or in concert, a "Confidence Game"; and, did thereby; and therein, commit <u>"constitutional impermissible acts"</u>; or, <u>"ultra vires" acts</u>; or, <u>"illegal" acts</u> upon; and against, the Claimant within the above referenced alleged Case/Cause/Citation; and, all decisions, orders, and the judgment entered/rendered within said Case/Citation are not valid, not enforceable, and of nonbinding force or effect.

NOTE: Response rebutting this Claim will require the Tortfeasor(s)to provide "CERTIFIED" true, correct, and complete copies of those documents and "Credentials" which Tortfeasor(s)may be relying on to support any and all claims that Tortfeasor(s)brings forth to include but not limited to Oath(s) of office, <u>bonding</u> of the "presiding judge" within the above referenced alleged Case/Cause/Citation.

4.11   Claimant claims, a "void judgment" is an absolute and complete nullity from the beginning (ab initio) even before reversal; and, acts performed under it are also nullities; and, it is not a judgment at all; and, is not entitled to any respect whatsoever, as it does not affect, impair, or create legal rights; and, is mere <u>waste paper</u>; and, it does not have binding force or effect; and, does not bind anybody or anyone; and, is not good anywhere; and, is bad everywhere; and, is not capable therefore of enforcement in any manner or to any degree. [See: Ex parte Seidel, 39 S.W.2d 221, 225 (Tex. 2001); Ex parte Williams, No. 73,845 (Tex. 2001); Ex parte Spaulding, 687 S.W.2d 745; Ex parte Myers, 121 Neb. 56, 236 N.W. 143, 144; Billy Dunklin v. A.J. Land, et ux., 297 S.W.2d 360 (1956); Williamson v. Berry, 8 How. 945, 12 L. Ed.

1170, 1189, (1850); Commander v. Bryan, 123 S.W.App 1008 (Tex.Civ.App. 1938); Maury v. Turner, 244 S.W. 809 (Tex.Civ.App. 1922); Reynolds v. Volunteer State Life Ins. Co., 80 S.W.2d 1087, 1092 (Tex.Civ.App. 1935);  Gentry v. Texas Department of Public Safety, 379 S.W.2d 114, 119, (Tex.Civ.App. 1964);  Luben v. Selective Service System Local Bd. No. 27 et al., 453 F.2d 645, 649, 14 A.L.R. Fed. 298; 15 Fed.R.Serv.2d 865 (C.A. (Miss.) 1972); Hobbs v. US Office of Personal Management, F.Supp. 205, recons. den. 149 F.R.D. 147, afrmd. 29 F.2d 1145 (N.D. Ill. 1992); Ruben v. Johns, 109 F.R.D. 174 (D. Virgin Islands 1985); Loyd v. Director, Dept. of Public Safety, 480 So.2d 577 (Ala.Civ.App. 1985); Allcock v. Allcock, 437 N.E.2d 392 (Ill.App. 1982); In re Marriage of Parks, 630 N.E.2d 509 (Ill.App. 1994); Stidham v. Whelchel, 698 N.E.2d 1152 (Ind. 1998); City of Lufkin v. McVicker, 510 S.W.2d 141 (Tex.Civ.App. 1973);  Thompson v. Thompson, 238 S.W.2d 218 (Tex.Civ.App. 1951);  In re Marriage of Hampshire,  261 Kan. 854, 862, 934 P.2d 58 (1997); Black's Law Dictionary, Rev. 4th Ed. (1968), p. 1745 at "VOID JUDGMENT"]

4.12    Claimant claims, a "void judgments" can be attacked collaterally [See: Ex parte Williams, No. 73,845 (Tex.Civ.App. 2001); Ex parte Shields, 550 S.W.2d 675; Glunz v. Hernandez, 908 S.W.2d 253, 255 (Tex.App. 1995); Tidwell v. Tidwell, 604 S.W.2d 540, 542 (Tex.Civ.App. 1980); Billy Dunklin v. A.J. Land, et ux., 297 S.W.2d 360 (1956); Reynolds v. Volunteer State Life Ins. Co., 80 S.W. 2d 1087 (Tex.Civ.App. 1935); Gentry v. Texas Department of Public Safety, 379 S.W.2d 114, 119 (Tex.Civ.App. 1965); Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999); People v. Wade, 506 N.W.2d 954 (Ill. 1987); People v. Sales, 551 N.E.2d 1359 (Ill.App. 1990); People v. Rolland, 581 N.E.2d 907 (Ill.App 1991); City of Lufkin v. McVicker, 510 S.W.2d 141 (Tex.Civ.App. 1973); Irving v. Rodriquez, 169 N.E.2d 145 (Ill.App 1960); In re Estate of Steinfield, 630 N.E.2d 801; People ex rel. Brzica v. Village of Lake Barrington, 644 N.E.2d 66 (Ill. App. 1994); Sanchez v. Hester, 911 S.W.2d 173 (Tex.App. 1995); 46 Am.Jur.2d, Judgments, §25, pp. 388-389; John M. VanFleet, The Law of Collateral Attack on Judicial Proceedings, Callagham & Co., Chicago, 1892, p.25]

4.13    Claimant claims, this Notice of Verified Claim for Relief and Money Demand, Claim # EDM-08211975-E10673-LVLD, can be utilized/employed/used, and the like by the Claimant as a "collateral attack" against/upon; and in relation/regards to, a "void judgment" to "set the agreement" of the "parties"; i.e., the Tortfeasor(s) and the Claimant; specifically in application to/with the above referenced alleged Case/Cause/Citation, and thereby; and therein, avoid, defeat, evade, and deny the validity, lawfulness, procedural legality, enforceability, and force and effect of said judgment entered/rendered in said COMMERCIAL/Case/Cause/Citation and thereby; and therein, acquire "relief" and "remedy"  which includes "rights," and thereby; and therein, reassert a Right already violated to obtain relief through the "personal replevin" of the corpus, Liberty, and all property of the Claimant's un-lawfully (and illegally) taken, seized, detrained, and the like resulting from the "void judgment" of said court within said Case/Citation.

4.14   Claimant claims, the jurisdiction of the alleged court of record within the above referenced alleged Case/Cause/Citation, of the court; i.e., in personam and subject-matter jurisdiction, does have to be proven (not taken or assumed); and, all jurisdictional facts related to the jurisdiction asserted does have to be proven upon the record; and, once jurisdiction is raised, the burden does shift to the court; and specifically the alleged court of record within the above referenced Case/Cause/Citation, to prove jurisdiction; and, the court; and specifically the alleged court of record within the above referenced Case/Cause/Citation, does not have any discretion to ignore lack of jurisdiction; and, the court; and specifically the alleged court of record within the above referenced alleged Case/Cause/Citation, cannot proceed once jurisdiction is raised; and, the court; and specifically the alleged court of record within the above referenced alleged Case/Cause/Citation, does not have authority to reach merits, and should rather dismiss the cause of action; and, jurisdiction cannot be assumed, and does  have to be proven to exist and decided. [See: Melo v. U.S., 505 F.2d 1026; Joyce v. U.S., 474 F.2d 215; Rosemond v. Lambert, 469 F.2d 416; Lantana v. Hopper, 102 F.2d 188; Chicago v. New York, 37 F.Supp. 150; Stuck v. Medical Examiners, 94 Ca.2d 751, 211 P.2d 389; Maine v. Thiboutot, 100 S.Ct. 250; Hagans v. Lavine, 415 U.S. 533]

4.15   Claimant claims, the court does have the power and duty to vacate a "void judgment" and, relief from a "void judgment" is not a discretionary matter and is mandatory; and, principles of res judicata and the concomitant/subsequent consequences thereof will be applied to a "void judgment"; and, a "void judgment can be vacated any time." [See: Thomas, 906 S.W.2d 262; Harrison v. Whiteley, 6 S.W.2d 89 (Tex.Civ.App.); Neugent v. Neugent, 270 S.W.2d 223; Bridgham v. Moore, 143 Tex. 250, 183 S.W.2d 705, 707; Orner v. Shalala, 30 F.3d 1307, 1310 (C.A. 10 (Colo.) 1994), quoting V.T.A., Inc. v. Airco Inc., 597 F.2d 220, 224, n. 8 (C.A. 10 (Colo.) 1994); Athens Community Hospital, Inc. v. Schweiker, 686 F.2d 989 (1982), F.R.Civ.P., Rule 12(h); Hobbs v. U.S. Office of Personnel Management, 485 F.Supp. 456 (M.D.Fla. 1980); Rubin v. Jones, 109 F.R.D. 174 (D. Virgin Islands 1985); Loyd v. Director, Dept. of Public Safety, 480 So.2d 577 (Ala.Civ.App. 1985); Allcock v. Allcock, 437 N.E.2d 392 (Ill.App. 1982); In re Marriage of Parks, 630 N.E.2d 509, 122 Ill.App.3d 905, 909 (1984); Stidham v. Whelchel, 698 N.E.2d 1152 (Ind.1998); Graff v. Kelly, 814 P.2d 489 (Okl. 1991); In re Marriage of Hampshire, 261 Kan. 854, 862, 934 P.2d 50 (1997)]

4.16   Claimant claims, it is not necessary for one to take any steps to have a "void judgment" reversed/vacated/set aside. [See: Holder v. Scott, 396 S.W.2d 906 (Tex.Civ.App. 1965)]

4.17   Claimant claims, outside of dismissing the Case/Cause/Citation, the judgment of the alleged court of record within the above referenced alleged Case/Cause/Citation, is void as long as there is an arguable basis for subject-matter jurisdiction.  [See:

Kocher v. Dow Chemical Co., 132 F.2d 1225, 1230-1231; 39 Fed.R.Serv.3d 1148 (C.A. 8 (Minn. 1997)]

4.18   Claimant claims, all the "Order(s)" and "judgments" of a court and specifically the "Order(s)" and the   "judgments" of the alleged court of record within the above referenced alleged Case/Cause/Citation, is a form of "bond" - i.e., a negotiable instrument evidencing debt and then sold for raising revenue.

4.19   Claimant claims, the "test of jurisdiction" of a court is its right to decide, "Order(s)" and the "judgments" of a court; and specifically the order(s)/judgments of the alleged court of record within the above referenced Case/Cause/Citation, which had and has no jurisdiction at the time the judgment/order(s) was entered/rendered is therefore absolutely void and subject to defeat collaterally, as in this Notice of Verified Claim for Relief and Money Demand, Claim # EDM-08211975-E10673-LVLD [See: United States v. U.S. Fidelity & Guarantee Co., 24 F.Supp. 961, 966 (1938), which states: "The test of jurisdiction is the right to decide, not right decision.  Judgments/Order(s) of courts, which at the time the judgments/Order(s) were rendered had no jurisdiction, …are absolutely void, and may be attacked and defeated collaterally."; cf. 47 Am. Jur.2d, Judgments, §916]

4.20   Claimant claims, even if a "void judgment" is affirmed on appeal, it is not thereby rendered valid.  [See: Ralph v. Police Court of City of El Cerrito, 190 P.2d 632, 634, 84 Ca.App.2d 257 (1948)]

4.21   Claimant claims, when jurisdiction; i.e., in personam and or subject-matter jurisdiction, is lacking/wanting by a court; and specifically the alleged court of record within the above referenced alleged Case/Cause/Citation, the court does have to dismiss the cause of action; and, its neglect or refusal to do so is usurpation.  [See: Garcia v. Dial, 596 S.W.2d 524, 528 (Tex.Civ.App. 1980), which states: "Lack of jurisdiction and the improper exercise of jurisdiction are vitally different concepts. …Where the court is without jurisdiction it has no authority to render any judgment(s)/order(s) other than one of dismissal."; 22 C.J.S., Criminal Law, § 150, p.183, which states: "Jurisdiction is a fundamental prerequisite to a valid prosecution and conviction, and a usurpation thereof is a nullity."; Harrigan v. Gilchrist, 99 N.W. 909, 934, 121 Wis. 127 (1904), which states: "If [excessive exercise of authority] has reference to want of power over the subject matter, the judgment is void when challenged directly or collaterally.  If it has reference merely to the judicial method of the exercise of power, the result is binding upon the parties to the litigation until reversed … The former is usurpation; the latter error in judgment."; Voorhees v. The Bank of the United States, 35 U.S. 449, 474 (1836), which states: "The line which separates error in judgment from the usurpation of power is very definite."]

4.22   Claimant claims, the parties involved within the above referenced alleged Case/Cause/Citation; and, the Tortfeasor(s) d.b.a. "CITY OF LOVELAND",

"LOVELAND MUNICIPAL COURT", "Council-Manager Government Members", "the council", "the Manger", "Judge", "Assistant City Attorney", and "all employee(s)/agent(s) involved may not be in a "legal" sense immune from any claims that they are guilty of corruption due to their "proper" exercise of jurisdiction, this same immunity does not hold and shield said parties; and Tortfeasor(s), for their acts; whether of commission or omission, wherein they lack/want jurisdiction; perfection of title to "office," right to and right to exercise/use the "plenary powers" resident therein; and, in fact without Lawful/legal authority, once this lack/want of right/power/authority, and the like has been raised through Notice(s), Verified Motion(s), Objection(s) (written or verbal) and WARNING relating to and bearing upon the above referenced alleged Case/Cause/Citation, and said parties; or Tortfeasor(s), therein choose to ignore said Notice(s), Verified Motion(s), Objection(s) (written or verbal) and Warning, and <u>essentially proceed</u> as if the said order(s)/judgment(s) is valid <u>by refusing to perform their duty/obligation</u> to vacate said order(s)/judgment(s) upon agreement; whether expressed or tacit, with the Claimant that order(s)/judgment(s) is in fact VOID ab initio, unenforceable, and of no binding force or effect; and, would thereby establish and demonstrate Tortfeasor(s) failure to perform in accordance with; and pursuant to, the terms and conditions of their voluntary commercial indenture through failure to/of duty and obligation to vacate the judgment(s)/order(s) in the above referenced alleged COMMERCIAL/Case/Cause/Citation an "Order of Release" (termination statement) which would constitute and establish acts of "usurpation," and conspiracy therein; and thereto.

4.23   Claimant claims, the alleged court of record within the above reference alleged COMMERCIAL/Case/Cause/Citation did tacitly determine; and assume, its jurisdiction in the subject-matter; and over and upon the parties, within said COMMERCIAL/Case/Cause/Citation based upon some "contract," real or presumed, expressed or implied, revealed or unrevealed as a "un/non-constitutional other ground" within; and upon, which it proceeded to exercise its right to decide, render/enter a judgment/order(s) therein, and thereby avoid the constitutional conflict/question altogether.

4.24   Claimant claims, contracts do not supersede the Constitution, the law therein; and thereof, as well as ALL constraints, prohibitions, and provisions therein expressed, because contracts arise from the Constitution, but not from without the Constitution, based upon a man's inalienable; and unlimited, right to privately contract which cannot be impaired.  <u>A contract cannot require a breach of law.</u>

4.25   Claimant claims, the alleged court of record within the above referenced alleged Case/Cause/Citation, <u>did not fully disclose</u>; <u>in good faith</u> and <u>with clean hands</u>, to the Claimant any contract; or, quasi contract, real or presumed, expressed or implied, revealed or unrevealed from which said court formed for itself a "un/non-constitutional other ground" upon which; and within which, it assumed its jurisdiction; i.e., its right

to decide, and thereby; and therein exercise its power to enter/render a judgment/order(s) therein and <u>avoid the constitutional conflict/question</u> altogether.

4.26   Claimant claims, the alleged court of record within the above referenced alleged Case/Cause/Citation; by resorting to a contract or quasi contract, real or presumed, expressed or implied, revealed or unrevealed between the parties; i.e., the "named" defendant and source of authority for the existence of said "un/non-constitutional" Statute(s)/law(s), acting therein; and thereby, to bind the Claimant to said source of authority and thereby to said statute(s)/law(s) alleged/charged to have been violated/breached by the Claimant, does thereby; and therein, Declare and Affirm tacitly; if not expressly, the unconstitutional nature of the alleged statute(s)/law(s) cited within; and upon the face of, the charging document/instrument, and any documents in support thereof, provided by the officer Dylan Copello whom is appointed/elected/employed by the City of Loveland, the Assistant City Attorney Emilie Loomis by/for the City of Loveland also employed by the City of Loveland and Magistrate judge Geri R. Joneson also appointed by/for the City of Loveland; and, does conversely Declare and Affirm the "un/non-constitutional" nature of said statute(s)/law(s) alleged/charged as having been violated or breached.

4.27   Claimant claims, the Loveland Municipal Court did not proceed in accordance to common-law, and therefore acts, which are made crimes/offenses, are made so by "statute", or "Code."

4.28   Claimant claims, the common-law is the foundation of "due process of law." [See: 6 R.C.L., § 434, which states: "...<u>it is clear that the common law is the foundation of which is designated as due process of law</u>.']

4.29   Claimant claims, law enforcement officers; however, such may be termed/styled, who do not abide by the "law of the land"; i.e., the common-law as adopted through the due process clause of the national/federal Constitution, are trespassers.

4.30   Claimant claims, <u>all crimes are commercial</u>. [See: Constitution of/for the United States of America (1789, as amended 1791) Art. I, § 8, cl. 3 and 18; accord specifically the United States Code (USC), Colorado Revised Statute (CRS), the Colorado Court Rule of Procedure, the Loveland Municipal Codes, the Model Traffic Code and the Loveland City Charter; Title 27 CFR § 72.11; and United States v. Volungus, 595 F.3d 1. 4-5 (1st Cir. 2010); United States v. Pierson, 139 F.3d 501, 503 (5th Cir.), cert. denied, 525 US 896, 142 L Ed 2d 181, 119 S Ct 220, 1998 U.S. LEXIS 5985 (1998).]

4.31   Claimant claims, where an offense is committed in the presence of an officer; as in the above referenced alleged Case/Cause/Citation, in making an arrest/detain/stop/pull over for said offense, said officer does need to have the warrant in his actual possession if the arrest/detain/stop/pull over is to be lawful. [See:

Smith v. State, 208 So.2d 746, 747 (Miss. 1968)] otherwise it's harassment and/or an assault without probable cause.

4.32    Claimant claims, failure to show or display a warrant for an arrest/detain/stop/pull over for said offense allegedly exists, the arrest/detain/stop/pull over does thereby; and therein, become un-lawful/illegal. [See: Adams v. State, 121 Ga. 163, 48 S.E. 910, 911 (1904), which states: "In Gaillard v. Laxton, 2 Best & S. 363, 9 Cox C.C. 127, it was held that in a case in which a lawful arrest could not be made except under a warrant the arresting officers were bound to have the warrant ready to be produced if required; that an arrest in such a case by police officers who did not have the warrant in the possession at the time was illegal."]

4.33    Claimant claims, a prima facie invalid warrant will not and is not regarded as any warrant and an officer attempting to execute an arrest/detain/stop/pull over there under of the party named therein is not protected by it. [See: 70 Am. Jur.2d, Sheriffs, Police, and Constables, § 165, pp. 353-354, which states: "Process that is void on its face is no protection to the officer who executes it. If a warrant, order, or writ of possession shows lack of jurisdiction of the court, the officer is not protected in serving it. In fact, in so doing he becomes a trespasser."; Lawyers Reports Annotated, vol. 51, p. 197, citing: Poulk v. Slocum, 3 Black (Ind.) 421]

4.34    Claimant claims, both a proper subject-matter jurisdiction and geographical jurisdiction are necessary and essential for a valid warrant.

4.35    Claimant claims, whenever a warrant of arrest is invalid on its face, or where it is only a summons, the arresting officer, or officer attempting to execute service thereof, upon the party named therein, said officer is liable for damages. [See: 51 L.R.A. 197, citing: Frazier v. Turner, 76 Wis. 562, 45 N.W. 411; Carratt v. Morley, 1 Q.B. 18, 1 Gale & Dav. 45]

4.36    Claimant claims, the requirements of what a warrant of arrest and/or summons should contain does depend primarily on constitutional mandates and common-law principles.

4.37    Claimant claims, the common-law does require that a warrant/summons be issued only after a formal charge is made under oath; and, an arrest/citation is not valid if not based upon a sworn affidavit. [See: Liberis v. Harper, 89 Fla. 477, 104 So. 853, 855, which states: "An affidavit that does not appear to have been sworn before any judicial officer, and a warrant [summons] signed only by the officer who made the arrest and not dated or authenticated, afford no lawful authority for the arrest and detention of an accused."; cf. 5 Am.Jur.2d, Arrest, § 12, p. 705]

4.38    Claimant claims, a warrant/summons does require the individual review of a neutral judicial officer; i.e., magistrate, justice of the peace, or judge who is learned

in the law and qualified to determine if probable cause exists to issue said warrant/summons; and, does require the signature of said judicial officer, which cannot be "rubber stamped" with the judicial officer's name by some clerk or administrative employee; and, such a practice of "rubber stamping" the judicial officer's name does not constitute signature of said officer; and, is thereby; and therein, VOID and invalid. [See: State v. Paulick, 277 Minn. 140, 151 N.W.2d 591, 596 (1967), which states: "The United States Supreme Court has considered and disposed of a related problem in Camara v. Municipal Court, 387 U.S. 523, 541... The majority in Camara nevertheless stressed the need for 'individual review' by a 'neutral magistrate' to avoid the issuance of 'rubber stamp warrants.'; Cox v. Perkins, 107 S.E. 863, 865 (Ga. 1921)]

4.39    Claimant claims, a warrant/summons is regarded as insufficient and thus VOID if; on its face, it fails to state facts sufficient to constitute a crime. [See: Wharton's Criminal Procedure, 12th Ed., vol. I, § 54, p. 152 (1974), citing: Go-Bart Imp. Co. v. United States. 282 U.S. 344, 355 (1930); Ex parte Burford, 7 U.S. 448, 451 (1806); Smith v. Clark, 37 U. 116, 106 P. 653 (1910)]

4.40    Claimant claims, an affidavit that merely states belief in the guilt of the accused is insufficient to support a warrant of arrest and/or summons. [See: Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245 (1957); The State v. Gleason, 32 Kan. 245, 251 (1884), which states: "If a warrant, in the first instance, may issue upon mere hearsay or belief, than all the guards of the common law and the bill of rights, to protect the liberty and property of the citizen against arbitrary power, are swept away."]

4.41    Claimant claims, an affidavit which is based upon a presumption or belief of crime/offense does not give jurisdiction to the court; and specifically as this matter relates to and bears upon such affidavit/document(s)/citation and the alleged court of record within the above referenced alleged Case/Cause/Citation, to issue a warrant/summons; and, a law enforcement officer; however termed/styled, cannot execute a warrant; which is essentially local, outside their jurisdiction. [See: 61 A.L.R., Annotated, pp. 377-379; Housh v. People, 75 Ill. 487 (1897)]

4.42    Claimant claims, the officer(s) executing a warrant of arrest and/or summons is bound to know if under the law, the warrant/summons is defective, and not fair on its face; and, he is liable as a trespasser if it does not appear on its face to be a lawful warrant/summons; and, said officer's(s') ignorance is not an excuse. [See: Tiedeman, Limitations of Police Power, p. 83, citing: Grumon v. Raymond, 1 Conn. 39; Clayton v. Scott, 45 Vt. 386]

4.43    Claimant claims, in commercial law, any document or instrument; e.g., inter alia, legal briefs, securities, promissory notes, contracts, and affidavits must contain seven (7) essential elements to be valid; and, any of these seven (7) essential elements

which are missing, does render the document or instrument commercially defective, void, or expressly fraudulent.

4.44   Claimant claims, these seven (7) essential elements in support of a charging document/instrument, are: 1) Accurate identification of the parties to the document or instrument or dispute; 2) Nature and content of the allegations or claims set-forth with particularity; 3) Ledgering - accounting of the remedy or relief sought as recompense or compensation for specific wrongs or contractual violations or defaults; 4) Evidence of solvency - identification of the property sought/pledged as the stakes over which the dispute occurs, to be forfeited to the prevailing party to pay the debt/damage and satisfy the judgment; 5) Facts and law - specific laws violated and facts in evidence by exhibit; 6) Certification - statement under oath by party asserting an allegation or claim that everything asserted is "true, correct, and complete," whether criminal or civil; and, 7) Witnesses - third party certification substantiating the actual lawful/legal identity of the party executing the document or instrument.

4.45   Claimant claims, the 4th Amendment to the Constitution for the United States of America does apply to arrests/citation made and executed; and, does govern and regulate how such warrants/summons are to issue; and, does make the issuance of such warrants/summons to be solely upon "probable cause" supported by Oath or affirmation absolutely mandatory and essential for said warrant/summons to be valid, lawful, and in compliance with "due process of law" or "the law of the land"; i.e., common-law rules and principles established and present in this land; before the adoption of said Constitution, as practice and administered in England prior to the immigration of The People to this land.  [See: 1 A.L.R., Annotated, 586; 5 Am. Jur.2d, Arrest, § 2, p. 697]

4.46   Claimant claims, the Claimant has never seen the original, nor been presented with a copy; "certified" or otherwise, of the warrant of arrest, and the affidavit in support thereof, employed/used within the above referenced alleged COMMERCIAL/Case/Cause/Citation by the arresting/detaining officer(s), and therefore has no reason to believe a valid, lawful, and properly supported warrant of arrest (and/or a reason to detain) which truly names/identifies/references the Claimant exists, that such a warrant of arrest for the Claimant does not exist; and, is not signed/authenticated by a judicial officer; and, does not allege/charge a violation(s) of validly enacted statute(s)/law(s); and, therefore does not establish/create a crime/offense within the jurisdiction of the judicial officer signatory thereon; and, does not create subject-matter jurisdiction for the alleged court of record within the above referenced alleged Case/Cause/Citation; and, the non-existence of the affidavit in support thereof does not comply with ALL seven (7) points of a seven (7) point document/instrument; and, any signature of a judicial officer appearing upon the face of the warrant and/or summon; and, in ALL areas is not in accordance with and pursuant to rules and principles as established and ordained by the "due process of law" or "the law of the land."

4.47   Claimant claims, even where, a Private Citizen, has pleaded guilty, the arresting officer(s)/person(s) can still be liable for false arrest/summon, and therefore, it has been held that consent to an un-lawful arrest will not excuse an officer(s)/person(s) from his acts, nor will the law permit such a claim to be made.  [See: Hotzel v. Simmons, 258 W. 234, 45 N.W.2d 683, 687 (1951); Anderson v. Foster, 73 Ida. 340, 252 P.2d 199, 202 (1953); Meints v. Huntington, 276 Fed. 245, 250 (1921), which states: "We are of opinion that the law does not permit the citizen to consent to unlawful restraint, nor permit such a claim to be made upon the part of the defendants.  In Wharton on Criminal Law, vol. 1, § 751e, it is said: 'No, a Private Citizen, has a right to take away another's liberty, even though with consent, except by process of law.  And the reason is, that liberty is an inalienable prerogative of which no, a Private Citizen, can divest himself, and of which any divestiture is null.'"]

4.48   Claimant claims, a false; or un-lawful, arrest/summon/Citation is in and of itself an assault, or an assault and battery, trespass, or a graver offense; and the law does regard such arrests/detainment/summon/citation as any other assault which may be resisted by the assaulted; and, the officer(s)/person(s) making the arrest is regarded as a personal trespasser.  [See: Town of Blacksburg v. Bean, 104 S.C. 146, 88 S.E. 441 (1916), which states: "Common as the event may be, it is a serious thing to arrest/detain a citizen, and it is a more serious thing to search his person; and he who accomplishes it, must do so in conformity to the laws of the land.  There are two reasons for this; one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates."; 6A C.J.S., Arrest, § 16, p. 30, which states: "A sheriff who acts without process, or under a process void on its face, in doing such act, he is not to be considered an officer but a personal trespasser."; Roberts v. Dean, 187 So. 571, 575 (Fla. 1939); Allen v. State, 197 N.W. 808, 810-811 (Wis. 1924); Graham v. State, 143 Ga. 440, 85 SE. 328, 331 (1915), which states: "A citizen arrested has a right to resist force in proportion to that being used to detain him.  An unlawful arrest is an assault and battery or a graver offense.'; State v. Robinson, 145 Me. 77, 72 A.2d 260, 262 (1950), which states: "An illegal arrest is an assault and battery.  The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would in repelling any other assault and battery."; State v. Gum, 68 W.Va. 105, 69 S.E. 463, 464 (1910), which states: "What rights then has a citizen in resisting an unlawful arrest? An arrest without warrant is a trespass, an unlawful assault upon the person, and how far one thus unlawfully assaulted may go in resistance is to be determined, as in other cases of assault.  Life and liberty are regarded as standing substantially on one foundation; life being useless without liberty.  And the authorities are uniform that where one is about to be unlawfully deprived of his liberty he may resist the aggressions of the offender, whether a private citizen or a public officer, to the extent of taking the life of the assailant, if that be necessary to preserve his own life, or prevent infliction upon him of some great bodily harm."; State v. Mobley, 240 N.C. 476, 83 S.E.2d 100, 102

(1954) (authorities cited therein), which states: "The offense of resisting arrest, both at common law and under statute, presupposes a lawful arrest. It is axiomatic that every person has the right to resist an unlawful arrest. In such case, the person attempting the arrest stands in the position of wrongdoer and may be resisted by the use of force, as in self-defense."; Wilkinson v. State, 143 Miss. 324, 108 So. 711, 712-713 (1926)]

4.49   Claimant claims, a Private Citizen, d.b.a. a Magistrate, Justice of the Peace, or Judicial Officer, in order to be validly in possession and use of the "plenary powers" resident within his/her "office," must have "perfected title" to said "office"; and, said perfection is accomplished through valid Oath of office and bond thereon.

4.50   Claimant claims, the failure of, a Private Citizen, d.b.a. a Magistrate, Justice of the Peace, or Judicial Officer, in "perfecting title" to his/her "office", is operating under a serious/severe disability of capacity acting to bar his/her lawful access to said "office," possession and use of the "plenary powers" resident within said "office"; and, due to his/her disability, said "office" is vacant; and, therefore does render ALL acts performed by said, a Private Citizen, under said disability VOID; and, does  render said, a Private Citizen, for ALL acts performed while under said disability, guilty of; inter alia, false personation, false pretenses, usurpation, fraud, official oppression, fraudulent and deceptive business practices, and trespass ab initio, and thereby; and therein, does render said, a Private Citizen, liable for damages arising from all injuries he/she caused, subjected to, and inflicted upon the arrested, a Private Citizen, brought before him/her.

4.51   Claimant claims, in many of the older court cases we find the declaration: "The law is very jealous of the liberty of the citizen," said law is the common-law; and, it does declare that, "One who interferes with another's liberty does so at his peril."  [See: Knight v. Baker, 117 Ore. 492, 244 P 543, 544 (1926)]

4.52   Claimant claims, injuries to the liberty of, a Private Citizen, are principally termed "false imprisonments" or "malicious prosecutions."  Joseph Chitty, Esq., The Practice of Law, vol. I, Ch. II, p. 47, London, 1837, wherein Mr. Chitty states: "The infraction of personal liberty has been regarded as one of the greatest injuries. The injuries to liberty are principally termed false imprisonments, or malicious prosecutions."]

4.53   Claimant claims, actual seizure or the laying on of hands is not necessary to constitute un-lawful detention; and, the ONLY essential elements of an action for un-lawful detention are 1) Detention or restraint against one's will; and, 2) The un-lawfulness of such detention or restraint. [See: Hanser v. Watson Bros. Transp. Co., 244 Ia. 185, 52 N.W.2d 86, 93(1952); Sinclair Refining Co. v. Meek, 62 Ga.App. 850, 10 S.E.2d 76, 79(1940); Southern Ry. Co. in Kentucky v. Shirley 121 Ky. 863, 90 S.W.·597, 599 (1906)]

4.54   Claimant claims, any and every confinement of, a Private Citizen, is an imprisonment.  [See: 3 Bl. Comm. 127, which states: "Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets."; Sergeant v. Watson Bros. Transp. Co., 244 Ia. 185, 52 N.W.2d 86, 93 (1952)]

4.55   Claimant claims, false imprisonment does exist by words or acts, or both, which one fears to disregard, but also does exist by such acts and measures that he/she cannot disregard.  [See: Garnier v. Squires, 62 Kan. 321, 62 P. 1005, 1006 (1900), which states: "False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone or by both, and by merely operating on the will of the individual, or by personal violence, or by both.  It is not necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful intention; nor is it necessary that the act be under color of any legal or judicial proceeding.  All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefore, and by words or acts which he fears to disregard." Kroeger v. Passmore, 36 Mont. 504, 93 p. 805, 807 (1908)]

4.56   Claimant claims, the un-lawful arrest and detention of, a Private Citizen, without lawful authority is one manner in which the category of those torts that un-lawfully deprive or interfere with the liberty of, a Private Citizen, termed "false imprisonment" is committed.  [See: Riegel v. Hygrade Seed Co., 47 F.Supp. 290, 294 (1942), which states: "False imprisonment has been well defined to be a trespass committed by one, a Private Citizen, against the person of another, by unlawfully arresting and detaining him without any legal authority."]

4.57   Claimant claims, "false imprisonment" is effectuated by the un-lawful arrest or detention of, a Private Citizen, without warrant, or by an illegal warrant or a warrant illegally executed.  [See: Noce v. Ritchie, 155 S.E. 127, 128 (W.Va. 1930), which states: "False imprisonment is the unlawful arrest or detention of a person, without warrant or by an illegal warrant, or a warrant illegally executed."]

4.58   Claimant claims, the tort, or wrong of "false imprisonment" does occur the instant that, a Private Citizen, is restrained in the exercise of his liberty and there is a reasonable length of time for a restraint before the tort can be claimed.  [See: Sinclair Refining Co. v. Meek, 62 Ga.App. 850, 10 S.E. 76, 79 (1940), which states: 'False imprisonment at common law and elsewhere consists in the unlawful detention of the person by another for any length of time, whereby he is deprived of his personal liberty.", citing: 3 Bl.Comm. 127; 12 Am. & Eng.Ency.Law 721; 19 Cyc 319; Sergeant v. Watson Bros. Transp. Co., 244 Ia. 185, 52 N.W.2d 86, 92 (1952), which states: "False imprisonment is defined as an act which, directly or indirectly, is an illegal cause of confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other."]

4.59   Claimant claims, a Private Citizen, wronged by "false imprisonment" is entitled to recover damages for ALL the natural and probable consequences thereof for the whole of the time he was un-lawfully/falsely imprisoned.   [See: Knickerbockers Steamboat Co. v. Cusack, 172 F. 358, 360-361 (1905), which states: "The general rule of damages in cases of false imprisonment is that the person causing a wrongful imprisonment is liable for all the natural and probable consequences thereof.   The plaintiff is entitled to recover damages for what the party wrongfully did… In Murphy v. Countiss, 1 Harr. (Del.) 143, in an action for trespass, assault and battery, and false imprisonment, the court held that the plaintiff could recover, not merely for the time the constable was bringing him to jail, but for the whole period of his imprisonment. And in Mandeville v. Guernsey, 51 Barb. (N.Y.) 99 the court said: 'The arrest being wrongful, the defendant is liable for all the injurious consequences to the plaintiff which resulted directly from the wrongful act.'"; Meints v. Huntington, 276 F. 245, 248 (1921), citing Adler v. Tenton, 24 How. (U.S.) 407, 410 (1860)]

4.60   Claimant claims, false imprisonment does include an assault and battery; and, does always, at least, include a technical assault.   [See: Black v. Clark's Greensboro, Inc., 263 N.C. 226, 139 S.E.2d 199, 201 (1964); State v. Robinson, 145 Me. 77, 72 A.2d 260, 262 (1950)]

4.61   Claimant claims, the law does specify or divide damages arising from torts for injury into two (2) types or classes; and, those two (2) types or classes are "actual damages" and "punitive damages."

4.62   Claimant claims, "actual damages" are compensation for the injury as would follow the nature and character of the act which would include; inter alia, pain and suffering, physical discomfort, sense of shame, wrong, and outrage; and, such damages are also termed "compensatory damages" as they compensate the injured, a Private Citizen, for the actual injuries sustained and no more.

4.63   Claimant claims, "punitive damages" are  those that grow out of the wantonness or atrocity; or aggravated by the act, of the act resulting in the injuries and sufferings that were intended, or occurred through malice, carelessness or negligence amounting to a wrong so reckless and wanton as to be without excuse; and, such damages are also termed "exemplary damages."   [See: Ross v. Leggett, 61 Mich. 445, 28 N.W. 695, 697 (1886)]

4.64   Claimant claims, anyone who assists or participates in an un-lawful arrest and or un-lawful imprisonment; e.g. Magistrate, Justice of the Peace, Judge, City Attorney (or Assistant), clerk, city, county, state, federal/national Government, and the like, is equally liable for the damages arising from the injuries caused by said acts.  [See: Cook v. Hastings, 150 Mich. 289, 114 N.W. 71, 72 (1907)]

4.65   Claimant claims, "actual" or "compensatory damages" in actions/claims for false arrest/false imprisonment have been established at 25,000 dollars per twenty-three (23) minutes, 1,565,000 million dollars per day; and, "punitive damages" may be set by the injured party; and specifically the Claimant as the injured party within the above referenced alleged Case/Cause/Citation. [See: Trezevant v. City of Tampa, 741 F.2d 336 (1984), wherein damages were set as 25,000 dollars per twenty-three 23 minutes in a false imprisonment case.

4.66   Claimant claims, the above cited case; i.e., Trezevant v. City of Tampa, can be utilized by the Claimant in determining actual/compensatory damages should Tortfeasor(s) agree the Claimant has been falsely imprisoned; and, Tortfeasor(s) can provide any valid, lawful, and reasonable objection as to why it should not, or cannot, be so utilized and applied in this matter.

4.67   Claimant claims, the distinction between false imprisonment and malicious prosecution is the right; in the former, which even a guilty, a Private Citizen, has to be protected against any un-lawful restraint of his personal liberty and in the latter, the right of an innocent, a Private Citizen, to be compensated in damages for an injury he may sustain when a groundless charge is brought against him, even though such charge may be presented and prosecuted in accordance with the strictest forms of law. [See: State v. Williams, 45 Ore. 314, 77 P. 965, 969 (1904)]

4.68   Claimant claims, the aspects of malicious prosecution in a matter involving false imprisonment can be used in determining punitive damages in a false imprisonment action/claim.

4.69   Claimant claims, the want of authority is an essential element in an action/claim for false imprisonment; and, malice and want of probable cause are the essential elements in an action/claim for malicious prosecution. [See: Roberts v. Thomas, 135 Ky. 63, 121 S.W. 961, 96 (1909)]

4.70   Claimant claims, the defense for/against an action/claim of false imprisonment is limited to showing that the arrest/detainment/summons/citation was pursuant to law; and, the one arresting had lawful authority to so act, thus, valid defense or proper justification for/against an action/claim of false imprisonment is one asserting the legality of the arrest. [See: Marks v. Baltimore & O. R. Co., 131 N.Y.S.2d 325, 327, 284 App.Div. 251 (1954), wherein Justice Hand states: "The law watches personal liberty with vigilance and jealousy; and whoever imprisons another, in this country, must do it for a lawful cause and in a legal manner."]

4.71   Claimant claims, the arrest of the Claimant in the above reference alleged Case/Citation was not for a lawful cause; i.e., not for a crime/public offense created and established by validly enacted statute/law originating from the sole legislative power/authority as created by express constitutional provisions clearly identified as

such upon its face and properly, validly, and lawfully promulgated/published; and, was not in a legal manner; i.e., pursuant to "due process of the law" as ordained by "the law of the land" through express constitutional provisions; and, executed by those with lawful authority; i.e., lawfully holding/occupying their "office" and thereby in lawful possession and use of the "powers" resident therein.

4.72   Claimant claims, due to the high regards placed upon liberty by the law, ALL imprisonments are deemed un-lawful until the contrary is shown; and a defense based upon the one who was arrested does not have to prove the arrest/imprisonment was un-lawful in order to prevail in any process for relief and remedy. [See: Earl of Halsbury, The Laws of England, vol. 38, 3rd ed., pt. 4, § 1266, p. 765, London (1962), which states: "The Plaintiff need not prove that the imprisonment was unlawful or malicious, but establishes a prima facie case if he proves that he was imprisoned by the defendant; the onus then lies on the defendant of proving a justification."]

4.73   Claimant claims, the only thing, he, who has been arrested and imprisoned needs to claim and to prove is one of two (2) things; which are: 1) The defendant made an arrest or imprisonment; or, 2) the defendant affirmatively instigated, encouraged, incited, or caused the arrest or imprisonment.   [See: Burlington Transp. Co. v. Josephson, 153 F.2d 372, 376 (1946)]

4.74   Claimant claims, the Claimant has up to this point within this Notice of Verified Claim for Relief and Money Demand, Claim # EDM-08211975-E10673-LVLD established his arrest and imprisonment at the hands, and by the acts, of ALL parties participating within the above referenced alleged Case/Cause/Citation; and, the un-lawful/false nature of said arrest and imprisonment within said Case/Cause/Citation.

4.75   Claimant claims, should the Tortfeasor(s) agree; expressly or through tacit acquiescence, with the facts contained within this Notice of Verified Claim for Relief and Money Demand, Claim # EDM-08211975-E10673-LVLD they are bound by their duty to correct this matter and provide relief and remedy to the Claimant in this matter without delay; i.e., pay the "compensatory damages" and, "punitive damages" set up to date, releasing ALL property of the Claimant's from the bonds of false imprisonment and restore the Claimant to a state of liberty (freedom of locomotion), and completely expunging this matter from ALL Criminal/civil/Infraction Records, data bases, files, and the like no matter how stored.

4.76   Claimant claims, the failure of Tortfeasor(s) in exercising their duty in this matter as set-forth above, does thereby; and therein, act to make Tortfeasor(s) liable for the continues false arrest and false imprisonment of the Claimant resulting from the above referenced alleged Case/Cause/Citation, jointly and severally.

4.77    Claimant claims, it has been held and well established in law that in false imprisonment processes for relief and remedy, the defendant, in order to escape liability, must prove that he did not imprison the man/Claimant, or he must justify the imprisonment; or, stated another way, <u>the burden is upon the defendant to show that the arrest was by authority of law</u>. [See: Southern Ry. Co. in Kentucky v. Shirley, 121 Ky. 863, 90 S.W. 597, 599 (1906), citing: 12 Am.&Eng.Ency.Law, 2d ed., p. 733; McAleer v. Good, 216 Pa. 473, 65 A. 934, 935 (1907); Mackie v. Ambassador Hotel & Inv. Co., 123 Cal .App. 215, 11 P.2d 3, 6 (1932); Jackson v. Knowlton, 173 Mass. 94, 53 N.E. 134 (1899), which states: "It was long ago said by Lord Mansfield: 'A gaoler, if he has a prisoner in custody, is prima facie guilty of an imprisonment; and therefore must justify.' Badkin v. Powel, Cowp. 476, 478. So, in Halroyd v. Doncaster, 11 Moore 440, it was said by Chief Justice Best: 'Where, a Private Citizen, deprives another of his liberty, the injured party is entitled to maintain an action for false imprisonment, and it is for the defendant to justify his proceedings by showing that he had legal authority for doing that which he had done.'"; Snyder v. Thompson, 134 Ia. 725, 112 N.W. 239, 241 (1907), which states: "In 2 Bishop on Criminal Procedure, § 368, it is said, 'In matters of evidence, if the imprisonment is proved, its unlawfulness will be prima facie presumed; but authority may be shown by the defendant in justification.'"]

4.78    Claimant claims, in cases of false imprisonment, the only essential elements of the action/claim for relief and remedy are detention and its un-lawfulness, and that malice and the want of probable cause does not need to be shown or are necessary to a proper cause of action for false imprisonment. [See: Sinclair Refining Co., v. Meek, 62 Ga.App. 850, 10 S.E.2d 76, 79 (1940) (authorities cited therein); Stallings v. Foster, 119 Cal .App.2d 614, 259 P.2d 1006, 1009 (1953); Thompson v. Farmer's Exchange Bank, 333 Mo. 437, 62 S.W.2d 803, 811 (Mo. 1933). which states: "A lawful imprisonment does not become unlawful because of malicious motives nor does an unlawful detention become lawful because actuated by a laudable purpose or founded in good faith."; McNeff v. Heider, 337 P.2d 819, 821 (Ore. 1958), which states: "In an action for false imprisonment, neither actual malice nor want of probable cause is an essential element necessary to a recovery of general damages."]

4.79    Claimant claims, un-lawful detention or imprisonment does not become lawful because it was out of ignorance of the law. [See: Maxims of Law, ed. C.A. Weismann, 57f; 1 Coke 177; 4 Bouvier's Institutes, n. 3828; 35 C.J.S., False Imprisonment, § 7, p. 630; Stembridge v. Wright, 32 Ga.App. 587, 124 S.E. 115 (1924), which states: "It is no defense that a person perpetrating an illegal arrest or imprisonment is ignorant of the legality of his acts."; Kroeger v. Passmore, 36 Mont. 504, 93 P. 805, 807 91908), which states: "<u>False imprisonment is treated as a tort, and also as a crime</u>... If the conduct is unlawful, neither good faith, nor provocation, nor ignorance of the law is not a defense to the person committing the wrong."; Thiede v. Town of Scandia Valley, 217 Minn. 218, 231, 14 N.W.2d 400 (1944), which

states: "As is the case of illegal arrests, the officer is bound to know these fundamental rights and privileges, and must keep within the law at his peril."]

4.80    Claimant claims, a magistrate, Justice of the Peace, Judge, City Attorney/Assistant City Attorney (Prosecuting), and arresting officers are ALL schooled, trained, and "licensed" to practice law, some more than others; and specifically as this matter relates to and bears upon said parties acting within the above referenced alleged Case/Cause/Citation, and therefore have superior knowledge of the law, said parties; and the Tortfeasor(s), are not capable or justified in claiming ignorance of the lawfulness and legality of the arrest/detainment of the Claimant and subsequent imprisonment resulting therefrom within said Case/Cause/Citation; and, such an assertion would thereby; and therein, operate to constitute said parties; and the Tortfeasor(s), as unqualified and or unfit to practice law, and at the very least, in need of additional schooling/training.

4.81    Claimant claims, in an action for false imprisonment, a record of conviction for the same offense for which the arrest was made is not admissible.  [See: Dunnell Minnesota Digest, 3rd ed., vol. 84, False Imprisonment, §1.06(c), citing: Wahl v. Walton, 30 Minn. 506, 16 N.W. 397 (1883)]

4.82    Claimant claims, the argument of "official immunity" is not a valid defense for public/Government agents when proceeded against for their own torts in an action/process for relief and remedy from a false imprisonment claim. [ Hopkins v. Clemson College, 221 U.S. 636, 642-643 (1910), which states: "But immunity from suit is a high attribute of sovereignty a prerogative of the State itself - which cannot be availed of by public agents when sued for their own torts."; Johnson v. Lankford, 245 U.S. 541, 546 (1917)]

4.83    Claimant claims, the "due process of the law" argument in false imprisonment matters will nullify the statutes, rules, regulations, ordinances, and the like as may be contained within the United States Code and elsewhere that are contrary to the common-law rule on arrest; and, a legislative act cannot abrogate what is "the law of the land."  [See: Muscoe v. Commonwealth, 86 Va. 443, 10 S.E. 534, 536 (1890), which states: "Arrest without warrant, where a warrant is required, is not due process of law; and is arbitrary or despotic power, no a Private Citizen, possesses under our system of Government."]

4.84    Claimant claims, Title 28 of the United States Code, Federal Rules of Civil Procedure (F.R.Civ.P.) is an admiralty rule book which governs ALL disputes over maritime contracts "in rem," or "quasi in rem," and "actions" or "transactions" that impose a debt, duty, obligation, or liability; e.g., an unliquidated claim and an accrued right of action; and, said Rules of Civil Procedure as adopted and in use/employment within the United States Code (USC), Colorado Revised Statute (CRS), the Colorado Court Rule of Procedure, the Loveland Municipal Codes, the Model Traffic Code and

the Loveland City Charter are also an admiralty rule book applying its corporate parent's Rule Book.  [See: U.S. v. Kirkpatrick, 186 F.2d 393]

4.85   Claimant claims, a case/matter in admiralty <u>does not in fact</u> arise under the Constitution or Laws of the United States of America.  [See: American Ins. Co. v. Cantor, 1 Pet. (U.S.) 511, 545 (1828)]

4.86   Claimant claims, the Claimant serves Yahweh (YHWH), the Supreme Heavenly, the Living God, and Claimant claims, a man, cannot serve two masters or he will tend to the one and despise the other, the Claimant does not have and or does not owe the UNITED STATES and any and all sub-franchise compact territorial State units ANY obedience, service, duty, obligation, or the like based upon lawful principals and or contract(s), real or presumed, expressed or implied, revealed or unrevealed.

4.87   Claimant claims, that "privity of contract," or "contract" itself is the dividing line between a court having "subject-matter jurisdiction," and "jurisdiction of the subject-matter."

4.88   Claimant claims, all contracts, whether express or implied, are subject to the universal "essentials" of <u>"contract law,"</u> pertaining to the fundamentals of the interaction between the parties.

4.89   Claimant claims, a "contract" is an agreement; e.g., as will be set and established by the parties to this Notice of Verified Claim for Relief and Money Demand, between two or more men/persons, which creates an obligation to do or not to do a particular thing.

4.90   Claimant claims, the "essential" elements of "contract" are 1) parties capable of contracting; 2) consent; 3) lawful object; 4) a sufficient cause or consideration; 5) mutuality of agreement; and, 6) mutuality of obligation.  [See: H. Liebes & Co. v. Klengenberg, 23 F.2d 611, 612 (C.C.A.Cal)]

4.91   Claimant claims, "agreement" cannot be vague; i.e. uncertain and unlikely to be understood.  [See: H. Liebes & Co. v. Klengenberg, supra]

4.92   Claimant claims, the "essentials" of informed "consent" are it must be 1) free; 2) mutual; and 3) communicated by each to the other. [See: Corbin, Contracts, 1 vol. ed., 1952]

4.93   Claimant claims, "consent" is an act of reason, accompanied with deliberation, wherein the mind is weighing in a balance the good (benefit) and evil (duty/obligation) of a proposed/offered "contract." [See: 1 Story, Eq.Jur., § 222; Lervick v. White Tops Cabs, 10 So.2d 67, 73, (la.App.)]

4.94    Claimant claims, "consent" does mean "voluntary" agreement by, a Private Citizen, to make an intelligent choice to contract or not to contract.

4.95    Claimant claims, "consent" and "submission" are synonymous; and, a mere "submission" does not necessarily involve "consent." [See: 9 Car. & P. 722]

4.96    Claimant claims, "consent" cannot be obtained, and is not free and mutual when obtained, through duress, menace, fraud, undue influence, and or mistake.

4.97    Claimant claims, "fraud" is an intentional perversion of the truth to induce another; e.g., the Claimant within the above referenced alleged Case/Cause/Citation, in reliance thereon to part with a valuable thing or legal right belonging to him; and or, a false representation of a matter of fact, whether by words or by conduct, false or misleading allegations, or concealment of that which should have been disclosed, which deceives, and is intended to deceive another, so he acts upon it to his injury embracing all multifarious means, a Private Citizen, cannot devise to gain advantage over another; e.g., false suggestion, suppression of the truth, surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

4.98    Claimant claims, "fraud" does vitiate - i.e. make void; cause to fail of force or effect; destroy or annul the legal efficacy and binding force of an act or instrument every transaction and all contracts; and, does destroy the validity of everything into which it enters, even the most solemn contracts, documents, and even judgments/order(s). [See: 37 Am. Jur.2d, Fraud, § 8]

4.99    Claimant claims, "fraud" and "bad faith" (mala fides) are synonymous; and, both terms are synonymous with dishonesty, infidelity, faithlessness, perfidy, and unfairness. [See: Joiner v. Joiner, 87 S.W.2d 903, 915 (Tex.Civ.App.)]

4.100  Claimant claims, "fraud" is always positive and intentional. [See: Maher v. Hibernia Ins. Co., 67 N.Y. 292; Alexander v. Church, 53 Conn. 561, 4 A. 103; Studer v. Bleistein, 115 N.Y. 316, 7 L.R.A. 702; McNair v. Southern States Finance Co., 191 N.C. 710, 133 S.E. 85, 88]

4.101  Claimant claims, "fraud" does comprise all acts, omissions, and concealments involving a breach of a legal or equitable duty and resulting in damage to another. [See: 1 Story, Eq. Jur., § 187; Howard v. West Jersey & S.S.R. Co., 102 N.J.Eq. 517, 141 A. 755, 757]

4.102  Claimant claims, that rights and duties/obligations contained within and arising from a contract do only effect and bind parties to said contract.

4.103  Claimant claims, parties to a contract are determined by signature.

4.104 Claimant claims, is not a signatory to a contract does not have any rights; and, does not have/owe any duties/obligations therein, and or arising there from.

4.105 Claimant claims, the UNITED STATES' Constitution/Charter and/or the COLORADO STATE Constitution/Charter and/or the CITY OF LOVELAND Charter <u>does not operate over and upon the Claimant.</u>

4.106 Claimant claims, there are no clauses in the Federal/State Constitution/Charter that <u>subject</u> the Claimant to the "<u>statutory jurisdiction</u>" of the UNITED STATES/COLORADO STATE/CITY OF LOVELAND.

4.107 Claimant claims, there <u>were not</u> at the time of the alleged violation(s) of statute(s)/law(s) within the above referenced alleged Case/Cause/Citation, and <u>NON exist</u> now this present day, any valid, lawful, enforceable "contracts," real or presumed, expressed or implied, revealed or unrevealed, between the Claimant and the UNITED STATES/STATE OF COLORADO/CITY OF LOVELAND/LOVELAND MUNICIPAL COURT, wherein there was "full disclosure," "fair or valuable consideration," free and mutual "consent," of which the alleged "court of record" within the above referenced alleged COMMERCIAL/Case/Cause/Citation took tacit (silent); or express, judicial notice of to bind therein the Claimant to the "private law" in support of a "private right" of the United States as contained within the United States Code (USC), Colorado Revised Statute (CRS), the Colorado Court Rule of Procedure, the Loveland Municipal Codes, the Model Traffic Code and the Loveland City Charter thereof, for a "breach" thereof, and acting to confer "subject-matter jurisdiction" of the alleged "breach" upon the court, and thereby allowing it to acquire the authority, right, and power to decide, make orders, and judgments binding and of legal force and effect over and upon the Claimant.

4.108 Claimant claims, within the above referenced alleged Case/Citation the Prosecutor/Assistant City Attorney did not post any personal surety bond, and/or crime insurance and/or indemnity bond to indemnify her actions to any injury to the Claimant.

4.109 Claimant claims, the facts as set, established, and thereby agreed upon by the parties to this Notice of Verified Claim for Relief and Money Demand; i.e., Tortfeasor(s) and the Claimant, do apply and operate within and upon any and all previous alleged Case(s)/Cause(s) irrespective and regardless of what sub-franchise compact territorial State unit said were alleged within.

4.110 Claimant claims, "statutory jurisdiction" is not a lawful jurisdiction, lawfully created by the "fundamental law of the land" or common-law; and, that the Claimant is not subject thereto; and is not bound thereto in any form or manner, contractually or otherwise.

4.111 Claimant claims, the Uniform Commercial Code (UCC) as codified within the United States Code (USC) and Code of Federal Regulations (CFR) is the controlling/governing law of; and within, the alleged "court of record." within the above referenced alleged Case/Cause/Citation.

4.112 Claimant claims, a "negotiable instrument" is a promise or order to pay and or perform; and, inter alia, a warrant of arrest, charging document (Indictment), orders, and judgment; and specifically such within the above referenced alleged Case/Cause/Citation, are "negotiable instruments"; and, are therefore governed by the Negotiable Instrument Law as made uniform within Article 3 of the Uniform Commercial Code codified in the United States Code and Code of Federal Regulations.

4.113 Claimant claims, any lawful and or legal relationship (nexus), through contract or otherwise, does not exist between the Claimant and the United States as contained within the United States Code (USC), with the State of Colorado as contained within the Colorado Revised Statute (CRS), the Colorado Court Rule of Procedure, with the City of Loveland as contained within the Loveland Municipal Codes, the Model Traffic Code and the Loveland City Charter thereof; and, are not therefore binding and of no legal force or effect over and upon the Claimant.

4.114 Claimant claims, there was fraud perpetrated within and against the Claimant within the above referenced alleged COMMERCIAL/Case/Cause/Citation by any and all parties involved therein; and, should the Tortfeasor(s) agree; expressly or otherwise, to the facts contained within this Notice of Verified Claim For Relief and Money Demand as said facts operate in favor of the Claimant, such facts do demonstrate, evidence, establish, and affirm fraud within said Case/Cause/Citation; and, said fraud does vitiate all decisions, orders, the judgment, and the like within said COMMERCIAL/Case/Cause/Citation ab initio.

4.115 Claimant claims, there does not still remain any arguable basis for the court's "subject-matter jurisdiction" within the above referenced alleged Case/Cause/Citation; and, any judgment/order(s) of said court in said COMMERCIAL/Case/Cause/Citation is therefore void ab initio.

4.116 Claimant claims, that should the Tortfeasor(s) confess the injury(s) to the Claimant, set, established, and agreed upon by the parties hereto within this Notice of Verified Claim for Relief and Money Demand, the Claimant can exercise his "exclusive" remedy, being a Tort Claim, for the moral wrongs committed by the Tortfeasor(s), including but not limited to, "constitutional misapplication of the statute(s)," breach of this contractually binding agreement, conspiracy (two or more involved), denying your own "public policy," trespasses and moral wrongs committed by and through ultra vires acts not authorized/prohibited by the charter of the commercial vessel and other trespasses and moral wrongs known and unknown.

4.117 Claimant claims, the Office of Risk Management does not have any power, authority, and right derived from validly enacted statute/law, commercial law, contract law, or other to place or impose a cap/limit upon the amount of any Tort Claim submitted by the Claimant in this matter and relating hereto, in regards to what they, acting for the insurer of said commercial vessel, will pay out on said Tort Claim.

4.118 Claimant claims, that should the Office of Risk Management refuse or otherwise dishonor a Tort Claim submitted by the Claimant, and as agreed upon by the insured and the Claimant, the Claimant can take other appropriate/remedial action(s) for remedy, which can include involuntary bankruptcy in a foreign proceeding for a said claim.

4.119 Claimant claims, Tortfeasor(s) do not and will not have any right to deny, argue, controvert, or otherwise protest the facts in the matters set, established, and agreed upon between the parties to this Notice of Verified Claim For Relief and Money Demand within any forum/venue the Claimant may choose to bring an action/proceeding in to obtain redress and remedy in this matter; and all matters relating to and arising from said matter; and, such act(s) upon the part of Tortfeasor(s) will be deemed and evidenced as act(s) of breach of said agreement, further attempts to perpetrate acts of fraud upon the Claimant, bad faith, and the like.

4.120 Claimant claims, the Tortfeasor(s) do have the "duty" and "obligation" to rebuttal/refutation by a sworn affidavit of someone with personal firsthand knowledge, given under penalties of perjury, duly served upon all the other parties. Said Affidavit must be given rebutting each issue, point for point as requested herein, pursuant to the principles and doctrines of "clean hands" and "good faith" dealings with the Claimant, and applicable statute(s) as they operate upon Tortfeasor(s) as "office holders"; i.e., officer(s)/agent(s), of the corporate Government juridical construct commercial vessel d.b.a. by oath of office thereto, and contract therewith as a voluntary commercial indenture therein; and thereto.

## ARTICLE V.    CAVEAT

5.1    **BE WARNED, NOTICED, AND ADVISED** that even thou **arbitration process is binding on all parties and is the <u>sole and exclusive remedy</u> for redressing any issue associated with this agreement.** The Claimant relies upon the rights and  defenses guaranteed under the constitutional <u>limits on governmental authority</u> included in the "Constitution for the united States of America", the Honorable "Bill of Rights", and/or the "Constitution of the State of Colorado", the Uniform Commercial Code(s), Common equity law, Common Law Arbitration, the Federal Arbitration Acts, the Tucker Acts, laws of admiralty, and commercial liens and levies pursuant, but not limited to, Title 42 U.S.C.A.(Civil Rights), Title 18 U.S.C.A. (Criminal Codes), Title 28 U.S.C.A. (Civil Codes), to which <u>you</u> are bound by office and oath, the "Constitution of the State of Colorado",

and Colorado penal codes, in as much as they are in compliance with the "Constitution for the united States of America", Bill of Rights, and/or the "Constitution of the State of Colorado ", as applicable.

5.2     Please understand that while the Claimant wants and desires to resolve this matter as promptly as possible, the Claimant can only do so upon Tortfeasor(s) 'official response' to this **Notice of Verified Claim for Relief and Money Demand** by Tortfeasor(s) providing the Claimant with the requested rebuttal/refutation by a sworn affidavit of someone with personal firsthand knowledge, given under penalties of perjury, duly served upon all the other parties. Said Affidavit must be given rebutting each issue, point for point with the **"Notice of Verified Claim for Relief and Money Demand"** raised herein above, with your counter-affidavit, proving with particularity by stating all requisite actual evidentiary and documented fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that any specific paragraph of this **"Notice of Verified Claim for Relief and Money Demand"** is substantially or materially false sufficiently to change substantially or materially Claimants status and factual declarations.

5.3     This "Notice of Verified Claim for Relief and Money Demand" agreement supersedes any implied agreements and/or contracts between the parties, and is binding on all parties and irrevocable, and the parties agreed to the terms and conditions of this agreement upon default of the defaulting party as of the date of the default, that the value of this agreement is equals to 201,971,880 two hundred and one million, nine hundred and seventy one thousand and eight hundred and eighty United States Dollars, payable as defined by Law in grains of silver pursuant to Article III, section 3.7(A) of this "Notice of Verified Claim for Relief and Money Demand" agreement. The Claimant once more respectfully requests the Tortfeasor(s) provide said necessary rebuttal/refutation of the "Notice of Verified Claim for Relief and Money Demand" so as to resolve any concerns. Otherwise, the Tortfeasor(s) are in agreement with Claimant.

5.4     The Claimant herein; and hereby, provides the Tortfeasor(s) twenty one (21) days; to commence the day after receipt of this Notice of Verified Claim for Relief and Money Demand, in which to gather and provide the Claimant with the requested and necessary rebuttal/refutation to the claims raised herein above, with the instruction, to transmit said rebuttal/refutation to the Claimant. Further, the Claimant herein; and hereby, extends to the Tortfeasor(s) the offer for an additional ten (10) days in which to provide said rebuttal/refutation.  If Tortfeasor(s) desires the additional ten (10) days, Tortfeasor(s) must cause to be transmitted to the Claimant. Upon receipt thereof, the extension is automatic; however, the Claimant strongly recommends the Tortfeasor(s) make request for the additional ten (10) days well before the initial twenty-one (21) days have elapse to allow for mailing time.  Further, the Claimant herein strongly recommends to Tortfeasor(s) that any request for the additional ten (10) days be transmitted **"Certified" Mail, Return Receipt Requested, and the contents therein under Proof of Mailing for the good of all concerned.**

5.5    Should the Tortfeasor(s) fail or otherwise refuse to provide the requested and necessary rebuttal/refutation raised herein above within the expressed period of time established and set herein above, Tortfeasor(s) will be deemed to have agreed and consented through "tacit acquiescence" to ALL the facts in relation to the above referenced alleged Commercial/Civil/Case/Cause/Citation; and ALL facts necessarily and of consequence arising there from, are true as they operate in favor of the Claimant, and that said facts shall stand as fact and uncontroverted and ultimate (un-refutable) between the parties to this Notice of Verified Claim for Relief and Money Demand. The corporate Government juridical construct(s), Tortfeasor(s), represents/serves, and ALL officers, agents, employees, assigns, and the like in service to Tortfeasor(s), as being undisputed and shall jointly and severally bound thereby. Further, a Non-response is agreement. Partial response without rebuttal/refutation is agreement. Any points left unrebutted are points in agreement between Claimant and the Tortfeasor(s). Further, failure and/or refusal by Tortfeasor(s) to provide the requested rebuttal/refutation shall act/operate as ratification by Tortfeasor(s) that ALL facts as set, established, and agreed upon between the parties to this Notice of Verified Claim For Relief and Money Demand, are true, correct, complete, and NOT misleading.

## ARTICLE VI.    ARBITRATION

6.1    **ADDITIONALLY** it is exigent and of consequence for the Claimant to inform Tortfeasor(s), in accordance with and pursuant to the principles and doctrines of "clean hands" and "good faith," that by Tortfeasor(s) failure and/or refusal to respond and provide the requested and necessary rebuttal/refutation to the "Notice of Verified Claim for Relief and Money Demand" raised herein above and thereby; and it shall be held and noted and agreed to by all parties, that a general response, a nonspecific response, or a failure to respond with specificities and facts and conclusions of common law, and or to provide the requested information and documentation that is necessary and in support of the agreement shall constitute a failure and a deliberate and intentional refusal to respond and as a result thereby and or therein, expressing the defaulting party's consent and agreement to said facts and as a result of the **self-executing agreement**; and,

6.2    In accordance with and pursuant to this agreement; a contractually (consensual) binding agreement between the parties to this Notice of Verified Claim for Relief and Money Demand to include the corporate Government juridical construct(s) whom Tortfeasor(s) represents/serves; as well as, ALL officers, agents, employees, and assigns. Tortfeasor(s) will not argue, controvert, oppose, or otherwise protest ANY of the facts already agreed upon by the parties set and established herein; and necessarily and of consequence arising therefrom, in ANY future remedial proceeding(s), action(s), **including binding arbitration** and confirmation of the award in the District Court of the United States at any competent court under original jurisdiction, in accordance with the general principles of non-statutory Arbitration. This Notice of Verified Claim for Relief and Money Demand Agreement/Contract Claim No.: EDM-08211975-E10673-LVLD constitutes an agreement of all interested parties in the event of a default and acceptance

through silence/failure to respond when a request for summary disposition of any claims or particular issue may be requested and decided by the arbitrator. Whereas a designated arbitrator shall be chosen at random, who is duly authorized, and in the event of any physical or mental incapacity to act as arbitrator, the Claimant shall retain the authority to select any other neutral(s)/arbitrator(s) that qualify pursuant to the common law right to arbitration, as the arbitration process is a private remedy decided upon between the parties, and with respects this agreement, the defaulting party waives any and all rights, services, notices, and consents to the Claimant and or the Claimant's representative selection of the arbitrator thereby constituting agreement. **Any controversy or claim arising out of or relating in any way to this Agreement or with regard to its formation, interpretation or breach, and any issues of substantive or procedural arbitrability <u>shall be settled by arbitration</u>**, and the arbitrator may hear and decide the controversy upon evidence produced although a party who was duly notified of the arbitration proceeding did not appear; that the Claimant deems necessary to enforce the "good faith" of ALL parties hereto within without respect to venue, jurisdiction, law, and forum the Claimant deems appropriate. Further, both parties agree that ALL costs and fees of conducting the arbitration will be paid in full to the arbitrator by the losing or the defaulting party upon completion of arbitration.

6.3    Further, Tortfeasor(s) agrees the Claimant can secure damages via Tort Claim and/or filing financial lien on assets, and the perfection of a security interest via a Uniform Commercial Code financing 1 Statement on properties held by them or on their behalf for ALL injuries sustained and inflicted upon the Claimant for the moral wrongs committed against the Claimant as set, established, agreed and consented by the parties to the "Notice of Verified Claim for Relief and Money Demand" herein. Further, Tortfeasor(s) failure and or refusal to provide the requested and necessary rebuttal/refutation and thereby; and therein consenting and agreeing to ALL the facts set, established, and agreed upon between the parties hereto, **shall constitute a <u>self-executing binding irrevocable durable general power of attorney coupled with interests</u>**; this Notice of Verified Claim for Relief and Money Demand becomes the security agreement under commercial law, whereby only the non-defaulting party becomes the secured party, the holder in due course, the creditor in and at **commerce**.

6.4    Should Tortfeasor(s) allow the twenty-one (21) Calendar days or thirty-one (31) Calendar days total if request was made by signed written application for the additional ten (10) Calendar days to elapse without providing the requested and necessary rebuttal/refutation, Tortfeasor(s) will go into fault and the Claimant will cause to be transmitted a Notice of Fault and Opportunity to Cure and Contest Acceptance to the Tortfeasor(s); wherein, Tortfeasor(s) will be given an additional three (3) days (72 hours) to cure Tortfeasor(s) fault. Should Tortfeasor(s) fail or otherwise refuse to cure Tortfeasor(s) fault and fail to dispute the Claims and the Factual statement(s) herein as above, Tortfeasor(s) will be found in default and thereby; and therein, Tortfeasor(s) will have established Tortfeasor(s) consent and agreement to the facts contained within this Notice of Verified Claim for Relief and Money Demand as said facts operate in favor of

the Claimant; e.g., that the judgment of alleged "court of record" within the above referenced alleged Commercial/Civil/Cause is **VOID AB INITIO** for want of subject-matter jurisdiction of said venue; insufficient document (Information) and affidavits in support thereof for want of establishing a claim of debt; want of Relationship with the "source of authority" for said statute(s)/law(s) for want of privity of contract, or contract itself; improperly identified parties to said judgment, as well as said dispute/matter; and, Tortfeasor(s) agrees and consents that Tortfeasor(s) does have a duty and obligation to Claimant; as well as the corporate Government Department/agency construct(s) Tortfeasor(s) represents/serves, to correct the record in the above referenced alleged Commercial/Civil/Cause and thereby; and therein, release the indenture (however termed/styled) upon the Claimant and cause the Claimant to be restored to liberty, and releasing the Claimant's property rights.

6.5   . Any determination by the arbitrator is binding upon all parties, and that all parties agree to abide by the decision of the arbitrator, that the arbitrator is to render a decision based upon the facts and conclusions as presented within the terms and conditions of the contract. Any default by any party must be supported by proof and evidence of said default, that default shall serve as tacit acquiescence on behalf of the party who default it as having agreed to the terms and conditions associated with the self-executing binding irrevocable contract coupled with interests.

6.6   The Claimant, expressly reserves the right/duty to make amendment to this document as is necessary in order that the truth may be ascertained and proceedings justly determined.  Any such amendments are to relate back to the original document.

## ARTICLE VII. Acknowledgement and Agreement

7.1   WHEREAS:  Claimant, is a Citizen of the Colorado Republic, a republic comprised of the people; hence he is one of the people, which the Constitution for the Republic and Union of States reserves all Powers and Authority to Claim Inalienable Rights and Property, and claimant is one of the holders of the inherent political power of the State of Colorado and does hereby Claim His Authority, Property, and Rights as Granted by Yahweh (The Heavenly Creator), and as further set forth herein, and

7.2   WHEREAS:  Eyoel-Dawit: Matios (Claimant), common-law copyright name of the Man-Being, as the Trustee with Power of Attorney for the EYOEL DAWIT MATIOS© Express/Irrevocable Trust claims a status as a Constitutional Common-law Citizen of the Colorado Republic HAS Recorded with the Clerk of the Court a twenty four (24) page document titled "Notice of Verified Claim of Rights and Status" Reception No: 20190078553, and with Colorado Secretary of State a twenty five (25) page document titled "Legal Notice and Demand" Record No.: 20182104442, Master Recoding ID No.: 20182103665, stating his rights, his property and his status subject thereto and incorporated herein, and

7.3    WHEREAS:  among CLAIMANT's inalienable rights, is his right to use the public roadways of Colorado for his personal pleasure and business, as of common right, without first receiving permission to use said roads as mere privilege granted by any officer of the aforesaid state government, and

7.4    WHEREAS:  The each member of the City Council for the City of Loveland acknowledged a duty to support the Constitution and uphold the Laws of Colorado and the Laws of the United States by affirming their Oath and Duty to the People of the State of Colorado, and, similarly, Gerellen R. Joneson a.k.a. Geri R. Joneson, acknowledged an Oath and Duty as a Magistrate for the Loveland Municipal Court; and officer Dylan Copello acknowledged an Oath and Duty as a Peace Officer with the City of Loveland Police Department, and

7.5    WHEREAS:  Claimant accepted the Oaths of Office of all Colorado Government Officials for Value, binding them to Support the Constitution and the Laws in Acknowledgement of the Inalienable Rights of Claimant as Citizen of the Colorado Republic; and

7.6    WHEREAS:  the aforesaid people of the State of Colorado and the City of Loveland have no authority to convert any of their inalienable rights, or the inalienable rights of their fellow citizens, into privileges or into crimes, or otherwise derogate or abrogate said rights, and

7.7    WHEREAS: The 'CITY OF LOVELAND', and 'STATE OF COLORADO' are corporations, acting under color of law, who have contracted to represent the real, live People and Citizens of the State of Colorado (Republic) through agents with oath of office; and

7.8    WHEREAS: The position of a public office is a public Trust, and

7.9    WHEREAS: The Loveland Municipal Court Judge, Gerellen R. Joneson a.k.a. Geri R. Joneson and officer Dylan Copello are appointed or elected by the City of Loveland and have taken a public office position and have taken an Oath of Office to support the Constitution of the United States and the State of Colorado, and

7.10    WHEREAS: The Loveland Municipal Court Judge, Gerellen R. Joneson and officer Dylan Copello By their Oaths of Office are contractually bound by the U.S. Constitution as formulated by its framers, and not as "interpreted," subverted, or corrupted by the U.S. Supreme Court or other courts, in accordance with the U.S. Constitution, Article VI, and

7.11   WHEREAS: The Assistant City Attorney, Emilie Loomis and Municipal Court Administrator, Patty Parker are <u>employed</u> by the City of Loveland and <u>are not in position of Public Office</u>, and do NOT have an Oath of Office, and

7.12   WHEREAS: The Assistant City Attorney, Emilie Loomis has NO OATH OF OFFICE and therefore does NOT represent "the People of the State of Colorado" and does NOT represent any United States and State government office, in accordance with the U.S. Constitution, Article VI, and

7.13   WHEREAS: any court of the State of Colorado and the City of Loveland, when hearing a matter charging a citizen with violation of any provision of statutes in Title 42 of the Colorado Statutes, and/or any of the Colorado Model Traffic Code is prima facie, is at best sitting as a legislative court, hence a <u>quasi-judicial</u> power court, and <u>not as a judicial</u> power court, and the officer sitting on the bench is, at best, sitting in a <u>ministerial office</u>, and a quasi-judicial power office, and not in a judicial power office, and most commonly sits as a state actor conducting <u>ad hoc summary proceedings</u>, and

7.14   WHEREAS:  in no case can the CLAIMANT, a holder of the inherent political power of the State of Colorado in the first instance, be a person subject to appear and be tried before a quasi-judicial, a.k.a. administrative court, a.k.a. legislative court, when <u>no nexus</u> is in evidence connecting the CLAIMANT to any activity regulated and regulatable by the DMV. This violation of authority is evidenced by promulgated administrative rules, which make specific the intent of the legislature regarding the specific provision of the aforesaid chapters of the Colorado Statutes, which enumerate traffic regulatory-related statutes, which CLAIMANT is alleged to have violated. Any claim that trustees have sovereign powers over the people through their legislative courts notwithstanding in law and any such claim makes them <u>de facto</u> courts and <u>de jure</u>, and

7.15   WHEREAS: the Driver's Privacy Protection Act of 1994 (DPPA) declared State DMVs require drivers and automobile owners to provide personal information, which may include a person's name, address, telephone number, vehicle description, Social Security number, medical information, and photograph, as a condition of obtaining a driver's license or registering an automobile is, an article of **commerce** and that anything used from that information is for **interstate commerce** purpose. See Reno v. Condon, No. 98-1464, decided January 12, 2000, and

7.16   WHEREAS: The United States asserts that the DPPA is a proper exercise of Congress' authority to regulate interstate commerce under the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3. The United States bases its Commerce Clause argument on the fact that the personal, identifying information that the DPPA regulates **is a "thin[g] in interstate commerce,"** See United States v. Lopez, 514 U.S. 549, 558-559 (1995), and

7.17    WHEREAS: The principle of in pari materia  dictates that this definition in 18
USC § 31 must be applied in all Federal and/or State statutes that contain or
include the term "motor vehicle," which statutes are limited in their application
and operation, and that can embrace only one, single subject matter: the
regulation of certain State-created entities: persons who operate said "motor
vehicles"  that are "used for commercial purposes", and

7.18    WHEREAS: In Title 18 USC Sec. 31 (a) Definitions, (6) "Motor Vehicle" means
every description of carriage or other contrivance propelled or drawn by mechanical
power and used for commercial purposes on the highways in the transportation of
passengers, passengers and property, or property or cargo; and (10) "Used for
commercial purposes" means the carriage of persons or property for any fare, fee,
rate, charge or other consideration, or directly or indirectly in connection with any
business, or other undertaking intended for profit[.]", and

7.19    WHEREAS:  The Motor Vehicle Transportation License Act of 1952 (Stats. 1925,
p. 833) in favor of those who solely transport their own property or employees, or
both of those who transport no persons or property for hire or compensation, by
motor vehicle, have been determined in the Bacon Service Corporation case to be
lawful exemption. –In re Schmolke (1926) 199 Cal. 42, 46, and

7.20    WHEREAS: The state of Colorado in accordance with Title 4 U.S.C. § 112 (a)(b)
has entered into agreements or compacts for cooperative effort and mutual
assistance in the prevention of crime and in the enforcement of their respective
criminal laws and policies, and to establish such agencies, joint or otherwise, as they
may deem desirable for making effective such agreements and compacts, and

7.21    WHEREAS: Motor Vehicle Compact Excerpts, The Federal Motor Carrier Safety
Administration (FMCSA) Defines Motor Vehicle in §367.1 Definitions.  (c) Motor
vehicle — A self–propelled or motor driven vehicle operated by a motor carrier in
interstate or foreign commerce under authority issued by the Secretary, and defines
Participation by States in §367.2 Participation by States.   (a)  A state is eligible to
participate as a registration State and to receive fee revenue only if, as of January 1,
1991, it charged or collected a fee for a vehicle identification stamp or a number
pursuant to the provisions of the predecessor to this part, and

7.22    WHEREAS: Colorado Revised Statutes (CRS) Title 4-9-102(a)(23) defines
consumer goods to mean goods that are used or bought for use primarily for
personal, family, or household purposes, and

7.23    WHEREAS: In Bank of Boston vs Jones, 4 UCC Rep. Serv. 1021, 236 A2d 484,
UCC PP 9-109.14, the court ruled that  "A vehicle not used for commercial activity is
a "consumer goods", . . . it is NOT a type of vehicle required to be registered and

"use tax" paid of which the tab is evidence of receipt of the tax." "Thus, self-driven vehicles are classified according to the use to which they are put rather than according to the means by which they are propelled." Ex Parte Hoffert, 148 NW 20, and

7.24   WHEREAS: In re Schmolke (1926) 199 Cal. 42, 46 "... [T]he exemptions provided for in section 1 of the Motor Vehicle Transportation License Act of 1925 (Stats. 1925, p. 833) in favor of those who solely transport their own property or employees, or both, and of those who transport no persons or property for hire or compensation, by motor vehicle, have been determined in the Bacon Service Corporation case to be lawful exemptions, and

7.25   WHEREAS: The Claimant on October 26, 2019 was pulled over by Loveland Police Officer Dylan Copello at 5:40am, without a warrant, stated no probable cause, known to the common law, to stop or detain or imprison the CLAIMANT and required him to identify himself violating the Fourth Amendment because the officers lacked any reasonable suspicion to believe the Claimant was engaged, or had engaged, in criminal conduct, in which the officer testified to having no warrant and no crime being committed; see Brown v. Texas, 443 U.S. 47, (1979), and

7.26   WHEREAS: law enforcement officers did not have a warrant in his actual possession at the time of the arrest/detain/stop/pull and therefor his detainment of the Claimant was not lawful, and did commit trespass by violating the due process clause of the national/federal Constitution, and in the act committed harassment on the claimant without probable cause, committed unlawful detention by the restraint against Claimant's will to move about his business without the interference of government official, restrained Claimants in the exercise of his liberty, and confine and imprison ("false imprisonment") the Claimant by forcibly detaining the Claimant in the public streets without any legal authority."; and

7.27   WHEREAS: The Loveland Police Officer Dylan Copello served The Claimant a traffic infraction/citation of a provision of Statute/Code, charged by officers of the aforesaid state legislative body to their creature, the DMV, with administration and enforcement and threatened, intimidated and informed the Claimant to show up for appearance on a specified day and time on the citation or pay the fine earlier (extortion).  "Traffic infractions are not a crime." People v. Battle, (1975) 50 Cal.App.3d Supp. 1, 123 Cal.Rptr. 636, People v. Oppenheimer (1974) 42 Cal.App.3d Supp. 4, 116 Cal.Rptr. 795, People v. Sava (1987) 190 Cal.App.3d 935, 235 Cal.Rptr. 694, and

7.28   WHEREAS: The Claimant was NOT engaged/engaging in interstate commerce, and was NOT transporting no persons or property for hire or compensation, by

motor vehicle at the time he was stopped, detained, and imprisoned by Officer Dylan Copello, and

7.29   WHEREAS: The Citation, presumptively issued by Officer Dylan Copello, is merely hearsay, for want of any properly sworn statement by the officer, verifying that statements made in said citation instrument are true and correct, and

7.30   WHEREAS: Loveland Police Officer Dylan Copello is elected/appointed by the City of Loveland, served the Claimant the SUMMONS/complaint/citation for the City of Loveland, brought the complaint against the Claimant for the City of Loveland, became the Trial Witness in Loveland Municipal Court against the Claimant for the City of Loveland, and receives his wages from the City of Loveland, and

7.31   WHEREAS: The Federal Rule of Civil Procedure Rule 4 and Colorado Rule of Civil Procedure Rule 4 states: "A 'Summons' may be served by any person who is at least 18 years of age and not a party to the action."  See Caldwell v. Coppola, 219 Cal.App.3rd, 859, and

7.32   WHEREAS: The Traffic Citation and Complaint #E10673 neither indicates on its face that a lawsuit is pending, nor does it comply with the rules for "form and content" of civil summonses and is defective in the following ways: (a) it does not bear the signature of the clerk of the court. (b) it does not have the seal of the court placed upon it. (c) it does not contain the name and address of the plaintiff's attorney or plaintiff's address per se. (d) it does not have a copy of the plaintiff's complaint and probable cause affidavit attached.  (e) Without an attached complaint and probable cause affidavit or Bill of Particulars, petitioners have no way of knowing what the nature and cause of the underlying complaint is about and what relief the plaintiff demands. (f) Officer Dylan Copello, himself, "served" said Traffic Citation and Complaint and is the party who has an "adversarial interest" in the instant matter (conflict of interest), and

7.33   WHEREAS: The City of Loveland and Loveland Police Officer Dylan Copello did violate the Federal and the states Rule of Civil Rule Procedure Rule 4 in violation of Amendment V of the United States Constitution, the Constitution of the State of Colorado Article II (Bill of Rights) section 25 requiring "due process," and in the process committed FRAUD by fraudulent service by persons with an adversarial interest in a legal action, and

7.34   WHEREAS: neither the officer nor any prosecutor has brought any indictment, complaint, or other manner of formal charges, specifically, accurately, and clearly averring any common law crime committed by CLAIMANT, nor identification of any victim, nor Officer Dylan Copello prepared a duly sworn affidavit in support of any indictment or complaint, stating specific facts regarding specific acts committed by

the CLAIMANT. Where there is no affidavit of probable cause, there is no warrant for prosecution, and

7.35   WHEREAS: the Claimant has no contract, nexus (relationship) with the City of Loveland and/or its agent(s), employees, and officers from which the court can assume its right to decide and thereby and therein, bind the Claimant to the "un/non-constitutional" source of authority for the existence of the statute/law acting as the terms/conditions of said contract, in which the Claimant is alleged/charged as violating; or, being in breach thereof, and

7.36   WHEREAS: that the aforesaid protected due process of law rights was violated, both in form and in substance and that all proceedings in the case/citation were conducted solely upon hearsay evidence, presumptions of law and jurisdiction, which, upon challenge, must be demonstrated, and

7.37   WHEREAS: The Loveland Police Officer Dylan Copello acting under "color of law" as to those deprivations of right committed in the fulfillment of the tasks and obligations assigned to him; see Monroe v. Page, 1961, 365 U.S. 167, and in doing so he is in violation of the Constitution and he ceased to represent the government in breach of his TRUST. see Brookfield Const. Co. v. Stewart, 284 F.Supp. 94, and

7.38   WHEREAS: "The officers of the law, in the execution of process, are required to know the requirements of the law, and if they mistake them, whether through ignorance or design, and anyone is harmed by their error, they must respond in damages." Roger v. Marshall (United States use of Rogers v. Conklin), 1 Wall. (US) 644, 17 Led 714, and "It is a general rule that an officer, executive, administrative, quasi-judicial, ministerial, or otherwise, who acts outside the scope of his jurisdiction, and without authorization of law may thereby render himself amenable to personal liability in a civil suit." Cooper v. O`Conner, 69 App DC 100, 99 F (2d), and

7.39   WHEREAS: The Assistant City Attorney, Emilie Loomis, has committed FRAUD by intentionally misleading the Claimant and acting to represent "the People of the State of Colorado", and filing motion(s) in the name of "the People of the State of Colorado", Refer to Claimant Claims #'s 3.158-3.162, and

7.40   WHEREAS: The Claimant requested from the Assistant City Attorney, Emilie Loomis in the "Request for Interrogatories and Production of Documents" (see Exhibit "L"), material information necessary to prevent statement from being misleading or making representation despite knowledge that it has no reasonable basis in fact; The Assistant City Attorney, Emilie Loomis Knowing refused and failed to disclose material information and committed FRAUD under COLORADO law. See Rubinstein v. Collins, 20 F.3d 160, 1990, and

7.41    WHEREAS: The Assistant City Attorney, Emilie Loomis Emilia AR #47246 did represent and act on behalf of the CITY OF LOVELAND, in an unlawful prosecution and wrongful conviction of Claimant; case/citation #E10673 and

7.42    WHEREAS:  C.R.S. § 4-3-501(b)(3) provides that a negotiable instrument presentment, may be refused, unaccepted, and returned, without dishonor, for failure of consideration, or non-compliance with any other law or rule, and

7.43    WHEREAS:  Claimant returned the Municipal Court Summons/Ticket Citation on October 30, 2019 due to the instrument being an unconscionable, void, and rejected for wanting cause, improper service of a summons (C.R.Civ.P. Rule 4) and violations of the Constitutional Rights to equal protection under the law. See (Exhibit "A"), and

7.44    WHEREAS: The Assistant City Attorney, Emilie Loomis was informed in the "Notice of Dispute" letter sent to her certified mail (see Exhibit "E") that her claim in the traffic ticket citation #E10673 was disputed and is Unconscionable "contract" in which the Claimant does NOT and will NOT accept, the liability associated with a "compelled" agreement of any unrevealed commercial benefit, or "Penumbra Doctrine" "engraft". See Franklin Fire Ins. Co.  v.  Noll, 115 Ind. App. 289, 58 N.E.2d 947, 949, 950, and

7.45    WHEREAS: The Assistant City Attorney, Emilie Loomis lacked to provide proof for validation of such claim that is, competent evidence that the Claimant have some contractual obligation to pay you UCC 1-201(11) and through her "silence" agreed her claim in the citation #E10673 is "estoppel" in pais, and

7.46    WHEREAS: The Assistant City Attorney, Emilie Loomis breached her agreement by proceeding with the traffic citation/complaint/claim without proving the requested proof for validation of such claim that is, competent evidence that I have some contractual obligation to pay you UCC 1-201(11) in violation of FAIR DEBT COLLECTION ACT, and

7.47    WHEREAS: the CITY OF LOVELAND, LOVELAND MUNICIPAL COURT and/or STATE OF COLORADO did NOT have standing to sue or otherwise prosecute, in the case/citation #E10673, for want of Persanum and subject-matter Jurisdiction, and

7.48    WHEREAS:  City of Loveland, by and through agents acting on behalf of CITY OF LOVELAND  have converted Claimants right into a privilege that they can regulate, and enforced 'speeding' with traffic ticket citations, and intentionally conspired with City of Loveland and Loveland Municipal Court prosecutor and judge to deprive Claimant of due process and equal protection of the law; and

7.49   WHEREAS: The Tortfeasor(s) and all parties participating/involved did violate Claimant's natural, essential, inalienable/inalienable Rights, in violation of Article II, Section 3 of the Colorado Constitution, and

7.50   WHEREAS: The corporate public servants, the Loveland Municipal Court Judge, Gerellen R. Joneson, the Loveland police officer, Dylan Copello, the Assistant City Attorney, Emilie Loomis and the Loveland Municipal Court Administrator, Patty Parker ignored their accountability as mandated in Bill of Rights and failed to fully inform the Claimant and the sovereign people of the United States of America that an automobile, a Trust, Legal Person has been confirmed by UCC 9-102, 9-109, to be "private property" defined as "household goods" and "consumer goods" not for commercial use or for profit or gain; and have by their silence and failure to fully inform the Claimant and the sovereign people of the consequences arising from the corporate "offer to contract," is deemed silent deception and inducement by fraud",. and

7.51   WHEREAS: The Loveland Municipal Court Judge Gerellen R. Joneson and Officer Dylan Copello are in Breach of TRUST, and

7.52   WHEREAS: The Tortfeasor(s) and all parties participating/involved did violate Claimant and committed an "constitutional impermissible acts"; or, "ultra vires" acts; or, "illegal" acts upon; and against, the Claimant. and

7.53   WHEREAS: the Claimant requested the Tortfeasor(s) Bond and/or their Crime insurance in accordance to CRS 24-14-102 concerning their performance and they refused/failed to provide the requested Bond and/or Crime Insurance and continued to perform their actions without a "perfected title" and are guilty of; inter alia, false personation, false pretenses, usurpation, fraud, official oppression, fraudulent and deceptive business practices, and trespass ab initio, acted and caused  injuries to the liberty which are principally termed "false imprisonments" or "malicious prosecutions, and

7.54   WHEREAS: The Tortfeasor(s) and all parties participating/involved did NOT provide the Claimant with proper and valid process and service concerning the SUMMONS in violation of Colorado Civil Procedure Rule (C.C.P.R.) Rule 4 and due process of law in violation of the 6th Amendment, and

7.55   WHEREAS: The Tortfeasor(s) and all parties participating/involved did unreasonably seize the Claimant without describing of the person or thing to be seized, nor without probable cause, supported by oath or affirmation reduced to writing in violation of Article II, Section 7 of the Colorado Constitution, and

7.56   WHEREAS:  the Magistrate Judge, did  confine and falsely imprison (false imprisonment) the Claimant by words in a form of an ORDER (see Exhibit C") sent

to the Claimant in the mail, requiring the Claimant to make an appearance at the appointed time, failure to comply with the ORDER would result in a Default Judgment being entered against the Claimant in the sum of $105 and a HOLD being placed on the Claimant's Driver's License, in which the Claimant feared to disregard. In the process the Judge restrained in the exercise of the Claimants liberty whereby he is deprived of his persona liberty, and committed mail fraud to add to the list of her crimes, and

7.57   WHEREAS: The Tortfeasor(s) and all parties participating/involved did threaten, intimidate, and coerced the Claimant to make an appearance for the arraignment or there would be consequences. See Exhibit "A" and Exhibit "C", and

7.58   WHEREAS: The Claimant did file Motion(s) and certified letter(s) with the Loveland Municipal Court Clerk the FACTS of the case. See Exhibit(s) "A" through "O", and

7.59   WHEREAS:  Magistrate Judge, Gerellen R. Joneson, acting on behalf of the City Loveland and the prosecutor, denied all the Motions recorded by Claimant without the response or objections from the Prosecutor and engaged in ex parte communicato, prejudice and official Misconduct; and

7.60   WHEREAS:  Magistrate Judge Gerellen R. Joneson, acting as judge under color of law, denied all Claimant's Pleadings and Motions to dismiss and made ORDER(s) on behalf of the People of the city of Loveland, denied Claimant his inalienable, constitutional and statutory rights by her misconduct as explained in Claimant's court pleadings incorporated by reference herein; and

7.61   WHEREAS: The Tortfeasor(s) and all parties participating/involved did NOT establish upon the face of the court's record its jurisdiction therein as to both in personam jurisdiction and subject-matter jurisdiction in accordance with and pursuant to due process of law or the law of the land, in violation of The United States Constitution Article VI, and

7.62   WHEREAS: The Loveland Municipal Court Judge Gerellen R. Joneson, lacked jurisdiction to act and enforce or render ORDER(s)/JUDGMENT(S) in the face of clearly valid statutes expressly depriving her of jurisdiction; Therefore, Judge Gerellen R. Joneson has lost her judicial immunity. See Rankin v. Howard, (1980) 633 F.2d 844, cert. den. Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326, and

7.63   WHEREAS: The Loveland Municipal Court Judge Gerellen R. Joneson, has committed lawless violence against the Claimant and treason to the Constitution by her enforcing and acting entirely without jurisdiction or without compliance with jurisdiction requisites and she is held civilly liable for abuse of process even if she

believes her act involved a decision made in good faith, that she had jurisdiction. See Little v. U.S. Fidelity & Guaranty Co., 217 Miss. 576, 64 So. 2d 697; See Ableman v. Booth, 21 Howard 506 (1859); See Cohen v. Virginia, (1821), 6 Wheat. 264 and U.S. v. Will, 499 U.S. 200, and

7.64   WHEREAS: The Tortfeasor(s) and all parties participating/involved did NOT provide the Claimant the nature and cause of the their accusation, did NOT provide the damaged party (corpus delecti), did NOT provide what rights of the damaged party did the Claimant violated and did NOT provided impartial jury and impartial Judge in violation of Article II, Section 16 of the Colorado Constitution, and

7.65   WHEREAS: In the Arraignment, the Municipal Court Judge Gerellen R. Joneson, entered a plea of not Guilty for the Claimant without his voluntary consent, without adequate notice of the nature of the charge against him, without the understanding the nature of the constitutional protections that he would be waiving if he was to plea and with incomplete understanding of the charge. See Smith v O'Grady, 312 U.S. 329, supra; see, e. g., Johnson v Zerbst, 304 U.S. 458, 464-465; 58 S Ct 1019; 82 L Ed 1461 (1938), and

7.66   WHEREAS: The Loveland Municipal Court's jurisdiction over the person "named', is not and was not conferred upon the court by/through consent, waiver, pleading to the merits, and/or by the "named' party/defendant/person appearing through counsel. [See:  Smith v. State, 148 S. 858, 860 (Ala. App. 1933); State v. Smith, 70 A.2d 175, 177, 7 N.J. Super. 85 (1949)]. The Claimant appearance was under extreme duress, and

7.67   WHEREAS: During the arraignment, the Municipal Court Judge Gerellen R. Joneson, kicked the Claimant out of the court room simply because the Claimant was asking questions and the judge by doing so denied the claimant access to the court and an opportunity to know the nature and cause of the case/charge he was being accused of violating and further was forced, threatened, intimidated, and coerced by the Loveland Municipal Court Administrator, Patty Parker to sign under extreme duress the "TRIAL NOTICE",  "PLEA OF NOT GUILTY AND REQUEST FOR COURT TRIAL (JUDGE), and "TRIAL RIGHTS AND PROCEDURE". See Exhibit "I", and

7.68   WHEREAS: The Municipal Court Judge Gerellen R. Joneson, against the Claimants will denied the Claimant a jury which may consist of less than twelve persons, in violation of Article II, Section 23 of the Colorado Constitution, and

7.69   WHEREAS: The Municipal Court Judge Gerellen R. Joneson, against the Claimants request denied the Claimant a COMMON LAW court, an Article III court, in accordance to the Constitution, and

7.70   WHEREAS: On Trial day, the Tortfeasor(s) and all parties participating/involved controlled the court proceeding in which claimant was NOT afforded an impartial judge and a fair Trial and the judge unethically aided and abetted the unauthorized practice of law by officers, and aided in presenting the prosecution's case to which the Claimant was found guilty by the corrupt judge, Gerellen R. Joneson and sentenced four (4) points to be taken away from Claimants driver(s) License under the guise of regulation and to pay Two Hundred Thirty Five Dollars (235.00) (Extorting), and

7.71   WHEREAS: The Loveland Municipal Court Judge Gerellen R. Joneson was acting without having "perfected titled" to her office; and, thereby; and therein, was "trespassing upon title" to said "office"; and, thereby; and therein, was  "usurping" the right of and right to exercise/use (falsely holding out possession coupled with use) the "plenary powers" resident within said "office;" and, did not possess lawful title to said "office", and the right of and right to exercise/use of said powers; and, was therefore acting under "color-of-law," "False Personation," "False Pretenses," "Usurpation," "Fraud," "Deceptive and Fraudulent Business Practices," and operating alone; or in concert, a "Confidence Game"; and, did thereby; and therein, commit "constitutional impermissible acts"; or, "ultra vires" acts; or, "illegal" acts upon; and against, the Claimant and, all decisions, orders, and the judgment entered/rendered within said Case/Citation are not valid, not enforceable, and of nonbinding force or effect, and

7.72   WHEREAS: all the acts, ORDER, and judgments made by the Judge are all "void judgment", and

7.73   WHEREAS: The Tortfeasor(s) failed to perform their duty/obligation in accordance with; and pursuant to, the terms and conditions of their voluntary commercial indenture through failure to/of duty and obligation to vacate the judgment(s)/order(s), and

7.74   WHEREAS:  all the "Order(s)" and "judgments" of the alleged court of record within the above referenced alleged Case/Cause/Citation, is a form of "bond" - i.e., a negotiable instrument evidencing debt and then sold for raising revenue;  The creation of such "Bond(s)" exists from the Claimants intellectual, common law copyrighted property used in this case/citation and such Bond(s) i.e. Performance Bond, Bid Bond, Payment Bond, Surety Bond, Miller Bond and other know and unknow Bond(s) are property of the claimant and Shall/Must be returned or compensated the Value of such Bond(s) that was generated and/or sold, and

7.75   WHEREAS: The Loveland Municipal Court chose NOT to dismiss the case/cause of action even when it lacked jurisdiction; and, its neglect or refusal to do so is usurpation.  [See: Garcia v. Dial, 596 S.W.2d 524, 528 (Tex.Civ.App. 1980), and

7.76   WHEREAS: The Tortfeasor(s) and all parties participating/involved did take Claimants private property for public or private use, without just compensation in violation of Article II, Section 15 of the Colorado Constitution, and

7.77   WHEREAS: The Tortfeasor(s) and all parties participating/involved did deprived the Claimant of life, liberty and property and the equal protection of the laws without due process of law in violation of Article II, Section 25 of the Colorado Constitution and The United States Constitution Amendment XIV, Section 1, and

7.78   WHEREAS: The Tortfeasor(s) and all parties participating/involved have extorted the Claimant and forced the Claimant into slavery and involuntary servitude by forcing the Claimant to pay for the bill of attainder/citation of Two Hundred Thirty Five Dollars (235.00) from his own hard-earned money in violation of Article II, Section 26 of the Colorado Constitution, and

7.79   WHEREAS: The Claimant, claimed the right to travel upon the public highways and to transport his property thereon in the ordinary course of life and business is a common right which he has under his right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety; It includes the right in so doing to use the ordinary and usual conveyances of the day. This right is not a mere privilege which a city may permit or prohibit at will. See: Thompson v. Smith, 155 Va. 367, (Va. 1930), See Colorado - § 33-14-101. Definitions (12) (12) "Street", "road", "freeway", or "highway" as a matter of right for the purpose of motor vehicle travel, See Colorado - § 155-3. Definitions "PUBLIC RIGHT-OF-WAY" as a matter of right for the purpose of vehicular or pedestrian travel, and

7.80   WHEREAS: The Claimant has NOT at any time waived his fundamental rights, "waivers of fundamental Rights must be knowing, intentional, and voluntary acts, done with sufficient awareness of the relevant circumstances and likely consequences. U.S. v. Brady, 397 U.S. 742 at 748 (1970); U.S. v. O'Dell, 160 F.2d 304 (6th Cir. 1947)", and

7.81   WHEREAS: The Tortfeasor(s) and all parties participating/involved have construed to deny and disparage Claimants fundamental rights to travel in violation of The Ninth Amendment to the U.S. Constitution, and

7.82   WHEREAS: The Tortfeasor(s) and all parties participating/involved have under color of  law, code, statute, ordinance, regulation, custom, and usage subjected, and causes to be subjected, the Claimant (a citizen of the State of Colorado republic), and deprived Claimant of his rights, privileges, and immunities secured by the Constitution and laws of the United States, and therefore are liable to the Claimant, suit in equity, or other proper proceeding for redress in accordance with Title 42 U.S. Code § 1983, and

7.83   WHEREAS: The Tortfeasor(s) and all parties participating/involved have under color of law, code, statute, ordinance, regulation, and custom, willfully subjected, and causes to be subjected, the Claimant (a citizen of the State of Colorado republic), and deprived Claimant of his rights, privileges, and immunities secured by the Constitution and laws of the United States, and therefore are fineable under this title or imprisoned not more than one year, or both in accordance with Title 18 U.S. Code § 242, and

7.84   WHEREAS: The Municipal Court Judge Gerellen R. Joneson, the police officer, Dylan Copello the Assistant City Attorney, Emilie Loomis and the Loveland Municipal Court Administrator, Patty Parker have conspired to injure, oppress, threaten, and intimidate the Claimant in State of Colorado in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; therefor are fineable under this title or imprisoned not more than ten years, or both in accordance with Title 18 U.S. Code § 241, and

7.85   WHEREAS: The Municipal Court Judge Gerellen R. Joneson, the police officer, Dylan Copello the Assistant City Attorney, Emilie Loomis and the Loveland Municipal Court Administrator, Patty Parker have conspired for the purpose of impeding, hindering, obstructing, and defeating, in a manner, the due course of justice in State of Colorado with intent to deny the Claimant the equal protection of the laws, and to injure him and his property for lawfully enforcing, or attempting to enforce, the right of his person, or class of persons, to the equal protection of the laws and therefore the Claimant is entitled to an action for the recovery of damages occasioned by such injury and/or deprivation, against ALL the Tortfeasor(s) who have conspired in accordance with Title 42 U.S.C. § 1985 (2), and

7.86   WHEREAS: The Municipal Court Judge Gerellen R. Joneson, the police officer, Dylan Copello the Assistant City Attorney, Emilie Loomis and the Loveland Municipal Court Administrator, Patty Parker have conspired for the purpose of depriving, either directly or indirectly, Claimants persons or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of the State of Colorado from giving or securing to Claimants person within such State the equal protection of the laws; in furtherance of the object of such conspiracy, whereby Claimant is injured in his person or property, and deprived of having and exercising any right or privilege of a citizen of the State of Colorado republic (several union state), and citizen of the united States of America (not to be confused with the Federal UNITED STATES), therefore Claimant is intitled to an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators in accordance with Title 42 U.S. Code § 1985 (3), and

7.87    WHEREAS: The Municipal Court Judge Gerellen R. Joneson, the police officer, Dylan Copello the Assistant City Attorney, Emilie Loomis and the Loveland Municipal Court Administrator, Patty Parker having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this Title 42 U.S. Code, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do and are liable to the Claimant, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action in accordance with Title 42 U.S. Code § 1986, and

7.88    WHEREAS: the law does specify or divide damages arising from torts for injury into two (2) types or classes; and, those two (2) types or classes are "actual damages" and "punitive damages" refer to Claimant Claims #'s 3.107-3.109, 3.113, 3.114, 3.115, and

7.89    WHEREAS:  In Trezevant v. CITY OF TAMPA 741 F.2d 336 (11th Cir.1984) the United States Court of Appeal upheld the District Court jury award of 25,000 dollars' compensation to James C. Trezevant for 23 minutes, 1,086.95 thousand dollars per minute, 1,565,000 million dollars per day, of unlawful incarceration; and

7.90    WHEREAS: Claimant claims, "actual" or "compensatory damages" in actions/claims for false arrest/false imprisonment have been established at 25,000 dollars per twenty-three (23) minutes, 1,565,000 million dollars per day; and, "punitive damages" may be set by the injured party/the Claimant. See: Trezevant v. City of Tampa, 741 F.2d 336 (1984), wherein damages were set as 25,000 dollars per twenty-three 23 minutes in a false imprisonment case, and

7.91    WHEREAS:  Trezevant v. City of Tampa, can be utilized by the Claimant in determining actual/compensatory damages should Tortfeasor(s) agree the Claimant has been falsely imprisoned; and, Tortfeasor(s) can provide any valid, lawful, and reasonable objection as to why it should not, or cannot, be so utilized and applied in this matter, and

7.92    WHEREAS:  Claimant, was forced to pay the Ticket/Citation/instrument under duress and all parties involved jointly and/or severally accept(s) the full responsibility and full commercial liability for the charges/ fees described herein in, for damages claimed, and

7.93    WHEREAS:  Claimant asserts his Right to Equitable Compensation of $1,086 per minute, from the City for violation of his Constitutional Rights as his Private Property; and any time and labor Claimant spends preparing or defending against any fictitious claim is considered incarceration because it deprives Claimant of his

inalienable/inalienable rights which include but are not limited to the rights to life, liberty and the pursuit of happiness (property).

## NOTICE TO AGENT IS NOTICE TO PRINCIPLE AND VICE VERSA

Further Eyoel-Dawit: Matios sayeth not.

The Undersigned hereby verifies, under penalty of perjury, under the laws of the united States of America, without the "United States" (federal government), that the above statement is true and correct, to the best of My current information, knowledge, and belief, so help Me God, pursuant to 28 U.S.C. § 1746(1).

Submitted this _17_ day of _April_ 2020.

All Rights Reserved without Prejudice, UCC 1-308

By: _____,

Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights

State of Colorado    )
                     ) SS.        **JURAT**
County of Larimer    )

The above-named living man/party, ___Eyoel-Dawit: Matios___, appeared before me, a Notary, SUBSCRIBED AND SWORN (or affirmed) under oath, on this _17_ day of _April_, 2020, deposes and sayeth that the foregoing "Notice of Verified Claim for Relief and Money Demand" and "Memorandum of Law in Support of Notice of Verified Claim for Relief and Money Demand" Claim # EDM-08211975-E10673-LVLD, is true to the best of his knowledge and belief.

By: _____ Seal:
        Notary Public Signature

My Commission Expires: _07/18/2021_

CARINA KLEJWA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174030238
MY COMMISSION EXPIRES JULY 18, 2021

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _20_ , day of _April_ , 2020, I Eyoel-Dawit: Matios have served a true and accurate copy of the foregoing:

"Notice of Verified Claim for Relief and Money Demand"
Claim # EDM-08211975-E10673-LVLD

And

"Memorandum of Law in Support of Notice of Verified Claim for Relief and Money Demand Claim # EDM-08211975-E10673-LVLD"

And sent the document(s) by placing same in the US Mail, sent by Certified Mail to the following Tortfeasor(s):

CITY OF LOVELAND

Cert. Mail No.: 70180360000018328810    Cert. Mail No.: 70182290000194905092
Emilie Loomis, Ass. City Attorney    Stephen C. Adams, City Manager
c/o Loveland Police & Court Building    c/o City of Loveland
c/o 810 E. 10th Street    c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537    Loveland, CO 80537

All Rights Reserved without Prejudice, UCC 1-308

By: _____ , TTEE ,
Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

LOVELAND, CO 80537

OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.55 |
| | $2.85 |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $0.00
☐ Return Receipt (electronic)  $0.00
☐ Certified Mail Restricted Delivery  $0.00
☐ Adult Signature Required  $0.00
☐ Adult Signature Restricted Delivery  $0.00

Postage  $8.25

Total Postage and Fees  $14.65

0196
65

Postmark
Here

04/20/2020

Sent To: Emilie Loomis, Ass. City Attorney
Street and Apt. No., or PO Box No.: Loveland Police & Court Bld 810 E. 10th St
City, State, ZIP+4: Loveland Co 80537

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7018 0360 0000 1832 8810

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
☑ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
Loveland, CO 80537

9590 9402 5029 9063 0489 72

2. Article Number (Transfer from service label)

7018 0360 0000 1832 8810

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                          ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
Jackie Appleby  4/21/20

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☑ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

9590 9402 5029 9063 0493 37

2. Article Number *(Transfer from service label)*

7018 2290 0001 9490 5092

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☒ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

# Exhibit B

"Legal Notification Notice of Fault Opportunity to Cure"

May 23, 2020

(Letter from Risk Management Department - May 27, 2020)

Certified Mail No.: _7o18  2290  ooo)  9490  5108_

# LEGAL NOTIFICATION

## NOTICE OF FAULT OPPORTUNITY TO CURE

Contract/Claim No.: EDM-08211975-E10673-LVLD

PARTIES

| | |
|---|---|
| TORTFEASOR(S)/OFFEREE:<br>CITY OF LOVELAND<br>c/o Emilie Loomis, Ass. City Attorney<br>c/o Loveland Police & Court Building<br>c/o 810 E. 10th Street<br>    Loveland, CO 80537<br>      and<br>c/o Stephen C. Adams, City Manager<br>c/o City of Loveland<br>c/o 500 E. 3rd Street, Suite 330<br>    Loveland, CO 80537 | CLAIMANTS/OFFEROR:<br>Eyoel-Dawit: Matios, in sui juris Capacity,<br>A living man with common law rights<br>c/o 3400 Stanford road, unit #B213<br>c/o Fort Collins, Colo. Republic near [80525]<br>    Non-Domestic/Non-Assumpsit<br>    united States of America |

May _23_, 2020

Re: Contract/Claim No.: EDM-08211975-E10673-LVLD

Attention: Stephen C. Adams, City Manager and
            Emilie Loomis, Assistant City Attorney,

This communication is to inform you are a party to the contract initiated by your confirmed receipt # 7018 0360 0000 1832 8810 and # 7018 2290 0001 9490 5092, via USPS Priority Mail delivered on __April 20, 2020__ (see enclosed proof of delivery). You have not disputed it's confirmation or complied with the terms of the contract, and that you are in fault of the agreement. As per the terms of the agreement, you have consented and agreed to all of the terms and conditions contained therein including but not limited to the "SELF-EXECUTING IRREVOCABLE DURABLE POWER OF ATTORNEY COUPLED WITH INTEREST".

If you did not receive the original contract communication, and were not aware of its existence, you have 72 hours to provide proof that you did not receive the original notification, or that document terms and conditions shall be deemed to be in full effect and force 3 days after receipt of this notice. This is a good faith effort in providing you with an **opportunity to cure your fault**. The contractual agreement includes as an exclusive remedy arbitration, this remedy is only available respecting the issue of default, whereby you prove based on a preponderance of evidence that you had not

received the 'SELF-EXECUTING IRREVOCABLE BINDING CONTRACTUAL AGREEMENT COUPLED WITH INTEREST'.

This is a legal communication, you are to take legal/judicial/special/exceptional notice as there may be dire and irreparable consequences that may affect you individually, professionally, legally, corporately.

Submitted this 23 day of _____May_____ 2020.

All Rights Reserved without Prejudice, UCC 1-308

By: _____,
Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights

Enclosures –
    Notice of previous proofs of delivery
    cover page of contract (not the entire contract)

NOTICE OF FAULT OPPORTUNITY TO CURE
Claim No.: EDM-08211975-E10673-LVLD    Page 2 of 3

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __23__ , day of __May__ , 2020, I Eyoel-Dawit:
Matios have served a true and accurate copy of the foregoing:

"Notice of Fault Opportunity To Cure"
Claim # EDM-08211975-E10673-LVLD

And sent the document(s) by placing same in the US Mail, sent by Certified Mail to the
following Tortfeasor(s):

## CITY OF LOVELAND

Cert. Mail No.: 70180360000018328827
Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
Loveland, CO 80537

Cert. Mail No.: 70182290000194905108
Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 8053

All Rights Reserved without Prejudice, UCC 1-308

By: _____ ,
     Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
     A living man who has reserved all common law rights

NOTICE OF FAULT OPPORTUNITY TO CURE
Claim No.: EDM-08211975-E10673-LVLD    Page 3 of 3



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

LOVELAND CO 80537

| | | |
|---|---|---|
| Certified Mail Fee | $3.55 | |
| $ | | |
| Extra Services & Fees *(check box, add fee as appropriate)* | | |
| ☐ Return Receipt (hardcopy) | $ | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $1.40 | |
| $ | | 05/23/2020 |
| Total Postage and Fees | $7.80 | |
| $ | | |

Sent To *Stephen C. Adams, City Manager*
Street and Apt. No., or PO Box No. *500 E. 3rd Street, Suite 330*
City, State, ZIP+4® *Loveland CO 80537*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7018 2290 0001 9490 5108

---

**SENDER: COMPLETE THIS SECTION**

- ☑ Complete items 1, 2, and 3.
- ☑ Print your name and address on the reverse so that we can return the card to you.
- ☑ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

9590 9402 5029 9063 0491 15

2. Article Number *(Transfer from service label)*

7018 2290 0001 9490 5108

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *James Smaller*   ☐ Agent   ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
*James Smaller*   5-26-20

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☑ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

LOVELAND, CO 80537

| | | |
|---|---|---|
| Certified Mail Fee | $3.55 | 0196 20 |
| $ | $2.85 | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $0.00 | Here |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | | |
| Postage | $1.40 | |
| $ | | 05/23/2020 |
| Total Postage and Fees | $7.80 | |

Sent To
Emilie Loomis, Ass. City Attorney
Street and Apt. No., or PO Box No.
810 E. 10th Street (Loveland Police & Court Building)
City, State, ZIP+4®
Loveland, CO 80537

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
Loveland, CO 80537

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 5029 9063 0491 22

2. Article Number (Transfer from service label)
7018 0360 0000 1832 8827

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *[signature]* ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from Item 1? ☐ Yes
   If YES, enter delivery address below: ☒ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt



**CITY OF LOVELAND**
HUMAN RESOURCES DEPARTMENT
RISK MANAGEMENT DIVISION
500 E.3rd ST, Ste. 300 • Loveland, Colorado 80537
(970) 962-3314 • FAX (970) 962-3402 • TDD (970) 962-2620

May 27, 2020

Mr. Eyoel-Dawit: Matios, Claimant
3400 Stanford Road, Unit #B213
Fort Collins, CO 80525

Dear Mr. Matios,

The City has received the document titled *"Notice of Fault Opportunity to Cure."* The City rejects and denies the claim again and will not be paying any sum of money.

Sincerely,

Jason Smitherman
Risk Manager

# Exhibit C

"Final Legal Notification Notice of Default"

June 20, 2020

(Letter from Risk Management Department - June 25, 2020)

Certified Mail No.: *7018 2290 0001 9490 5115*

# FINAL LEGAL NOTIFICATION

## NOTICE OF DEFAULT

### Contract/Claim No.: EDM-08211975-E10673-LVLD

PARTIES

TORTFEASOR(S)/OFFEREE:
CITY OF LOVELAND
c/o Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
  Loveland, CO 80537
    and
c/o Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
  Loveland, CO 80537

CLAIMANTS/OFFEROR:
Eyoel-Dawit: Matios, in sui juris Capacity,
A living man with common law rights
 c/o 1312 Castlerock drive
c/o Fort Collins, Colo. Republic near [80521]
  Non-Domestic/Non-Assumpsit
  united States of America

June 20 , 2020

Re: Contract/Claim No.: EDM-08211975-E10673-LVLD

Attention: Stephen C. Adams, City Manager and
    Emilie Loomis, Assistant City Attorney,

  This communication is to inform you are a party to the fifty-four (54) pages contract initiated by your confirmed receipt # 7018 0360 0000 1832 8810 and # 7018 2290 0001 9490 5092, via USPS Priority Mail delivered on  April 20, 2020  (see enclosed proof of delivery confirmed). **This Notice shall also service as a notification of Claimants address change to:**

  c/o 1312 Castlerock drive
  c/o Fort Collins, Colo. Republic near [80521]
    Non-Domestic/Non-Assumpsit
    united States of America

  Pursuant to ARTICLE V, section 5.2 of the contract Claim # EDM-08211975-E10673-LVLD, you have **NOT** provided the Claimant the requested rebuttal/refutation by a sworn affidavit of someone with personal firsthand knowledge, given under penalties of perjury, and duly served upon the Claimant. Said Affidavit must be given

rebutting each issue raised within the **"Notice of Verified Claim for Relief and Money Demand"**, point for point, with your counter-affidavit, proving with particularity by stating all requisite actual evidentiary and documented fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that any specific paragraph of the **"Notice of Verified Claim for Relief and Money Demand"** is substantially or materially false sufficiently to change substantially or materially Claimants status and factual declarations.

Pursuant to Article V, section 5.5, you have failed or otherwise refused to provide the requested and necessary rebuttal/refutation raised in the **"Notice of Verified Claim for Relief and Money Demand"** contract within the expressed period of time established and set in the contract.  In doing so you are deemed to have agreed and consented through "tacit acquiescence" to ALL the facts in relation to the alleged Commercial/Civil, Case/Cause/Citation # E10673; and ALL facts necessarily and of consequence arising there from, are true as they operate in favor of the Claimant, and that said facts shall stand as fact and uncontroverted and ultimate (un-refutable) between the parties to the **"Notice of Verified Claim for Relief and Money Demand"**.

The corporate Government juridical construct(s), Tortfeasor(s), represents, serves, and ALL officers, agents, employees, assigns, and the like in service to Tortfeasor(s), as being undisputed and shall jointly and severally bound thereby. Further, **a Non-response is agreement. Partial response without rebuttal/refutation is agreement. Any points left unrebutted are points in agreement between Claimant and the Tortfeasor(s).**  Further, failure and/or refusal by Tortfeasor(s) to provide the requested rebuttal/refutation shall act/operate as ratification by Tortfeasor(s) that ALL facts as set, established, and agreed upon between the parties to the "Notice of Verified Claim For Relief and Money Demand", are true, correct, complete, and NOT misleading.

Pursuant to Article III, section 3.7(A), and Article V, section 5.3 of the **"Notice of Verified Claim for Relief and Money Demand"** agreement, you are in agreement to the terms and conditions of the contract upon your default as of the date of the default, that the value of this agreement is equals to 201,971,880 two hundred and one million, nine hundred and seventy one thousand and eight hundred and eighty United States Dollars **currently due, payable as defined by Law in Title 31 U.S.C. 5112**.

If you did not receive the **original contract communication**, and were not aware of its existence, you have 72 hours to provide proof that you did not receive the original notification, or that document terms and conditions shall be deemed to be in full effect and force 3 days after receipt of this notice. The contractual agreement includes as an exclusive remedy arbitration, this remedy is only available respecting the issue of default, whereby you prove based on a preponderance of evidence that you had not received the **"Notice of Verified Claim for Relief and Money Demand"**, a Self-Executing Contract Agreement.

FINAL LEGAL NOTIFICATION NOTICE OF DEFAULT
Claim No.: EDM-08211975-E10673-LVLD  Page 2 of 4

This is a legal communication, you are to take legal/judicial/special/exceptional notice as there may be dire and irreparable consequences that may affect you individually, professionally, legally, corporately.

Submitted this _20th_ day of ___June___ 2020.

All Rights Reserved without Prejudice, UCC 1-308

By: _____,
    Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
    A living man who has reserved all common law rights

Enclosures:
  Proof of delivery confirmed and
  cover page of contract (not the entire contract)

FINAL LEGAL NOTIFICATION NOTICE OF DEFAULT
Claim No.: EDM-08211975-E10673-LVLD  Page 3 of 4

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22_4_, day of __June__, 2020, I Eyoel-Dawit: Matios have served a true and accurate copy of the foregoing:

"Final Legal Notification Notice of Default"
Claim # EDM-08211975-E10673-LVLD

And sent the document(s) by placing same in the US Mail, sent by Certified Mail to the following Tortfeasor(s):

## CITY OF LOVELAND

Cert. Mail No.: 70180360000018328759
Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
Loveland, CO 80537

Cert. Mail No.: 70182290000194905115
Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 8053

All Rights Reserved without Prejudice, UCC 1-308

By: _____,
Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights

**FINAL LEGAL NOTIFICATION NOTICE OF DEFAULT**
Claim No.: EDM-08211975-E10673-LVLD  Page 4 of 4



**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information visit our website at www.usps.com®

LOVELAND, CO 80537

| | |
|---|---|
| Certified Mail Fee | $3.55 |
| $ | $2.85 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $0.85 |
| Total Postage and Fees | $7.25 |

0196
01

Postmark
Here

06/29/2020

Sent To
*Stephen C. Adams, City Manager*
Street and Apt. No., or PO Box No.
*c/o 500 E. 3rd St. Suite 330*
City, State, ZIP+4®
*Loveland   CO   80537*

7018 2290 0001 9490 5115

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

9590 9402 5029 9063 0493 44

2. Article Number *(Transfer from service label)*

7018 2290 0001 9490 5115

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☒ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information visit our website at www.usps.com®.

LOVELAND, CO 80537

| Certified Mail Fee | $3.55 | | 0196 |
| Extra Services & Fees (check box, add fee as appropriate) | | | 01 |
| ☐ Return Receipt (hardcopy) | $0.00 | | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark | |
| ☐ Certified Mail Restricted Delivery | $0.00 | Here | |
| ☐ Adult Signature Required | $0.00 | | |
| ☐ Adult Signature Restricted Delivery | $ | | |
| Postage | $0.85 | | |
| $ | | | 06/20/2020 |
| Total Postage and Fees | $7.25 | | |

Sent To *Emilie Loomis, Ass. City Attorney*
Street and Apt. No., or PO Box No. *c/o 810 E. 10th St. (Loveland Police & Court Building)*
City, State, ZIP+4® *Loveland, CO 80537*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7018 0360 0000 1832 8759

---

**SENDER: COMPLETE THIS SECTION**

- ☑ Complete items 1, 2, and 3.
- ☑ Print your name and address on the reverse so that we can return the card to you.
- ☑ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Emilie Loomis, Ass. City Attorney
   c/o Loveland Police & Court Building
   c/o 810 E. 10th Street
   Loveland, CO 80537

9590 9402 5029 9063 0491 08

2. Article Number (Transfer from service label)

   7018 0360 0000 1832 8759

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Hope K-88_                         ☐ Agent
                                      ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☑ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☑ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☑ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                     Domestic Return Receipt



**CITY OF LOVELAND**
HUMAN RESOURCES DEPARTMENT
RISK MANAGEMENT DIVISION
500 E.3rd ST, Ste. 300 • Loveland, Colorado 80537
(970) 962-3314 • FAX (970) 962-3402 • TDD (970) 962-2620

June 25, 2020

Mr. Eyoel-Dawit: Matios, Claimant
3400 Stanford Road, Unit #B213
Fort Collins, CO 80525

Dear Mr. Matios:

The City has received the document titled *"Notice of Default."* The City is not in default and has denied all claims. Finally and most importantly, the City will not be paying any sum of money.

Sincerely,

Jason Smitherman
Risk Manager

# <u>Exhibit D</u>

Request for Dispute Resolution on Complaint

December 27, 2020

**REQUEST FOR DISPUTE RESOLUTION ON COMPLAINT**

**IN THE MATTER OF THE ARBITRATION BETWEEN THE FOLLOWING PARTIES:**

| | |
|---|---|
| Eyoel-Dawit: Matios, in sui juris Capacity,<br><br>CLAIMANT,<br><br>vs.<br><br>CITY OF LOVELAND, in care of Stephen C. Adams, City Manager<br><br>RESPONDENT(S)<br><br>(Additional parties names listed below) | **Contract name: Notice of Verified Claim for Relief and Money Demand**<br><br>**Contract # EDM-08211975-E10673-LVLD**<br><br>**REQUEST FOR DISPUTE RESOLUTION ON COMPLAINT:**<br><br>9 U.S. CODE § 1, 2, 6, 7, 9<br>THE COMMON LAW<br><br>**SEALED** |

**Jurisdictional Allegations:**

1. That the arbitrator shall have Subject Matter Jurisdiction, SMJ; as acknowledged by 9 U.S. Code §§ 1, 2, 7, 9; and the establish common law not limited to the following specifics:

   a. That I, Eyoel-Dawit: Matios (hereafter "Claimant") is a Citizen of the Colorado Republic, a republic comprised of the people; hence Claimant is one of the people, which the Constitution for the Republic and Union of States reserves all Powers and Authority to Claim Inalienable Rights and Property.  Claimant is currently located and domiciled at: 1312 Castlerock drive in Larimer county, city of Fort Collins, Colorado republic near [80521]

   b. That the CITY OF LOVELAND and it's agent(s) (hereafter "Respondent(s)") is a Municipal Corporation located at 500 E. 3rd Street, Suite 330, county of Larimer, City of Loveland, Colorado 80537.  The name(s) below are agent(s) for the CITY OF LOVELAND:

      i. Stephen C. Adams, City of Loveland City Manager

      ii. Emilie Loomis, City of Loveland Ass. City Attorney

      iii. Dylan Copello, City of Loveland Police Officer

      iv. Geri R. Joneson, City of Loveland Municipal Court Judge

      v. Patty Parker, City of Loveland Municipal Court Administrator

c. The Claimant and the Respondent(s) are parties to the Notice of Verified Claim for Relief and Money Demand, Claim # EDM-08211975-E10673-LVLD (hereafter "Contract") and **... having entered into a** <u>**default agreement**</u> **whereby the Respondent(s) knowingly, and intentionally agreed to the following mentioned in Article 5.2-5.5 and Article 6.1- 6.5 of the Contract** that, failure and or refusal to respond and provide the requested and necessary rebuttal/refutation raised in the Contract shall be held and noted and agreed to by all parties, <u>that a general response, a nonspecific response, or a failure to respond with specificities and facts and conclusions of common law, and or to provide the requested information and documentation that is necessary and in support of the agreement shall constitute a failure and a deliberate and intentional refusal to respond and as a result thereby and or therein, expressing the defaulting party's consent and agreement to said facts and as a result of the</u> **self-executing agreement**. **The following is contingent upon Respondent's failure to respond in good faith, with specificity, with facts and conclusions of common-law to each and every averment, condition, and/or claim raised; as they operate in favor of the Claimant, through "tacit acquiescence,".** Respondent(s) having agreed and consented to having a duty and obligation to provide the requested and necessary rebuttal/refutation have expressly affirmed the truth and validity of said facts set, established, and agreed upon between the parties to the Contract.

d. The parties did have a prior relationship and a **mutual assent** mentioned in Article 7.4., 7.5, 7.8-7.11 on pages 39-40 of the Contract, and that the respondents had a duty to act in good faith and respond to the reasonable request of the claimant, providing the Claimant with the rebuttal/refutation by a sworn affidavit given under penalties of perjury rebutting each issue, point for point to the Contract. The Respondents by their oath of office (Exhibit O) pledge to perform, support the Constitution and uphold the Laws of Colorado and the Laws of the United States.  **The Respondents volunteered and accepted the position of a public office and in exchange for**

**consideration of their services they received the wages, perks and benefits that comes with such position.** Respondents were duty-bound to the Claimant and have breached their fiduciary duty of care, supporting their willful and intentional as well as deliberate default respecting the irrevocable binding contractual agreement; and

e.  Whereas the respondent(s) in a related action has made a claim against the claimant of this instant matter related to the claimant's interests, properties, there exists a matter in dispute and/or controversy associated with the aforementioned contract, thereby extending jurisdiction to this body to proceed as per the terms of the agreement, as well as relevant laws and facts in support as presented during the arbitration of this controversy.

f.  The parties have entered into a legally binding contractual relationship with each other, and there is no attempt to defraud and/or any attempt to inducement of fraud and/or to commit fraud, and/or inducement of contract and/or fraud in the factum respecting the instant matter and contract. That the parties are bound by the terms and obligations agreed upon and imposed upon them as a direct result of the contractual agreement.

g.  Further it is to be noted that all elements forming an agreement, contract and a legally commercial binding obligatory relationship are present.

h.  Note that the contract clearly express that the method of settlement and resolution of any and all disputes arising thereunder shall be settled by arbitration under the authority of the standards of common-law arbitration, the **Federal Arbitration Act**, and **further stipulated authorized the claimant and or claimant's representative the authority <u>to choose and or appointed the arbitrator</u> as agreed upon and within the contract.** The contract states that the arbitrator shall remain immune, impartial, with full and complete indemnification respecting the arbitration and any other related matters associated with this instant matter.

i.  The responding parties listed above have by their own accord, agreed to all the terms of the contract, and that they have committed the offenses claimed in the contract and have acted against the interests of the claimant, depriving

him of his right to property, his right to contract, the right to The Pursuit of Happiness and the enjoyment of life. They have admitted and agreed that they have violated the claimant's constitutional and common law rights, that they had intentionally, and knowingly, and deliberately failed to perform as agreed, have forsook their oath of office, obligatory duty of care and thus created a dispute that requires a resolution by this arbitration tribunal and or any subsequent award.

j.   The parties knowingly and intentionally as well as deliberately stipulated and agreed that the related matters of any judgments associated thereto, any claims, any collateral attacks, by the respondent(s) are null and void of any effect, and shall not be binding on the claimant's retroactively and henceforth.

k.   Whereas the contract stated that punitive damages can be optionally assessed, however, it is claimed that punitive damages may be warranted in the event the respondent(s) continue to act with abstinence. In such an event, it is asked that the arbitrator impose punitive damages at a rate of three (3) times the amount of the actual damages in addition to other remedies awarded, pursuant to Pacific Mutual Life Insurance Company vs. Haslip, 499 US 1 (1991), and or imposes punitive damages at a rate of ten (10) times the amount of actual damages pursuant to UNITED STATES OF AMERICA v. DEMERIUS JERMAINE HAWKINS No. 2:06-cr-00012-IJWC-04, Arbitration Awarded (Sep 4, 2014).

l.   The amount in controversy exceeds the sum of $75,000, exclusive of interest, costs, fees and assessments, which would permit this matter to be confirmed if there is an arbitration award on the federal level, but not restricted from being heard on the local state common-law level.

2.   That the venue is proper in any court of original jurisdiction wherein either the arbitrator resides or the choice of the complainant as stipulated in the agreement, and that any orders compelling witness attendance, provisional remedies, equitable relief, interim awards are to be issued and enforced according to the terms of the contract as stipulated in the agreement.

3. That the parties have agreed that all pre-existing as well as existing contracts between the parties, no matter their scope, subject matter, and or detail are superseded and extinguished by the contractual agreement referenced and related hereto- Contract No.: EDM-08211975-E10673-LVLD.

4. I, Eyoel-Dawit: Matios (claimant) selects, that jurisdiction for the final monetary award be had under the Federal Arbitration Act and may be confirmed in any United States District Court having jurisdiction thereof for damages against the City of Loveland under contract that exceeds $10,000., and to have the matter determined under common-law and equity.

5. Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be settled by binding arbitration administered by the selected arbitrator(s) **in accordance with FAA rules,** and judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration hearing and all proceedings in connection therewith shall take place through electronic arbitration or in arbitrator(s) district.

## BASIS FOR ARBITRATION:

6. As set forth herein, supported by undisputed facts and evidence incorporated by reference, the CITY OF LOVELAND, by and through it's Agent(s), acting under color of law to unlawfully assert a claim that Claimant does not have the Right to use the Public-Right-of-Way, and that agents of the CITY OF LOVELAND may collect assessment for use of the Public-Right-of-Way.  Claimant asserts that the 'CITY OF LOVELAND', converted his Private Right to use the Public-Right-of-Way into public property, **without compensation or due process,** in violation of numerous Laws including but not limited to:

   i. Article II, Section 3 of the Colorado Constitution states: "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness."

   ii. Article II Section 15 of the Colorado Constitution states in part: "Private property shall not be taken or damaged, for public or private use, **without just**

**compensation**... in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested; Moreover,

iii.   Article II, Section 25 of the Colorado Constitution states: "No person shall be deprived of life, liberty or property, **without due process of law.**"

7.   Claimant asserts these Inalienable Rights to Have and to Hold Private Property that cannot be infringed **without just compensation and due process of law**. Claimant asserts the right to unregulated use of the Public Right-of-Way. Claimant provides the following statutory authority and court case precedents in support therefor:

i.   C.R.S. § 33-14-101(12) defines a "Street", "road", "freeway", or "highway" **as a matter of right** for the purpose of motor vehicle travel. Furthermore,

ii.   C.R.S. § 155-3 defines the "PUBLIC RIGHT-OF-WAY" **as a matter of right** for the purpose of vehicular or pedestrian travel.

iii.   C.R.S. 4-9-102(a)(23) defines consumer goods to mean goods that are used or bought for use primarily for personal, family, or household purposes. **Private vehicles are considered consumer goods** as supported by the following legal precedents:

> In Bank of Boston vs Jones, 4 UCC Rep. Serv. 1021, 236 A2d 484, the court ruled that  "A vehicle not used for commercial activity is a "consumer goods", . . . it is NOT a type of vehicle required to be registered and "use tax" paid of which the tab is evidence of receipt of the tax." The court relied upon UCC PP 9-109.14.

iv.   "The right of the citizen to travel upon the public highways and to transport his property, either by carriage or by automobile, **is _not_ a mere privilege which a city may prohibit or permit at will,** but a common law right which he has under the right to life, liberty, and the pursuit of happiness." Thompson v. Smith, 154 S.E. 579, (1929) 155 Va. 367, (Va. 1930)

v.   The use of the highway for the purpose of travel and transportation is not a mere privilege, but a common fundamental right of which the public and

individuals cannot rightfully be deprived." Chicago Motor Coach v. Chicago, 169 NE 221.

vi. "The right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 US 116, 125;

vii. "The right to travel is a well-established common right that does not owe its existence to the federal government.  It is recognized by the courts as a natural right." Schactman v. Dulles 96 App DC 287, 225 F2d 938, at 941.

8. Claimant asserts that Agent(s) by, for, and on behalf of the 'CITY OF LOVELAND' have committed numerous Crimes, Torts, and violations of Claimant's Rights and have unlawfully coerced and extorted payment from Claimant under 'color of law'; presented in summary form for purposes of Notice and Simplicity by the following:

9. On October 26, 2019, the Claimant was pulled over by Loveland Police Officer Dylan Copello at 5:40am, without a warrant served the claimant a citation for speeding and issued an unlawful demand for payment (Exhibit A, a traffic infraction/citation # E10673) as a Bill of Exchange, without probable cause to believe that Claimant was engaged, or had engaged, in criminal conduct, was bound by contract, subject to regulation, or engaged in commercial activity.  Officer Copello stopped, detained, and imprisoned the Claimant and required him to identify himself in violation of the Fourth Amendment - see Brown v. Texas, 443 U.S. 47, (1979); see: "Speeding, running stop signs, traveling without license plates, or registration **are not threats to the public safety**, and thus are not arrestable offenses," Christy v. Elliot, 216 I 131, 74 HE 11035, LRA NS 1905-1910.

10. Officer Copello **did not** have a warrant in his actual possession [See: Smith v. State, 208 So.2d 746, 747 (Miss. 1968); Adams v. State, 121 Ga. 163, 48 S.E. 910, 911 (1904)]  at the time of the arrest/detain/stop/pull and therefor his detainment of the Claimant was not lawful, and did commit trespass by violating the due process clause of the national/federal Constitution, and in the act committed harassment on the claimant without probable cause, committed unlawful detention by the restraint against Claimant's will to move about his business without the interference of government official, restrained Claimants in the exercise of his liberty, and confine

and imprison ("false imprisonment") the Claimant by forcibly detaining the Claimant in the public streets without any legal authority." [See: 3 Bl. Comm. 127, which states: "Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets."; Sergeant v. Watson Bros. Transp. Co., 244 Ia. 185, 52 N.W.2d 86, 93 (1952), Garnier v. Squires, 62 Kan. 321, 62 P. 1005, 1006 (1900), Riegel v. Hygrade Seed Co., 47 F.Supp. 290, 294 (1942)]; and

11. The Claimant was NOT engaged/engaging in interstate commerce, and was NOT transporting no persons or property for hire or compensation at the time he was stopped, detained, and imprisoned by Officer Dylan Copello, and

12. Officer Dylan Copello is elected/appointed by the City of Loveland, **served** the Claimant the SUMMONS/complaint/citation **for** the City of Loveland, **brought** the complaint against the Claimant **for** the City of Loveland, **became the Trial Witness** in Loveland Municipal Court against the Claimant **for** the City of Loveland, and **receives his wages from the City of Loveland**, and

13. The City of Loveland and Loveland Police Officer Dylan Copello did violate the Federal and the states Rule of Civil Rule Procedure Rule 4 in violation of Amendment V of the United States Constitution, the Constitution of the State of Colorado Article II Section 15, and Colorado Article II section 25 requiring "due process," and in the process committed FRAUD by **fraudulent service** by persons with an **adversarial interest** in a legal action, and

14. On October 30, 2019, Claimant responded by objecting to the Bill of Exchange, refused to accept and returned without dishonor as Illegal, Unlawful, Unconscionable, and Void, supported by affidavit and numerous citations of Law. Claimant filed with the Loveland Municipal Court Clerk and served a copy to the Assistant City Attorney (prosecutor), Notice of Abatement, Notice of Dispute, and a Notice of Rights (Exhibits B, E, and H). The Assistant City Attorney (Prosecutor) did not respond to these Notices; instead, the municipal judge responded to the Notice of Abatement with a fraudulent Summons in the name of the **"People of the City of Loveland"** (see Exhibit C"), and demanded that either Claimant appear or pay $80, or the municipal judge would enter a default judgment and that a Hold would be

placed on his "Driver License" until Claimant paid an assessment of $105, signed by Loveland Municipal Court Judge, Geri Joneson.

15. On November 25, 2019, Claimant filed with the Loveland Municipal Court Clerk and served a copy to the Assistant City Attorney (Prosecutor), a Motion to Dismiss, as supported by affidavit, and separate Memorandum, and asserted a counterclaim by his Claim of Right of Way. (Exhibit F);

16. The Assistant City Attorney (Prosecutor) did not respond to the Motion to Dismiss or to his Memorandum and Claim of Right of Way; instead, the municipal judge denied the Motion to Dismiss; again asserting a fraudulent claim that she had authority to act for and on behalf of a fictious entity, **"The People of the City of Loveland"** (Exhibit G) in violation of the FEDERAL AND COLORADO RULES OF CIVIL PROCEDURE RULE 17(a) and Colorado Revised Statute (C.R.S.) 13-10-111 which states "the statutory authority granted to the Court was to bring all claims in the name of **the People of the State of Colorado"**;

17. On December 6, 2019, Claimant filed with the Loveland Municipal Court Clerk and served a copy to the Assistant City Attorney (Prosecutor), an Answer to Complaint, supported by affidavit (Exhibit H).  The Assistant City Attorney (Prosecutor), on behalf of the CITY OF LOVELAND, did not disputed any of the allegations, the assertions of Fact and Law and was determined to be established as Fact and Law;

18. The Claimant did file numerous Motion(s) and certified letter(s) with the Loveland Municipal Court Clerk the FACTS of the case. See Exhibit(s) "A" through "O", and

19. Magistrate Judge, Gerellen R. Joneson, acting on behalf of the City of Loveland and on behalf of the Assistant City Attorney (Prosecutor), **denied all the Motions** recorded by Claimant without the response or objections from the Assistant City Attorney (Prosecutor) and engaged in ex parte communicato, prejudice and official Misconduct; and

20. Magistrate Judge Gerellen R. Joneson, acting as judge under color of law, denied **all** Claimant's Pleadings and Motions to dismiss and made ORDER(s) on behalf of **the People of the city of Loveland**, denied Claimant his inalienable, constitutional and statutory rights by her misconduct as explained in Claimant's court pleadings; and

21. The City of Loveland Municipal Court issued numerous fraudulent documents in the name of the fictitious entity "The People of the City of Loveland", including, the "Plea of Not Guilty and Request for Court Trial (Judge)", "Notice of Trial Rights and Procedure", and the "Notice of Trial Procedure and Order", and "Notice of Trial" forms  (Exhibit I). In addition to the aforementioned "ORDER RE: NOTICE OF ABATEMENT" (Exhibit C);

22. The Loveland Municipal Court Judge, Geri Joneson lacked Authority and subject matter Jurisdiction to enforce citation # E10673 as a Bill of Exchange, or as a claim of breach of contract under strict liability because **these are commercial claims under the commerce clause**; nor did Geri Joneson have authority or Jurisdiction to decide claims of equity or tort because these are issues reserved for judicial courts, and the Loveland Municipal Court is administrative; therefore, the only subject matter jurisdiction that the Loveland Municipal Court has is to abide by the U.S. and Colorado Constitutions and to enforce Common-law claims; however, there was no proof of injury, nor injured party in this case and the CITY did not prove standing, nor provided proof of subject matter jurisdiction and personal jurisdiction over Claimant. Therefore, any judgment or order is void and unenforceable;

23. Claimant filed with the Loveland Municipal Court Clerk and served a copy to the Assistant City Attorney (Prosecutor), numerous supporting documents to establish his Claim of Rights such as Claimant's **"Notice of Verified Claim of Rights and Status"** (Exhibit "O ") filed with the Larimer County Clerk & Recorder Office, a twenty-five (25) page document with Reception No: 20190078553, "Affidavit of Identity", "Notice of Common-law Copyright", and constructive Notice of his common-law and UCC Claims of Personal Property by providing the filing numbers of his Claims filed in the Larimer Clerk and Recorder's Office and with the Colorado Secretary of State; **each of these documents assert Claims of Rights and provide for <u>Compensation for violation of his Constitutional, Inalienable, and Statutory Rights</u>. Further, Claimant asserts that he is entitled to Compensation for Torts committed against him, as provided by statute;**

24. On or about 05/21/2020, The claimant and the respondents entered into a written, self-executing, binding, irrevocable, contractual agreement coupled with interests,

for the complete resolution of their mis-conviction, unlawful imprisonment and other conflicts respecting their previous relationship. **the claimant presented a contract titled "Notice of Verified Claim for Relief and Money Demand" Contract/Claim # EDM-08211975-E10673-LVLD with a "Memorandum of Law" in Support of the Contract**. The record clearly documents that the respondents have **failed to properly respond** after having received the claim/contract, whereby such nonresponse would **equate to tacit acquiescence** thereby creating an estoppel respecting the respondents and any future claims and or prior claims and/or present claims associated with this instant matter.

25. A dispute has arisen under the agreement between the parties and it is the subject matter at bar, the claimant contend that after agreeing to the terms of the contract, that the respondents have failed to fully perform to the terms of the agreement and that the claimant is entitled to immediate and unconditional remedy as prescribed within the terms of the contract. The amount stipulated to be paid the claimant is 201,971,880  two hundred and one million, nine hundred and seventy one thousand and eight hundred and eighty United States Dollars payable as defined in Title 31 U.S.C. 5112 and currently due pursuant to Article III, section 3.7(A), page eight (8) of the "Notice of Verified Claim for Relief and Money Demand" agreement as stipulated according to the terms of the contract and agreed to by the parties.

26. The agreement stipulates that <u>the arbitrator may adjust</u> the amount of the award, and include fees, adjustments, costs, and other expenses.

27. The written agreement provided for arbitration of disputes at Article 5.1, page thirty-four (34), which stated in relevant part: **"That the arbitration process is binding on all parties and is the sole and exclusive remedy for redressing any issue associated with this agreement"** and pursuant to Article 5.3, page thirty-five (35) "this Notice of Verified Claim for Relief and Money Demand agreement **supersedes and predates** as well as replaces any and all prior agreements between the parties, and is binding on all parties and irrevocable, and the parties agreed to the terms and conditions of this agreement upon default of the defaulting party as of the date of the default"… and pursuant to Article 6.2, page thirty-six (36) "Any controversy or claim arising out of or relating in any way to this Agreement or with regard to its formation,

interpretation or breach, and any issues of substantive or procedural arbitrability **shall be settled by arbitration**, and the arbitrator may hear and decide the controversy upon evidence produced although a party who was duly notified of the arbitration proceeding did not appear; that the Claimant deems necessary to enforce the "good faith" of ALL parties hereto within without respect to venue, jurisdiction, law, and forum the Claimant deems appropriate. Further, both parties agree that ALL costs and fees of conducting the arbitration will be paid in full to the arbitrator by the losing or the defaulting party upon completion of arbitration".

28. Pursuant to the terms of the agreement the claimant has provided proof that he has attempted to communicate with the respondents for compliance of the agreement, and has exhausted the requirements of the agreement in that regard.

29. The respondents have agreed and consented to binding arbitration under the terms of the agreements and have waived all rights to vacate, modify, appeal, contest, or collaterally attack the decision, rulings, orders, remedies, and/or award (both interim and final) of the arbitrator.

### THE FEDERAL ARBITRATION ACT Application:

30. Pursuant to the agreement's arbitration clause, the agreement evidences a transaction involving or affecting "commerce", within the meaning of article 9 United States Code subsection 1.

31. BECAUSE AND DUE TO THE FACT THAT THE AGREEMENT WAS A BINDING IRREVOCABLE CONTRACT, THAT AFFECTS "COMMERCE", THE ARBITRATION PROVISIONS CONTAINED WITH IN IT IS "VALID, IRREVOCABLE AND ENFORCEABLE WITHIN THE MEANING OF 9 US CODE SUBSECTION 2.

32. "Valid, Irrevocable and Enforceable" arbitration agreements and the orders, rulings, decisions, remedies, and award made therefrom may be enforced in the United States courts by way of confirmation and entry of a judgment of the court thereon. within the meaning of the statute and article 9 United States Code § 9, 13.

### PROCEDURES ON ARBITRATION PROCEEDINGS:

33. The claimant is seeking equitable relief for violation of claimant's inalienable rights e.i. the right to travel in his private non-commercial vehicle without being regulated and monetary relief for damages.

34. The parties have stipulated that United States District Court may enforce the provisions of equitable relief awarded by the arbitrator.

35. The United States District Court shall have the exclusive jurisdiction for the enforcement of any and all matters associated with monetary damage relief.

36. Due to time constraints and the paramount danger affecting the public interest, justice, and due process the party's consent and applied for the arbitration proceedings to commence without delay.

## CLAIMS AND DAMAGES

37. The Claimant asserts damage claims grounded in theory of common-law, tort, equity, contract, and fraud from the tortious and criminal conduct of the Respondents.  As is set forth fully herein, incorporated by reference, the CITY OF LOVELAND municipal corporation derives its authority from the Colorado Constitution, subject to acting Lawfully within the bounds of the United States and Colorado Constitutions, and abiding by federal and state law; that agents, employees and officers of the CITY OF LOVELAND can subject the municipality to vicarious liability under theory of *respondeat superior* for Torts, and being subject to strict liability when acting in violation of the Law.  Claimant has set forth in particular facts and citations of legal authority, which support his Damage Claims that, The CITY OF LOVELAND, through agent(s) acting under 'color of law' committed numerous Crimes and Torts, and violated the constitutional, Inalienable, and statutory Rights of Claimant in the course of conduct throughout the proceedings attempting to assert and unlawfully collect financial and other compensation based upon fraudulent claims against Claimant and his Person.  As set forth fully herein, and incorporated by reference to Undisputed facts, evidence and Law, the CITY OF LOVELAND, committed the following Crimes, Torts, and violations of Claimant's Constitutional, Inalienable and Statutory Rights:

### COLORADO TORTS

   a) Abuse of legal process by using illegal means and unlawful intent;
   b) Civil Conspiracy to deprive Claimant of property right to travel, money;
   c) Colorado Organized Crime Control Act relief: See, C.R.S. § 18-17-106(7);
   d) Conversion of property; converting Claimant's Right into licensed privilege;
   e) False Imprisonment by unlawful detainment of Claimant without warrant;
   f) Fraud by Concealment, Deception, and In Fact to unlawfully obtain property;
   g) Interference with Contractual Relationship between Claimant and his Person;

h) Invasion of Privacy by use of Claimant's Name without permission;
i) Unjust Enrichment by Unlawful extorting fines, fees, and taxes from Claimant.

**FEDERAL CONSTITUTIONAL RIGHTS VIOLATIONS**

a) The 4th Amendment to the U.S. Constitution (unwarranted seizure)
b) The 5th Amendment to the U.S. Constitution (property taken for public use)
c) The 7th Amendment to the U.S. Constitution (denial of the right to civil jury)
d) The 14th Amendment to the U.S. Constitution, (due process, equal protection)

**COLORADO CONSTITUTIONAL RIGHTS VIOLATIONS**

a) Article II, Section 6 to the Colorado Constitution, (denial of justice / rights)
b) Article II, Section 7 to the Colorado Constitution, (unlawful seizure)
c) Article II, Section 14 to the Colorado Constitution, (property taken private use)
d) Article II, Section 15 to the Colorado Constitution, (property taken public use)
e) Article II, Section 24 to the Colorado Constitution (right to petition)
f) Article II, Section 25 to the Colorado Constitution (due process)

**COLORADO CRIMES**

a) C.R.S. § 18-2-201. - Conspiracy, a class six felony,
b) C.R.S. § 18-2-301. - Criminal solicitation, a class five felony,
c) C.R.S. § 18-3-207. - Extortion, a class four felony,
d) C.R.S. § 18-5-102. - Forgery, a class five felony,
e) C.R.S. § 18-5-113. - Criminal impersonation, a class six felony,
f) C.R.S. § 18-5-114. - Offering a false instrument for recording, a class 5 felony,
g) C.R.S. § 18-8-113. - Impersonating a public servant,
h) C.R.S. § 18-8-406. - Issuing a false certificate, a class six felony,
i) C.R.S. § 18-11-101. - Treason, a class one felony,
j) C.R.S. § 18-17-104. - Colorado Organized Crime Control Act;

**FEDERAL CRIMES**

a) 18 U.S. Code § 241 – Conspiracy against Constitutional Rights – 10 years
b) 18 U.S. Code § 242 – Violation of Civil Rights under color of law – 1 year
c) 18 U.S. Code § 1341 – Frauds and swindles – 20 years imprisonment
d) 18 U.S. Code § 1342 – Fictious name or address – 5 years imprisonment
e) 18 U.S. Code § 1349 – Attempt and Conspiracy – 20 years imprisonment

**STIPULATION BY DEFAULT AGREEMENT**

38. The claimant highlighting for the sake of time, he has attached a copy of the original

contract, "Notice of Verified Claim for Relief and Money Demand" Contract/Claim #

EDM-08211975-E10673-LVLD with "Memorandum of Law" in Support of the

Contract, which list all of the claims and the undisputed verified statements of Fact

that the parties have all agreed to, and that he has incorporated each of those

claims by reference to all contained herein, **Claimant declares:**

WHEREAS,

Officer Copello lacked probable cause to believe that Claimant had

committed a crime, and lacked a warrant or lawful summons to serve Claimant;

thus, Officer Copello unlawfully detained Claimant; thereby he Violated Claimant's Constitutional, Inalienable, and Statutory Rights, and committed crimes and Torts mentioned above, including but not limited to:

1)   Violation of Federal Constitutional Rights: a, b, and d, and,
2)   Violation of State Constitutional Rights: a, b, c, d, e, and f, and,
3)   Violation of Colorado Statutes: a, b, c, f, h, i, and j, and,
4)   Violation of Federal Statutes: a, b, c, and e, and,
5)   Torts: a, b, c, d, g, and h; and,

**WHEREAS,**

The CITY OF LOVELAND, by and through representative Agents, Geri Joneson and Emilie Loomis, has committed crimes, torts, and violated Claimant's Constitutional, Inalienable, and Statutory Rights, mentioned above, including but not limited to:

1)   Violation of Federal Constitutional Rights: a, b, c, and d, and,
2)   Violation of State Constitutional Rights: a, b, c, d, e, and f, and,
3)   Violation of Colorado Statutes: a, b, c, d, e, f, h, i, and j, and,
4)   Violation of Federal Statutes: a, b, c, d, and e, and,
5)   Torts: a, b, c, d, e, f, g, h, and I: and,

**WHEREAS,**

Claimant has included within his Notice of Verified Claim of Rights and Status (Exhibit "O") that was filed with the Larimer County Clerk & Recorder office, **the Right to claim Compensation** for Relief for Violations of his Inalienable Rights, including, but not limited to, the Right to Use the Public Right-of-Way, and asserted His Right to claim Statutory Compensation for Relief for Tort Claims; and,

**WHEREAS,**

Claimant asserts His Common-law Right to claim Compensation equal to that awarded in Trezevant v. City of Tampa, 741 F.2d 336, for each violation (weather 1.565 million per day from the start to the end of the violation or weather 1.565 million per each count of violation) of His Inalienable Rights, and the Right to claim Compensation for Violation of His Civil, Constitutional, Inalienable, and Statutory Rights, as determined by Law, whether under theory of admiralty, common-law, contract, equity, maritime, or Tort according to His choice of Jurisdiction and Venue; and,

**WHEREAS,**

The respondents have breached the agreement and because the agreement was binding on all parties and was irrevocable, the respondents have acted in bad faith, with unclean hands, and have breached their fiduciary duty of care responsibilities and are liable to the claimant for the amount of the contract, plus additional costs, fees, assessments, penalties, and other equitable relief remedies; and,

**WHEREAS,**

The respondents having agreed to compensate the claimant for its numerous violations of Claimant's constitutional, Inalienable, and statutory rights, misrepresentation of facts and other information pertinent to the claimant welfare and well-being, have failed to provide such compensation as agreed, and have failed to provide any documentation which would substantiate their having failed to complied with the requirements of the contract; and,

**WHEREAS,**

Claimant requests Relief pursuant to the Federal Arbitration Act; and,

**NOW, THEREFORE,**

Claimant asserts His Right to Claim Compensation for Violations of His Rights according to Article III, Section 2, of the U.S. Constitution, Article II, Section 15 of the Colorado Constitution, and Colorado and U.S. Law, including, but not limited to: Titles 18, 28, and 42 of the U.S. Code, and C.R.S. Titles 4, 13, 18, and 24, as well as, Relief afforded under the Uniform Commercial Code, abiding by relevant legal precedent, and in accordance with applicable Procedural Rules, to be determined using the Damage Calculation formulas provided by the following:

A. **Formula 'A'**, Claimant asserts his Common-law Right to claim Compensation equal to that awarded by Congress in Private Law 114-31, extrapolating the calculation of damages awarded by the jury in Trezevant v City of Tampa, 741 F2d 336 (1984) of 25,000 dollars for 23 minutes (1,565,000 million dollars per day or 1,086 dollars per minute) of unlawful detainment / false imprisonment.

  1. For the time Claimant was restrained in His movement, and was summoned to attend Loveland Municipal Court, the calculation of Damages totals 80 minutes times 1,086 dollars per minute; this is itemized as follows:

     Traffic stop 10 minutes, arraignment 30 minutes, Trial 40 minutes = 80 minutes 80 minutes times 1,086 dollars = **86,880** United States Dollars, payable as defined by Law in grains of silver.

  2. **In addition**, Claimant asserts His Common-law Right to claim Compensation equal to that awarded in Trezevant v. City of Tampa, 741 F.2d 336, **for each**

violation **(weather 1.565 million per day from the start to the end of the violation or weather 1.565 million per each count of violation)** of His Inalienable Rights, and the Right to claim Compensation for Violation of His Civil, Constitutional, Inalienable, and Statutory Rights, as determined by Law, whether under theory of admiralty, common-law, contract, equity, maritime, or Tort according to His choice of Jurisdiction and Venue; violation of <u>Constitutional</u>, <u>Inalienable</u>, and <u>Statutory Rights</u>:

    a. Totaling of at 44 count of violation times 1,565,000 million dollars equals the sum of **68,860,000** Million United States Dollars, payable as defined by Law in grains of silver.

        Or

    b. From the **start** of Respondent(s) violation(s) (traffic citation) on October 26, 2019 to the **end** of Respondent(s) violation March 2, 2020 equals 129 day(s) times 1,565,000 million dollars equals the sum of **201,885,000** million United States Dollars, payable as defined by Law in grains of silver.

    3. <u>**Total of Formula 'A'**</u> combined sum (86,880 + 68,860,00) equals to **68,946,880** Million United States Dollars, payable as defined by Law in grains of silver   **Or**  (86,880 + 201,885,000) equals to **201,971,880** Million United States Dollars, payable as defined by Law in grains of silver.

  B. <u>**Formula 'B'**</u>, Tort damages are calculated to provide the maximum relief allowed by Colorado Law (Colorado Revised Statute Title 13-21-102.5(3)(a)).

    1. This anticipates any punitive damage Compensation awarded by the Arbitrator; Claimant asserts that the Respondent(s) committed acts constituting 15 Torts time $250,000 for each Tort committed equals to **3,750,000** million United States Dollars, payable as defined by Law in grains of silver.

    2. <u>**In addition**</u>, Claimant asserts the Right to an award of compensation for each violation of His Constitutional, Inalienable, and Statutory Rights under Tort Law, and compensation for each Violation of His Right to equal protection of the Law under the 14th Amendment.  Applying <u>**Formula 'B'**</u> with a base of $250,000 for each Violation, totaling the count of <u>Constitutional</u>, <u>Inalienable</u>, and <u>Statutory Rights</u> Violations of at 44 count, the sum equals to **11,000,000** United States Dollars, payable as defined by Law in grains of silver.

    3. <u>**Total of Formula 'B'**</u> combined sum (3,750,000 + 11,000,000) equals to **14,750,000** million United States Dollars, payable as defined by Law in grains of silver.

Claimant <u>requests</u> Compensation under the calculation Formula that provides the greatest relief.

39. In the event that the Respondent(s) do not voluntarily comply with the arbitration award, Claimant <u>requests</u> arbitrator imposes punitive damages at a rate of 10 times the amount of actual damages, in addition to other remedies awarded, pursuant to Pacific Mut Life Ins. Co. v. Haslip, 499 US 1(1991). Also see UNITED STATES OF AMERICA v. DEMERIUS JERMAINE HAWKINS No. 2:06-cr-00012-IJWC-04, Arbitration Awarded (Sep 4, 2014)

Note: Claims that involve Violations of criminal statutes are deemed Violation of Claimant's Right to equal protection of the law under the 14th Amendment. Violations that simultaneously constitute crimes and Torts are also deemed violation of the equal protection clause. Violations of Claimant's Right to equal protection are calculated by assessment of Damages applying the valuation in Claimant's Notice of Verified Claim of Rights and Status Article IX filed with the Larimer County Clerk & Recorder Office. Each criminal violation is assessed individually as would be the case if criminal charges were brought and Claimant would be entitled to victim compensation. Award for violations of Claimant's Right to equal protection is founded upon the premise that Claimant is Entitled to equal Protection and Enforcement of the Law for criminal violations committed by public officials the same as public officials are entitled to equal protection and enforcement for criminal violations by others. Further, whereas the criminal violations of Claimant's Right to equal protection is evidenced by documentation, Claimant asserts that such evidence is both clear and convincing, and would be considered proof beyond a reasonable doubt in a criminal case.

**I pray for the following findings and determination of THE ARBITRATOR:**

40. That it is the determination of the arbitrator that the following are facts that are undisputed, uncontroverted and that the Claimant is entitled to relief:

    a. That there is a binding irrevocable contractual agreement that exist between the parties.

    b. That the parties had a pre-established relationship which placed an obligation on each to communicate with the other.

    c. That the "Notice of Verified Claim for Relief and Money Demand", a self-executing binding contract stands as irrevocable.

    d. That the respondent's having agreed to the contract, agreed to all the terms and conditions of the contract by their accepting the waiver which was included as part of the contractual agreement, that waiver being the right not to respond.

e. That the respondents have failed to provide proof that they had not received and/or been notified of the existence of the contract and of their right to waiver.

f. That by the respondent's failure to respond it constituted an act of "tacit acquiescence".

g. That the Arbitrator enter a final award in favor of the Claimant under the calculation Formula "A" of the contract Article 3.7 which provides the greatest relief.

h. That, In the event that the Respondent(s) do not voluntarily comply with the arbitration award, Claimant requests arbitrator imposes punitive damages at a rate of 10 times the amount of actual damages, in addition to other remedies awarded, pursuant to Pacific Mut Life Ins. Co. v. Haslip, 499 US 1(1991). Also see UNITED STATES OF AMERICA v. DEMERIUS JERMAINE HAWKINS No. 2:06-cr-00012-IJWC-04, Arbitration Awarded (Sep 4, 2014)

I present this application to this body in the interests of justice, and in the interest of fairness, and ask that this body accept My application and set a hearing date as soon as possible, and I ask that the Arbitrator notify the opposing party of my application, and of my request for speedy disposition.

**Arbitrator's Name:** THE SITCOMM ARBITRATION ASSOCIATION

**hearing location:** Electronic at SAALimited.com

I do affirm, describe, attest, declare, as well as certify that the foregoing is accurate so help me God on this _27_ day of _December_ , 2020

By: _____

Name: /s/ Eyoel-Dawit: Matios, Claimant

# Exhibit E

LVLD Notification of Arbitration Hearing

January 6, 2021

(Letter from Risk Management Department - January 22, 2021)

Certified Mail No.: _7018 2290 0001 9490 5122_

**This communication is to inform you that a hearing date is set for arbitration concerning Contract/Claim No.: EDM-08211975-E10673-LVLD**

PARTIES:

RESPONDENT(S):                          CLAIMANTS:
CITY OF LOVELAND                         Eyoel-Dawit: Matios, in sui juris Capacity,
c/o Stephen C. Adams, City Manager       A living man with common law rights
c/o City of Loveland                     c/o 1312 Castlerock drive
c/o 500 E. 3rd Street, Suite 330         c/o Fort Collins, Colo. Republic near [80521]
    Loveland, CO 80537                       Non-Domestic/Non-Assumpsit
    and                                      united States of America
c/o Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
    Loveland, CO 80537

January 6, 2021

Re: Contract/Claim No.: EDM-08211975-E10673-LVLD

Attention: Stephen C. Adams, City Manager and
          Emilie Loomis, Assistant City Attorney,

On April 20, 2020, you were sent a fifty-four (54) pages contract titled **"Notice of Verified Claim for Relief and Money Demand"** and you were given thirty-one (31) day to rebut/refute the claims raised within the contract. In which you failed to do so in a timely matter.

On May 23, 2020, you were sent a three (3) pages Legal Notification titled, **"Notice of Fault Opportunity to Cure"** and you were given seventy-two (72) hours to cure your fault. In which you failed to cure.

On June 20, 2020, you were sent a four (4) pages Final Legal Notification titled, **"Notice of Default"** and you were given seventy-two (72) hours to cure your default. In which you failed.

In good faith, I have attempted numerous times to contact you and work things out concerning the contract/claim but was not successful. Which left me no choice but to seek an Arbitrator to resolve the breach. Pursuant to Article 6.2 (pg. 36-37) of the contract, the Claimant shall retain the authority to select arbitrator(s) that qualify pursuant to the common law right to arbitration. I, Eyoel-Dawit: Matios, Claimant have chosen THE SITCOMM ARBITRATION ASSOCIATION to arbitrate this dispute by an electronic hearing at SAALimited.com.

On December 27, 2020, I filed a "Request for Dispute Resolution on Complaint" (copy enclosed) to SITCOMM ARBITRATION ASSOCIATION and on January 3, 2021, I

received a "Notice of Arbitration Hearing" (copy enclosed) set for Wednesday, January 20, 2021 at 12 P.M. Central. Our arbitrator will be Rance Magee.

In the event that you need anything from this point forward, please contact support@saalimited.com.

All Rights Reserved without Prejudice, UCC 1-308

By: _____.

Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights

Enclosures:
    Request for Dispute Resolution on Complaint
    Notice of Arbitration Hearing

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __6th__, day of __January__, 2021, I Eyoel-Dawit: Matios have served a true and accurate copy of the foregoing:

"Notification of Arbitration Hearing" and
"Request for Dispute Resolution on Complaint"

And sent the document(s) by placing same in the US Mail, sent by Certified Mail to the following Respondent(s):

## CITY OF LOVELAND

Cert. Mail No.: 70182290000194905122
Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

And a Copy sent to:
Emilie Loomis, Ass. City Attorney
c/o Loveland Police & Court Building
c/o 810 E. 10th Street
Loveland, CO 80537

All Rights Reserved without Prejudice, UCC 1-308

By: _____,
Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights

Notification of Arbitration Hearing
Claim No.: EDM-08211975-E10673-LVLD  Page 3 of 3

*IN THE MATTER OF THE ARBITRATION*

*BETWEEN THE FOLLOWING PARTIES:*

EYOEL MATIOS, ET AL.,                                  Contract No.: EDM-08211975-E10673-                    Page | 1
                                                       LVLD℮

          CLAIMANT(S),

    v.                                        *9 U.S. CODES § 1, 2, 9;*

CITY OF LOVELAND, ET AL.,                                  *The Common Law*

c/o STEPHEN C. ADAMS, CITY MANAGER, ET AL.,

        RESPONDENT(S).


## NOTICE OF ARBITRATION HEARING

**TO THE ABOVE-NAMED PARTIES OF RECORD:** You are hereby notified that the above-entitled matter has been set for hearing as follows:

**DATE:**      **Wednesday, January 20, 2021**

**TIME:**       **12:00 P.M. Central**

**IMPORTANT NOTICE:** In the event that the Party(s) do not answer this Notice or request an extension within the time indicted, the Arbitrator may proceed to enter an Arbitration Award based upon the supporting evidence presented and other related documentation.

    Enclosed with this Notice is electronic media for the Respondent(s), that contains the supporting documentation of the above-entitled matter for your review. YOU HAVE TEN (10) DAYS from receipt of this Notice to forward a Response to the Arbitrator. If a Response is not received, the Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision, please note that any and all responses must be served upon the parties, and you must maintain a record of proof of service.

DATE: January 3, 2021

                          /s/ *Rance Magee*

## ALL-PURPOSE PROOF OF SERVICE

I,   <u>Rance Magee</u>, being at or above the age of 18, of the majority and not a party to the action, a citizen of the United States of America, did mail the document entitled:

## NOTICE OF ARBITRATION HEARING

by placing it in an envelope addressed to: Name and address:

Eyoel Matios
1312 Castlerock Drive
Fort Collins, Colorado 80521

City of Loveland
c/o Stephen C. Adams, City Manager
500 E. 3rd Street, Suite 330
Loveland, Colorado 80537       *United States Priority Mail* 9405511699000179252906

Affixing the proper postage and depositing it with the local postal carrier, also being of the age of the majority, and not a party to this action who upon receipt guarantees delivery as addressed and/or local drop box guaranteeing the same as prescribed in law. If called upon I provide this sworn testimony based on first-hand knowledge of the aforementioned events attesting and ascribing to these facts on this day January 3, 2021.

/s/ Rance Magee

ARBITRATION HEARING NOTIFICATION



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

Loveland, CO 80537

| Certified Mail Fee | $3.55 | |
| $ | $2.85 | 0196 |
| Extra Services & Fees (check box, add fee as appropriate) | | 32 |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | | |
| $ | $2.00 | |
| Total Postage and Fees | | 01/06/2021 |
| $ | $8.40 | |

Sent To   *Stephen C. Adams, City Manager*

Street and Apt. No., or PO Box No.   *c/o 500 E. 3nd Street, Suite 330*

City, State, ZIP+4®   *Loveland    CO   80537*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
☐ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 5029 9063 0490 92

2. Article Number (Transfer from service label)
7018 2290 0001 9490 5122

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☒ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
   MAURIE SPAHR (AR)   1-8-21

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☒ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt



**CITY OF LOVELAND**
HUMAN RESOURCES DEPARTMENT
RISK MANAGEMENT DIVISION
500 E.3rd ST, Ste. 300 • Loveland, Colorado 80537
(970) 962-3314 • FAX (970) 962-3402 • TDD (970) 962-2620

January 22, 2021

Mr. Eyoel-Dawit: Matios, Claimant
3400 Stanford Road, Unit #B213
Fort Collins, CO 80525

Mr. Eyoel-Dawit Matios, Claimant
1312 Castlerock Drive
Fort Collins, CO  80521

Dear Mr. Matios,

Mr. Matios, the City has consistently responded to you denying all claims, for the third time on June 24, 2020. The City has received the latest documents, including the "*Notice of Arbitration Hearing.*" The City has not agreed to arbitration, and the City will not be participating in arbitration as there are no valid claims.

By this letter, we are notifying you that the City considers these documents to be fraudulent filings, as they have not been filed in any lawful court. Second, the Notice of Arbitration Hearing set a date but did not provide a location or a method of responding. Third, Sitcomm Arbitration Association has been found to have filed fraudulent arbitration awards in several states.

As stated previously, we find no merit in any of the stated claims. The City cannot be unilaterally required to participate in arbitration. The City is not in default and has denied all claims. Finally and most importantly, the City will not be paying any sum of money nor will the City be participating in arbitration.

Sincerely,

Alicia Calderón
Deputy City Attorney

# Exhibit F

Final Arbitration Award awarded

March 1, 2021

(sent to both parties)

Contract #: EDM-08211975-E10673-LVLD ©                    A-9621DA-CA-001

## Before a FEDERAL LEGISLATIVE INDEPENDENT ARBITRATOR

## under the authority of the FEDERAL ARBITRATION ACT.

**A Final, Binding, and Enforceable arbitral decision:          DO NOT PUBLISH**

## IN THE MATTER OF ARBITRATION BETWEEN THE FOLLOWING PARTIES:

**Eyoel-Dawit: Matios,** *et al.*                    Contract #: EDM-08211975-LVLD ©

**In Sui Juris Capacity, Complainant.**

                    **vs.**

CITY OF LOVELAND, *et al*                    ***9 U.S. CODES § 1-16***
In Care of Steven C. Adams
City Manager                    The Common Law of the
                                BILL OF RIGHTS
            &
Dylan Copello, *et al.*

            &
Geri Joneson, *et al.*
                                ***THE COMMOM LAW***

        RESPONDENT(S).

---

## FINAL ARBITRATION AWARD

---

Independent Arbitrator's Name:    Brett "Eeon" Jones

Location: For De Novo Electronic Hearing- Orange County, California

The Parties, Summary Disposition HEARING - involving the default upon terms of agreement:

CITY OF LOVELAND, et al.

In Care of Steven C. Adams

City Manager

1 |

**Contract #: EDM-08211975-E10673-LVLD** ©                              A-9621DA-CA-001

&

Dylan Copello, et al.

&

Geri Joneson, et al.

**Respondent('s)**

vs.

**Complainant:** Eyoel-Dawit: Matios, et al.

In Sui Juris Capacity,


REFERENCE: The Following contract number

Contract #: EDM-08211975-E10673-LVLD ©

  The above matter comes before this arbitrator acting in his independent capacity, who has neither a stake in this matter nor he invested in the outcome for either party. The complainant has made the allegation that the defendants/respondents are in default due to their lack of response. A request for summary disposition i.e. hearing held without the presence of parties is deemed appropriate each party having been granted an opportunity to be present via documentation i.e. a written response has appeared in the matter at present. (It is to be noted that a party may elect to attend and/or appear in a proceeding which documents their position and formulates a/the defense respecting the proceedings for which an appearance was facilitated. As in the instant matter the respondents have responded with a counterclaim (a challenge to the contract as a whole, 'there is no contract', such is held and deemed a challenge to the contract as a whole, and under the doctrine of severability renders the jurisdiction within the purview of this venue)). to the petitioner's claim. of breach of agreement and request for summary disposition respecting said breach under the terms of the alleged agreement between the parties.

  It is hereby determined by this venue that the parties have agreed that a judgment of the court shall be entered upon the determination made pursuant to the alleged breach arbitration agreement, and the agreement has specify the court, this independent arbitrator, Brett Eeon Jones, and then at any time within one year after the award (assuming that there is a determination by an independent arbitrator in this instance) is made, any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order. In this instance the "Court" is the Arbitral Tribunal, and as SITCOMM ARBITRATION ASSOCIATION has RECUSED itself and per the terms of the agreement this independent arbitrator has been chosen in its stead we note the following for the RECORD OF THE COURT:

   "Whether the (Legislative FEDERAL ARBITRATOR] court had jurisdiction in a particular case is a question of law, subject to **de novo review**. *Friedline*, 166 N.H. at 266. A federal **[LEGISLATIVE TRIBUNAL EMPOWERED UNDER AUTHORITY OF THE FEDERAL ARBITRATION ACT** (F.A.A. CODIFIED AT 9 U.S.C. ss. 1-16)], court's subject-matter jurisdiction is a non-waivable issue. *UnionPac R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment.Cent. Region*, 558 U.S. 67, 81 (2009). If a federal [LEGISLATIVE TRIBUNAL EMPOWERED UNDER AUTHORITY OF THE FEDERAL ARBITRATION ACT (**F.A.A. CODIFIED AT 9 U.S.C. ss. 1-16)**] ("Jurisdiction is power to declare the law, [ARBITRAL, *See: Archer*. decided Jan. 8, 2019) as facts and conclusions follow:

2 |

Contract #: **EDM-08211975-E10673-LVLD** ©                                    A-9621DA-CA-001

     In brief, the rule is that judges of courts [**arbitrative tribunals are deemed legislative Courts and qualify under the Judicial Immunities Doctrine for the Judicial Acts the perform**], of record are not liable for damages; the purposes are **finality of judicial decisions and preservation of judicial independence**; and the limitations are "that immunity applies only to the judge's "judicial acts" in cases over which he had some jurisdiction".

     American courts adopted and expanded the English understanding of judicial immunity. The United States Supreme Court expressed the doctrine of judicial immunity most forcefully in the 1871 case of *Bradley v. Fisher*: "Judges of courts of superior or general jurisdiction are not liable to Civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, or are alleged to have been done maliciously or corruptly".

     The Supreme Court has adhered strictly to this rule ever since, even to the point of taking an extraordinarily narrow view of the "judicial act" limitation on immunity: **an act is judicial**, said the Court in *Stump v. Parkman* in 1978, if it is one **"normally performed by a judge"** and if the parties **"dealt with the judge in his judicial capacity."** Often times it is held that the private independent arbitrator lacks judicial understanding and knowledge, this contrary to the fact that ignorance of the law is no excuse, meaning: that everyone is deemed to know the law, including the parties to the agreement. I hereby render a determination based upon the contract as a whole and the Federal arbitration act which is founded on the common law of ancient civilization.

     **Arbitrators can be entitled to immunity because their role in deciding disputes is "functionally equivalent" to the role of judges.** *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996). **Courts extend immunity to arbitrators to protect them from "undue influence"** and the arbitration process "from attack by dissatisfied litigants." Id. Arbitral immunity may extend "to organizations that sponsor arbitrations" and "all acts within the scope of the arbitral process" are protected. Id. at 382-83.

     " We also concluded that a sponsoring organization is entitled to immunity even if a claim arises from the organization's failure to follow its own rules when selecting an arbitration panel." Id. **Such immunity is broad and protects sponsoring organizations from civil liability at all stages of the arbitration process.** Id.; see also *Honn v. Nat'l Ass'n of Sec. Dealers, Inc.*, 182 F.3d 1014, 1017-18 (8th Cir. 1999).

### A. Rules for Determining Whether an Agreement to Arbitrate Exists

     The general rule is that a party must agree to arbitrate before it is bound to do so. In the instant matter the parties have agreed that there was a prior agreement in existence before the current agreement, which has been presented before this body. In the current agreement the complainant, received an offer from the respondent and/or their representatives, which is not disputed by any party to the instant matter (and we go into detail of the understanding of this principle in a letter section of this award). As noted the parties document their prior relationship i.e. agreement.

## B. U.S. SUPREME COURT AND OTHER HIGH COURT ACKNOWLEDGE THAT NO LICENSE IS NECESSARY FOR NORMAL USE OF AN AUTOMOBILE ON PUBLIC HIGHWAYS [PROPERTY OF THE PUBLIC] WAYS

"The right of a citizen to travel upon the public highways and to transport his property thereon, by horse drawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty and the pursuit of happiness. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct."

Contract #: **EDM-08211975-E10673-LVLD** [©]                                    A-9621DA-CA-001

11 American Jurisprudence, Constitutional Law, section 329, page 1135 "The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." – *Thompson v. Smith*, 154 SE 579.

"… the right of the citizen to drive on a public street with freedom from police interference… is a fundamental constitutional right" – *Thompson vs. Smith*, supra.; *Teche Lines vs. Danforth*, Miss., 12 S.2d 784

"citizens have a right to drive upon the public streets of the District of Columbia or any other city absent a constitutionally sound reason for limiting their access." *White*, 97 Cal.App.3d.141, 158 Cal. Rptr. 562, 566-67 (1979)

"The use of the automobile as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the RIGHT to use an automobile on the public highways partakes of the nature of a liberty within the meaning of the Constitutional guarantees. . ." *Caneisha Mills v. D.C.* 2009

**"The right to operate a motor vehicle [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty,** the enjoyment of which is protected by the guarantees of the federal and state constitutions." *Berberian v. Lussier* (1958) 139 A2d 869, 872. See also: *Schecter v. Killingsworth*, 380 P.2d 136, 140; 93 Ariz. 273 (1963).

"A traveler has an equal right to employ an automobile as a means of transportation and to occupy the public highways with other vehicles in common use." *Adams v. City of Pocatello*, 416 P.2d 46, 48; 91 Idaho 99 (1966).

"The owner of **an automobile has the same right as the owner of other vehicles to use the highway. * * * A** traveler on foot has the same right to the use of the public highways as an **automobile *or any other vehicle*.**" *Campbell v. Walker*, 78 Atl. 601, 603, 2 Boyce (Del.) 41.

"The RIGHT of the citizen to DRIVE on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality is a FUNDAMENTAL

Contract #: EDM-08211975-E10673-LVLD ©                              A-9621DA-CA-001

CONSTITUTIONAL RIGHT which must be protected by the courts." *Simeone v. Lindsay*, 65 Atl. 778, 779; *Hannigan v. Wright*, 63 Atl. 234, 236.

"The right to make use of an automobile as a vehicle of travel along the highways of the state, is no longer an open question. The owners thereof have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling in some other vehicle." *People v. Horton* 14 Cal. App. 3rd 667 (1971)

"The automobile may be used with safety to others users of the highway, and in its proper use upon the highways there is an equal right with the users of other vehicles properly upon the highways. The law recognizes such right of use upon general principles. *House v. Cramer*, 112 N.W. 3; 134 Iowa 374; *Farnsworth v. Tampa Electric Co.* 57 So. 233, 237, 62 Fla. 166.

"The law does not denounce motor carriages, as such, on public ways. They have an equal right with other vehicles in common use to occupy the streets and roads. It is improper to say that the driver of the horse has rights in the roads superior to the driver of the automobile. Both have the right to use the easement." *Brinkman v Pacholike*, 84 N.E. 762, 764, 41 Ind. App. 662, 666.

U.S. Supreme Court holds, No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary, see: *Indiana Springs Co. v. Brown*, 165 Ind. 465, 468.

"A highway is a public way open and free to anyone who has occasion to pass along it on foot or with any kind of vehicle." *Schlesinger v. City of Atlanta*, 129 S.E. 861, 867, 161 Ga. 148, 159.

"There can be no question of the right of automobile owners to occupy and use the public streets of cities, or highways in the rural districts." *Holland v. Shackelford*, 137 S.E. 2d 298, 304, 220 Ga. 104; *Stavola v. Palmer*, 73 A.2d 831, 838, 136 Conn. 670.

"The word 'automobile' connotes a pleasure vehicle designed for the transportation of persons on highways." *Liebrecht v. Crandall*, 126 N.W. 69, 110 Minn. 454, 456.

: 18 USC Part 1 Chapter 2 section 31 definitions: "(6) Motor vehicle. – The term "motor vehicle" means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial

A-9621DA-CA-001

purposes on the highways..." 10) The term "used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit. "A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons for which remuneration is received." -*American Mutual Liability Ins. Co., vs. Chaput*, 60 A.2d 118, 120; 95 NH 200 Motor Vehicle.

The term 'motor vehicle' is different and broader than the word 'automobile.'" -*International Motor Transit Co. vs. Seattle*, 251 P. 120

"Thus self-driven vehicles are classified according to the use to which they are put rather than according to the means by which they are propelled" -*City of Dayton vs. DeBrosse*, 23 NE.2d 647, 650; 62 Ohio App. 232: *Ex Parte Hoffert*. 148 NW 20 "

The Supreme Court, held that carriages were properly classified as household effects, and we see no reason that automobiles should not be similarly disposed of." See: *Arthur v. Morgan*, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825,

**"...a citizen has the right to travel upon the public highways and to transport his property thereon..."** *Hillhouse v United States*, 152 F. 163, 164 (2nd Cir. 1907). *State vs. Johnson*, 243 P. 1073; *Cummins vs. Homes*, 155 P. 171; *Packard vs. Banton*, 44 S.Ct. 256; *Hadfield vs. Lundin*, 98 Wash 516, *Willis vs. Buck*, 263 P. 1 982.

"The use of the highways for the purpose of travel and transportation is not a mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived." *Barney vs. Board of Railroad Commissioners*, 17 P.2d 82.

"the right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business... is the usual and ordinary right of the Citizen, a right common to all." – *Chicago Motor Coach vs. Chicago*, 169 NE 22; *Ligare vs. Chicago*, 28 NE 934; *Boon vs. Clark*, 214 SSW 607; 25 Am.Jur. (1st) Highways Sect.163.

"Every Citizen has an unalienable RIGHT to make use of the public highways of the state; every Citizen has full freedom to travel from place to place in the enjoyment of life and liberty." ... "No State government entity has the power to allow or deny passage on the highways, byways, nor waterways... transporting his vehicles and personal

property for either recreation or business, but by being subject only to local regulation i.e., safety, caution, traffic lights, speed limits, etc. Travel is not a privilege requiring licensing, vehicle registration, or forced insurances." *Ex Parte Dickey*, (*Dickey vs. Davis*), 85 SE 781; *People v. Nothaus*, 147 Colo. 210.

"Traffic infractions are not a crime." *Chicago Coach Co. v. City of Chicago*, 337 Ill. 200, 169 N.E. 22.

"Persons faced with an unconstitutional licensing law which purports to require a license as a prerequisite to exercise of right... may ignore the law and engage with impunity in exercise of such right." *People v. Battle*.

U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary as "The word 'operator' shall not include any person who solely transports his own property and who transports no persons or property for hire or compensation." *Shuttlesworth v. Birmingham* 394 U.S. 147 (1969).

"Highways are for the use of the traveling public, and all have the right to use them in a reasonable and proper manner; the use thereof is an inalienable right of every citizen." Statutes at Large California Chapter 412 p.83.

"RIGHT — A legal RIGHT, a constitutional RIGHT means a RIGHT protected by the law, by the constitution, but government does not create the idea of RIGHT or original RIGHTS; it acknowledges them. . . " *Escobedo v. State* 35 C2d 870 in 8 Cal Jur 3d p.27

Those who have the right to do something cannot be licensed for what they already have right to do as such license would be meaningless." Bouvier's Law Dictionary, 1914, p. 2961. "

"A license means leave to do a thing which the licensor could prevent." *City of Chicago v. Collins* 51 NE 907, 910.

"The object of a license is to confer a right or power, which does not exist without it." *Blatz Brewing Co. v. Collins*, 160 P.2d 37, 39; 69 Cal. A. 2d 639.

"The court makes it clear that a license relates to qualifications to engage in profession, business, trade or calling; thus, when merely traveling without compensation or profit, outside of business enterprise or adventure with the corporate state, no license is required of the natural individual traveling for personal business, pleasure and transportation." *Payne v. Massey* (1946) 196 SW 2nd 493, 145 Tex 273.

Contract #: EDM-08211975-E10673-LVLD ©                                    A-9621DA-CA-001

"If [state] officials construe a vague statute unconstitutionally, the citizen may take them at their word, and act on the assumption that the statute is void." – *Wingfield v. Fielder* 2d Ca. 3d 213 (1972).

"With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority." *Shuttlesworth v. Birmingham* 394 U.S. 147 (1969).

"The right to travel (called the right of free ingress to other states, and egress from them) is so fundamental that it appears in the Articles of Confederation, which governed our society before the Constitution." *Donnolly vs. Union Sewer Pipe Co.*, 184 US 540; *Lafarier vs. Grand Trunk R.R. Co.*, 24 A. 848; *O'Neil vs. Providence Amusement Co.*, 108 A. 887.

(*Paul v. Virginia*). "[T]he right to travel freely from State to State … is a right broadly assertable against private interference as well as governmental action. Like the right of association, it is a virtually unconditional personal right, guaranteed by the Constitution to us all." (U.S. Supreme Court).

(*Shapiro v. Thompson*). EDGERTON, Chief Judge: "Iron curtains have no place in a free world. …'Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any State is a right secured by the Constitution.'

"Our nation has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases."- *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186, 197.

"The validity of restrictions on the freedom of movement of particular individuals, both substantively and procedurally, is precisely the sort of matter that is the peculiar domain of the courts." *Kent vs. Dulles* see Vestal, Freedom of Movement, 41 Iowa L. Rev. 6, 13—14.

"a person detained for an investigatory stop can be questioned but is "not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest. "Justice White, Hiibel "Automobiles have the right to use the highways of the State on an equal footing with other vehicles." Comment, 61 Yale L.J. at page 187.

8 | P a g e

**Contract #: EDM-08211975-E10673-LVLD** ©                              A-9621DA-CA-001

"Each citizen has the absolute right to choose for himself the mode of conveyance he desires, whether it be by wagon or carriage, by horse, motor or electric car, or by bicycle, or astride of a horse, subject to the sole condition that he will observe all those requirements that are known as the law of the road." *Cumberland Telephone. & Telegraph Co. v Yeiser* 141 Kentucy 15.

U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets The Court said An administrative regulation, of course, is not a "statute." A traveler on foot has the same right to use of the public highway as an automobile or any other vehicle", *Swift v City of Topeka*, 43 Kansas 671, 674.; *U.S. v Mersky* (1960) 361 U.S. 431.

Automotive vehicles are lawful means of conveyance and have equal rights upon the streets with horses and carriages. *Cecchi v. Lindsay*, 75 Atl. 376, 377, 1 Boyce (Del.) 185.

…automobiles are lawful vehicles and have equal rights on the highways with horses and carriages. Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 205; See also: *Christy v. Elliot*, 216 Ill. 31; *Ward v. Meredith*, 202 Ill. 66; *Shinkle v. McCullough*, 116 Ky. 960; *Butler v. Cabe*, 116 Ark. 26. 28-29; *Daily v. Maxwell*, 133 S.W. 351, 354.

A farmer has the same right to the use of the highways of the state, whether on foot or in a motor vehicle, as any other citizen. *Matson v. Dawson*, 178 N.W. 2d 588, 591.

Persons may lawfully ride in automobiles, as they may lawfully ride on bicycles. *Draffin v. Massey*, 92 S.E.2d 38, 42; Doherty v. Ayer, 83 N.E. 677, 197 Mass. 241, 246.

"A soldier's personal automobile is part of his `**household goods**[.]` *Molway v. City of Chicago*, 88 N.E. 485, 486, 239 Ill. 486; *Smiley v. East St. Louis Ry. Co.*, 100 N.E. 157, 158.

"[I]t is a jury question whether … an automobile … is a motor vehicle[.]"; *U.S. v Bomar*, C.A.5(Tex.), 8 F.3d 226, 235" 19A Words and Phrases – Permanent Edition (West) pocket part 94.

Other right to use an automobile cases: – *United States v Johnson*, 718 F.2d 1317, 1324 (5th Cir. 1983).

*EDWARDS VS. CALIFORNIA*, 314 U.S. 160 –

Contract #: EDM-08211975-E10673-LVLD ©                                      A-9621DA-CA-001

*TWINING VS NEW JERSEY*, 211 U.S. 78 – *WILLIAMS VS. FEARS*, 179 U.S. 270, AT 274 – *CRANDALL VS. NEVADA*, 6 WALL. 35, AT 43-44 – THE PASSENGER CASES, 7 HOWARD 287, AT 492 – *U.S. VS. GUEST*, 383 U.S. 745, AT 757-758 (1966) –

*GRIFFIN VS. BRECKENRIDGE*, 403 U.S. 88, AT 105-106 (1971) – *CALIFANO VS. TORRES*, 435 U.S. 1, AT 4, note 6 –

*SHAPIRO VS. THOMPSON*, 394 U.S. 618 (1969) – *CALIFANO VS. AZNAVORIAN*, 439 U.S. 170, AT 176 (1978); note that Some citations may be paraphrased, paraphration or not what is established here is this is common knowledge, and when acting contrary to the "judicial knowledge", the respondents have done exactly what the New Hampshire state Supreme Court and its legislature has documented on record in the passage of the amendment to its right to travel laws, see:

*Be it Enacted by the Senate and House of Representatives in General Court convened:*

Statement of Purpose. The general court finds that **the authority of the department of [Motor Vehicles] is limited to only the commercial users of the public ways and that the corporate state employees have,** by their silence, failed to fully inform the sovereign people of this state that an automobile has been confirmed by Chief Justice Grimes, in 108 N.H. 386, to be "private property" defined by current RSA 382-A:**9-109, as "household goods" and "consumer goods" not for commercial use or for profit or gain.** Further, the courts have found that corporate public servants who ignore their accountability as mandated in Article 8, N.H. Bill of Rights have by their silence and failure to fully inform the sovereign people of the consequences arising from the corporate **"offer to contract,"** is deemed silent deception and inducement by fraud. - HOUSE BILL *1778-FN-A-LOCAL.*

It is to be noted that although this bill did not pass, the statements and facts stated in its "statement of purpose" section still holds true as backed, as the Supreme Court of the state of New Hampshire in the matter of National *Shawmut Bank v. Jones,*108 N.H. 386 (1967) "...Since Wever purchased for personal, family or household purposes, the Dart is classified as consumer goods. ... [UCC} 9-109. The plaintiff's security interest was perfected by filing the financing statement with the town clerk of Hampton where Wever resided (UCC 9-401 (1) (a) and continues when the collateral is sold without its consent as was the case here unless Article 9 provides otherwise. UCC 9-306 (2). In the case of buyers of goods, Article 9-307 (1) does provide otherwise in certain instances, as follows:

"A buyer in ordinary course of business (subsection (9) of Section 1-201) ... of selling automobiles, he was a "buyer in ordinary course of business." UCC 1-201 (9). However, Article 9-307 (1) permits him to take free only of "a security interest created by his seller." The security interest of the plaintiff was not created by Hanson-Rock, Inc., the defendant'... (2) relating to consumer goods even if he purchased for his own personal, family or household purposes (a fact not agreed upon) because "prior to the purchase, the secured party. . . filed a financing statement. . . ." These are the only two provisions of Article 9 under which a buyer of goods can claim to take free of a security interest where a sale, exchange or other disposition of the collateral was without the consent of the secured party. UCC 1-102 (2). See *Lincoln Bank & Trust Co. v. Queenan,* 344 S.W.2d 383 (Ky. 1961).

As noted, a party does not need to have the law New Hampshire enacted in order to prove the point that it is common knowledge as identified via the **Uniform Commercial Code article 9 section 102 and section 109, that private property is exempt, that the agencies and/or government has no jurisdiction over the private affairs and/or properties of the citizens of the United States, as these properties and/or wears are construed as consumer**

Contract #: **EDM-08211975-E10673-LVLD** ©          A-9621DA-CA-001

**goods, household goods, for private noncommercial use.** The state of the parties where the reside clearly document the very same cognizant rights of common usage!

It is beyond comprehension that the claimant would bring forth this claim of violation of his due process rights which is **secured by the Bill of Rights of the United States Constitution and the Constitution for the state wherein the parties reside,** only to be ignored. He documents the states constitutions secured right to petition for redress, and when we take into account that the framers of the Constitution intended the word redress to equate to a "correction of a wrong ('s)", placed a duty and/or responsibility upon the parties to assist a citizen of the state in his redressing his grievances. Because the right to greed is a cognizable constitutionally secured right, one cannot be denied such a right by a simple response "we deny your claim" especially when such a claim is coupled with an arbitration agreement predicated upon a prior relationship "i.e. the issuance of a traffic citation, constituting a contractual agreement between the parties". *In this instance is that the officer listed as a respondent in this matter was without jurisdiction based upon the law, and since the officer operated as an official of the city he therefore in his official and in his personal capacity brought liability upon the city for his actions against the due process rights secured by the Bill of Rights respecting the claimant. When asked to prove jurisdiction neither the officer of the court, the city manager, or the officer of the police department supplied any evidence to substantiate its authority over the private exempt property of the citizens of the state, see: Uniform Commercial Code article 9 section 102 and 109.* The respondent having **failed to show as mentioned throughout this presentment that the claimant was traveling in commerce at the time of the interaction** with the officer and was thereby required to have a license and exercising a right to travel in peace and the pursuit of happiness.

There is a fact that does not escape this arbitrable tribunal review and that is, the claimant has made a challenge to the jurisdiction of the city, the officer, the court, by doing so such constituted as a notice of change in terms of the agreement. As listed below the jurisdiction of a venue may be challenged at any time even on appeal. That includes even the jurisdiction of this arbitrable tribunal, however, in this instance the jurisdiction of this venue has been proved herein by facts and conclusions of law, i.e. 9 USC subsection 5.

On the issue of the duty of the officials to properly respond, the conditional offer was contingent upon a specific performance, and by the respondents responding they are deemed to have assented to the agreement. **A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive it.** Hemenway v. Hemenway,159 N.H. 680, 684 (2010). ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). As such, parties—and even the court itself—are free to raise questions about the court's jurisdiction at any stage of the litigation. See: *Folden v. United States,* 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte."); *cf. John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 132 (2008) (discussing how this court must consider issues pertaining to its limited jurisdiction—even if not raised by the parties).

The reference information stated herein is for the purposes of establishing that there is a duty and obligation on the part of government entities and/or agencies to communicate with constituents and our citizens of their respective states/constituent demographic. Here in this extension matter the insurance company known as risk management attempted to categorically deny all of the claims. The contract specifically required specific responses to each and every contingency/contention/impairment, and specified that failure to respond specifically to each and every of the aforementioned would constitute acquiescence to the agreement and a default associated thereto the respondents were aware of this

## C. Whether a Court or an Arbitrator Decides Whether an Agreement to

## Arbitrate Exists

Whether an agreement to arbitrate exists involves two inquiries, although this is referred to as the single concept of —arbitrability. The Supreme Court's decision in *First Options of Chicago v. Kaplan,* 514 U.S. 938 (1995), discussed this point: —This determination [whether there is an agreement to arbitrate] depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. The question of who decides these questions (arbitrator

or judge) can be critical. In 1925, Congress passed and President Coolidge signed the Federal Arbitration Act. As relevant here, the Act provides:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2.

Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. *Rent-A-Center*, 561 U. S., at 67. Applying the Act, **we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also " 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Id., at 68–69; see also First Options, 514 U. S., at 943. We have explained that an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.**" *Rent-A-Center*, 561 U. S., at 70.

***Parties are free to agree that an arbitrator may decide whether an agreement to arbitrate exists***. But if there is no clear and unmistakable evidence of the parties' intention to have the arbitrator decide that issue, a reviewing court does so. *Kaplan, supra.* This means that a participant in an arbitration who has not agreed to submit the question of arbitrability to the arbitrator can later argue the point in court without waiving its right to independent court review, so long as it objects to jurisdiction during the arbitration proceeding. *Id.* at 946.

*First Options of Chicago v. Kaplan* also discussed that issue. It noted that if parties to a contract agree to allow the arbitrator to decide the issue of arbitrability the decision of the arbitrator is reviewable under traditional standards of review of arbitration decisions. On the other hand, if a party does not agree to arbitrability, it is entitled to an independent review of the issue by the courts. This flows —from the fact that arbitration is simply a matter of contract between the parties: it is a way to resolve those disputes— but only those disputes—that the parties have agreed to submit to arbitration. *Kaplan*, 514 U.S. at 943; See also *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___ (2019).

## D. Appeal Procedures From Arbitrations

In Hall St. Assocs., LLC v. Mattel, Inc., 128 S.Ct. 1396 (2008). the Supreme Court decided that an attempt by contract to expand judicial review was not enforceable under the Federal Arbitration Act. Instead, the Court limited judicial review to those theories which are permitted by the Federal Arbitration Act, which are set in the statute as follows:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-- "(1) where the award was procured by corruption, fraud. or undue means; "(2) where there was evident partiality or corruption in the arbitrators, or either of them; "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 11.

In *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84 (Tex. 2011), the Supreme Court decided that under the The Arbitration Act parties can agree to limit an arbitrator's scope of authority or expand judicial review of an arbitration award and that the Federal Arbitration Act did not preempt the statute.

As in this instance the parties have not limited the scope of the authority of this arbitrator or his review of the contract shall agreement between the parties. The arbitration clause is explicit in that it gives this arbitrator the authority to determine the validity of any claim and exclusively permits and allows this arbitrator to render a just decision on behalf of the parties. As stipulated as mentioned as noted, I, Brett Eeon Jones. have been chosen as a

Contract #: **EDM-08211975-E10673-LVLD** ©                                                A-9621DA-CA-001

result of the contractual agreement between the parties to render alien impartial decision regarding whether or not the contract comports to a valid agreement between the parties, so I document the following:

    i.    Each of the parties are consenting adults,

    ii.    that there has been no claim of attempt to defraud anyone (and in light of the proof of service by both the claimant, and this arbitrator, in any such claim of fraud would not survive scrutiny),

    iii.    that the contract has an arbitration clause,

    iv.    that the contract has a commerce clause,

    v.    that the contract has an opt-out clause,

    vi.    that the contract is doable, and workable,

    vii.    that the contract contains value and consideration,

    viii.    that the contract contains an expiration date,

that under the basic and most foundational principles of contract law (restatement (SECOND) of contract)), all of the benchmarks indicating a valid agreement are present. As noted P. L. 114 – 31 has the United States Congress after submitting such a contract to the judiciary committee twice enacting the aforementioned law and establishing a precedent for other such like agreements under the provisions of the constitutions Bill of Rights due process of law clause. This arbitrator can see no reason to deviate from said precedent respecting the aforementioned agreement between the parties, and I do hold, and find, and as well as conclude, that the agreement between the parties is binding, valid, enforceable, and irrevocable.

H. Time to Challenge Award

Under the FAA, if a party wants to challenge an arbitration award, then it must do so within 3 months after the award is filed or delivered. This is because the FAA expressly requires that —notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. 9 U.S.C. § 12.

Similarly, in order to challenge an arbitration award under the FAA, a party must submit to the trial court an application requesting that the award be vacated not later than the 90th day after the date of delivery of a copy of the award to the applicant. See: F.A.A. § 10 - 12. The only slight exception to this rule is that if the party intends to challenge the award on the grounds that it —was obtained by corruption, fraud, or other undue means, the party must make its application to the trial court —not later than the 90th day after the date the grounds for the application are known or should have been known.

The 90-day period set forth in Section 12, is intended to function as a —limitations period after which a party cannot ask a court to vacate an arbitration award. *New Med. Horizons II, Ltd. v. Jacobson*, 317 S.W.3d 421, 428 (Tex. App. Houston [1st Dist.] 2010, no pet.). Unless a challenge to the arbitration award is timely submitted under Section 12, the court must confirm the award on the application of any party.id.

**Findings and Conclusions**:

1.   This matter, has come before Brett "Eeon" Jones; an independent Arbitrator/Neutral, who

possesses more than thirty (30) years of contract law and legal experience. I am competent, not suffering from a

mental disease and/or defect which would prevent my rendering a decision in the present matter.

The parties contract arbitration contract states IN RELEVENT part:

**"In accordance with and**

2.   This Arbitrator has Subject Matter Jurisdiction, SMJ; as acknowledged by 9 U.S. Codes §

**Contract #: EDM-08211975-E10673-LVLD** [©]                                   A-9621DA-CA-001

1, § 2, § 9; 28 U.S. Code §§ 1346; and the established common law not limited to the following specifics:

3. First, this Arbitrator questioned whether "there was a duty to respond?" A quick determination of "Yes" was reached as "the people" have a right to petition the government for redress of grievance (i.e.: to correct the wrongs, implying a duty to act and upon the taking of office and/or oath they place on the public record such awareness of specific duty. The paying of taxes also imposes upon the officer no matter who he may be an obligation to provide specific services to the public within the round and sphere of the office and duties of responsibilities associated thereto.), per the First Amendment of the United States of America Constitution. Each of the Respondent(s) in this matter are construed as government and requesting that they respond to a Proof of Claim is an adequate petition for redress.

4. Second, "Can the government contract commercially with individuals?" It has been determined that the government may enter into the contract the same as a private party, yet only according to the Clearfield Doctrine as the doctrine places a mandatory surrendering of sovereignty and requires that no special treatment be given to the "commercial" entity of the government. - "**.....when the United States enters into commercial business it abandons its sovereign capacity and is to be treated like any other corporation.**" It is to be noted that this "judicial general knowledge" doctrine, satisfies the requirement for the voluntary waiver of sovereign immunity respecting government and/or government agents and/or government entities and/or government departments. The respondents fall within this category in the eyes of the law.[1]

5. Third, "Did the Respondent(s) have a duty to respond?" Again, the finding is "Yes." The contract acts as a "compelled performance agreement." The contract specifically states that "should the Respondent(s) fail and/or not respond directly to each proof of claim with a specific response or otherwise refuse to provide the required necessary proof of claims raised herein and above, the Respondents will have agreed/consented to all of the facts." And we note that the federal government and its agents and or employees sit as trustees in reference to the public trust to carry out what are referred to as "ministerial duties" implying a "duty to respond".

6. A failure to respond while having a duty to respond constitutes performance under the

**Contract #: EDM-08211975-E10673-LVLD** ©                                    A-9621DA-CA-001

terms of the agreement. The Respondent(s) had a lawful and legal duty to respond to the claim. In fact, their "refusal or failure" to respond is a breach of the duty of care to uphold the United States of America Constitution for which they took an oath.

7.   We shall construe the non-response as consent on the record without leave to contest. This hearing is held de novo and the Respondent(s) are electing to have this Arbitrator rely on the evidence submitted by the parties as the sole basis for their defense.

8.   This Arbitrator finds that the Respondent(s) has admitted to the following facts:

   i.   "that there was a prior agreement and that the respondents had knowledge of not only to prior agreement but the conditional acceptance of said agreement",

   ii.   That the respondents failed to timely opt out of the agreement, although they specifically stated that they were not going to be paying any money, they failed in their duty to respond specifically to the claimant any allegations of a constituent i.e. a citizen of the state as required by law.

**Order for relief to the Claimant.:**

9.   This Arbitrator hereby orders the release of the Claimant's property and any claims against this property or any claims against the claimant's financial well-being is hereby order in compliance with the agreement of the parties discharged permanently in the form expungement of the record.

10.   The department(s) and/or organizations holding the Claimant and the Claimant's property, monies, assets, securities, corpus are to release such immediately. Failure to do so and failure to comply with this order shall result in the application for writ of possession and/or federal bank sanctions, monetary damages, and additional assessment(s). This order does constitute a claim of lien and authorizes such to be placed on the properties of the respondents until the amount hereby sanctioned is paid in full in the currency so specified. In this instance the request for silver is forbade by law and Supreme Court precedent, the law specifically holds that the payment for any debt shall be in the currency which is at the time legal tender for the payment of debts of the United States. Currently United States treasury is held that the Federal Reserve notes have no value, are not redeemable, and are not backed by any commodity, and that this is been the case since 1933 (see the following webpage of the official site of the United States government, information from the United States financial authority on the status of legal tender of the United States:

**Contract #: EDM-08211975-E10673-LVLD** ©                                    A-9621DA-CA-001

> Federal Reserve <u>notes are not redeemable</u> in gold, silver or any other commodity, and <u>receive no backing</u>
>
> <u>by anything</u> This has been the case since 1933. <u>The notes have no value</u> for themselves..."
>
> https://www.treasury.gov/resource-center/faqs/Currency/Pages/legal-tender.aspx

the respondent's are hereby commanded to pay to the claimant as required by the agreement $300 million collectively in the form of financial credits equivalent to cognizable currency of the United States as required by law. This arbitrator finds that the requirement for payment in silver and or the requirement for the stipulation of days at a rate of $1 million per day is not permissible under current contract law. For the reason that the banking act of the United States did not permit one to demand payment in a particular kind of currency (see the banking act of June 5 & 6, 1933) and that the total number of days for which one was deprived of their property, their possessions, their right to be secure in their person, of due process of law, as secured under the Bill of Rights the United States Constitution is not specifically specified.

11.   The Respondent(s) are hereby commanded to cease any and all activities that are contrary to this order and grant habeas corpus respecting the Claimant's possessions and the assessment of $10,000.00 for each day of the unconstitutional denial of due process, damage to property, reputation, financial status, is to be paid no later than 30 days from the date of this order. It shall be noted that a body can consist of a "politic", •a group of people with a common purpose or function acting as an organized unit. "a regulatory body". association · organization · group · grouping · party · band · company · society · club · circle · fellowship · partnership · fraternity · syndicate · guild · federation · confederation · bloc · corporation · contingent · coterie · clique, ect...,

12.   The CEO of the financial institution/facility is hereby ordered to, upon receipt of a certified copy of this order: release the liens, hold on the Claimant's person and account and or property and or possessions and to do so without any unnecessary delay IE: Immediately.  Any delay will constitute contempt as the parties are in agreement. There will be no excuse for any delay.  You have 24 hours to comply with this written order granting of lied and claim of hold on property of the Claimant.  This order shall be construed contextually and not otherwise.

13.   The contract, its provisions shall remain in effect and enforced to the extent required by the agreement.

14.   The securitization trustee(s) are to release to the Claimant any and all property, funds.

16 |

Contract #: **EDM-08211975-E10673-LVLD** ©                    A-9621DA-CA-001

assets, etc. of the trust/estate to the Claimant respecting the Claimant's interest in this matter, within 30 days of

recipe of this order and all Respondent(s) are on notice that any resistance shall result in civil contempt of court

which bears heavy civil liabilities.

15.  Due to the "old" and continual "judicial hostility toward arbitration" this Arbitrator

exercises his authority per the FAA and the arbitration clause of the contract.  The parties having confirmed the

arbitrator's civil authority having "the power of a judge" to issue a writ as part of the remedial process" and as

backed by the United States Congress, this Arbitrator under Section 5 of the FAA is granted such power and

authority by the will of the parties to the agreement, via special provisions of the agreement, limited to the private

interest of the parties of the agreement.

16.  There is a pattern that has been observed by several scrupulous attorneys, organizations and/or agencies

there is a practice of waiting until after an arbitration hearing has been conducted, and the party electing not to

attend the hearing, failing to ask for an extension so that they may challenge the hearing prescribed by the Federal

Arbitration Act section 10. This strategy is not only unethical, interferes with the fair administration of justice and

documents bad faith, why is that the case? Note what has been "judicial knowledge": Among other contentions

(including actual compliance mutual laxness of grievance time limit compliance, and the continuing nature of the

grievance), "... the Union asserts for purposes of this summary ruling determination that the County's undisputed

failure to raise procedural defenses during the pre-arbitral grievance processing steps, alone, constitutes a waiver of

the defenses the County seeks to raise for the first time at the arbitration hearing.  **In making that argument, the**

**Union has reserved the right to present additional evidence regarding Issue 1 if the Arbitrator does not rule**

**in the Union's favor on the basis of the County's case alone...**

1.  In sum, the Union requests that the Arbitrator separately and summarily rule that the answer to Issue 1 is

    "yes, the grievance is procedurally arbitrable." In support of that position and in opposition to the Union's

    waiver argument, the County argues as follows:

2.  The time limits presented in Article 7 of the collective Bargaining agreement are clear and unambiguous. . .

    . [T]he parties . . . agreed upon the language [and] must be presumed to have understood its intent and

    agreed to be bound by the terms of the Agreement . . . . [T]he Arbitrator in this case cannot disregard the

    fact that an effective grievance procedure requires a quick and efficient means of processing grievances.

    To waive adherence to the agreed upon rules would be to weaken the process itself.  It is not for the

Arbitrator to circumvent the meaning of a time limitation clause within the . . . Agreement, unless the parties who negotiated the clause have clearly done so themselves.

3. It was the Union's position at the time of the Arbitration Hearing, that Management had waived any right to assert the defense of non-arbitrability by its failure to raise this issue prior to the Arbitration Hearing. However, it is a well settled arbitral principle that time limitations are not waived by a party unless an express waiver is issued by that party (such as electing not to attend a hearing after being duly notified, in the manner prescribed by law). Arbitration law is well settled that the defenses of non-arbitrability need not be pleaded during the grievance procedure, let alone in documents processing the case to arbitration. **The defense of non-arbitrability may be raised for the first time at the Arbitration Hearing** (One cannot elect to raise such a defense after having been granted an opportunity to raise it an arbitration hearing, and intentionally failing to do so, at a subsequent judicial proceeding, such goes contrary to the hornbook of America's jurisprudence). It is universally said that the jurisdiction of the Arbitrator may be questioned at any point just as may the jurisdiction of a court of law, **unless that issue has been expressly waived**. Citing, Publisher's Association of New York, 39 LA 379 (1962); and Joy Manufacturing Company, 44 LA 304 (1965).

DISCUSSION

4. The Arbitrator agrees with the Union that the County's processing of the grievance at the various pre-arbitral steps without preserving the timeliness defense on which it relies in its brief, constitutes a waiver of that defense.

5. The arbitration awards cited by the County stand for the propositions the County asserts regarding waiver. However, those awards represent a minority viewpoint among arbitrators and, in the view of this Arbitrator, they are not as well reasoned as the cases representing the majority viewpoint.

6. The oft-cited arbitration reference, Elkouri and Elkouri, How Arbitration Works, (BNA, 4 ed., 1985) discusses this point at pp. 194-195. The authors state, "[i]n many cases time limits have been waived by a party in recognizing and negotiating a grievance without making clear and timely objection." For that proposition they cite a substantial number of awards. Id. at n.192. The Elkouris then go on to state, "But there are some cases holding to the contrary." For that proposition the authors cite a total of three awards, including the two cited by the County herein. Id. at n.193.

It is to be noted in the instant matter that the respondents have reserved no right, has brought no challenges could not isolate law to the jurisdiction of the arbitrator and/or the arbitration based upon the facts and evidence presented by the parties. The respondent has neither challenged the issue of notice and service of documents, and or the complainant's claim of breach of agreement based upon claimant's conditional acceptance of a prior agreement and offer to renegotiate. As noted the strategy of waiting until after the hearing has been conducted, electing not to participate in a meaningful manner, such is a deliberate and intentional act, for the record clearly documents the respondents were notified prior to the hearing that they needed to provide and/or present documentation refuting the claim of dispute that the respondents were in default i.e. failing to respond. All of the aforementioned failures only go to bolster the case of the claimant for the issuance of a default judgment by way of arbitral award.

This resembles a matter that was adjudicated by the United States Congress and Gen. assembly, a contract and pretty much the same format as the one presented here was reviewed by an independent arbitrator, in this instance the United States was involved in that particular matter associated with Senate Bill S. 112, enacted into law as P. L. 114 – 31. In that instance the Atty. Gen. of the United States was held by the United States Congress in Gen. assembly, forming a District "Court" for the district of Columbia, confirmed the award issued against the interest of the United States, holding that the United States by and through the Atty. Gen.'s office was indeed liable to the claimants of that matter. Thereby setting a precedent for the instant matter, and that the judicial committee having read the contract and the Senate bill twice, found that the contract was indeed binding upon the parties, irrevocable and enforceable. I do hereby in reliance upon that law, the findings of Congress, attached hereto said law for reference purposes relying upon the principles by which it's issuance proceeded. Due to the attempt to defraud this body, and to not take seriously the institution of arbitration as recognized and backed by law for centuries, amounting to an interference with the fair and just administration of justice, award in the favor of the claimant $500,000 in addition to be paid from each respondent party separately in their individual capacities. The monies and/or funds are to equal the equivalent of the currency at his highest rate of trading during the periods of 2001 to 2006 A.D. The reference here to currency is any currency issued by the United States of America having and/or maintaining an economic value greater than 50 years. At 5% per addendum at 5% per day since the date that the claimant first initiated this request for validation. As once the 30-day statute of limitation had expired upon request for validation and/or verification, signed under penalty of

Contract #: EDM-08211975-E10673-LVLD <sup>©</sup>                    A-9621DA-CA-001

perjury, the respondents waive any and all rights to any and all claims respects hereto as explained by Congress in the fair debt collections practices act as embodied within this award order. That makes any and all subsequent attempts to demand a debt against a party of the United States to be invalid, because the claimant happens to be a citizen of the state and thereby Association, a citizen of the United States of America he represents one and the same entity for which the law holds that the validity of a debt claimed by him i.e. violation of Due Process of Law cannot be challenged (see the 14th amendment section 4).


So based on the facts of this matter, and the rational determination of Congress, the entity empowered by the Constitution to enact law of and for the United States, I have no other choice but to find that the respondents were negligent in their duties, that not only did they have a duty to respond, but they had a duty to the claimant and to the juris prudence of the United States of America. to act in a manner that dignified their position.
So, based on the foregoing, the parties did indeed have a contract, the validity of the contract was challenged as a whole, however, that challenge is defeated by the private law enacted by a two thirds majority overriding veto Congress on December 3, 2016, and signed by the president of the United States that same year, a two thirds majority of the government of the United States, The P.L. 114-31 Act.

This is the final order and mandate of this body and It IS SO ORDERED with prejudice this March 4, 2021.




(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK)

**Contract #: EDM-08211975-E10673-LVLD** ©

A-9621DA-CA-001

### *NOTICE OF THE ISSUANCE OF THIS AWARD TO BE DELIVERED TO:*

ORIGINAL:

COPY:

Eyoel Matios
1312 Castlerock Drive
Fort Collins, Colorado 80521

City of Loveland
c/o Stephen C. Adams, City Manager
500 E. 3rd Street, Suite 330
Loveland, Colorado 80537

### *SO, AWARDED.*

Be it so this 01st day of March 2021.
Arbitration Hearing Conducted by:  Brett Eeon Jones

03/01/2021 /s/ *Brett Eeon Jones*

*ARBITRATOR*

21 |

Page ¦ 1

## ALL-PURPOSE PROOF OF SERVICE

I, <u>Brett Eeon Jones</u>, being at or above the age of 18, of the majority and not a party to the action, a citizen of the United States of America, did mail the document entitled:

## ARBITRATION AWARD

by placing it in an envelope addressed to: Name and address:

Eyoel Matios
1312 Castlerock Drive
Fort Collins, Colorado 80521

City of Loveland
c/o Stephen C. Adams, City Manager
500 E. 3rd Street, Suite 330
Loveland, Colorado 80537     *United States Priority Mail* 9405511699000788058807

Affixing the proper postage and depositing it with the local postal carrier, also being of the age of the majority, and not a party to this action who upon receipt guarantees delivery as addressed and/or local drop box guaranteeing the same as prescribed in law. If called upon I provide this sworn testimony based on first-hand knowledge of the aforementioned events attesting and ascribing to these facts on this day March 01, 2021.

/s/ Brett Eeon Jones

# Exhibit G

2nd Notification of Final Arbitration Award

sent to respondents March 26, 2021,

received March 29, 2021

Certified Mail No.: _____ 7018 0360 0000 1832 8780 _____ .

## Notification of Final Arbitration Award

DEBTOR/RESPONDENT(S):
The CITY OF LOVELAND, et al.
To: Moses Garcia, City Attorney
500 E. 3rd Street, Suite 330
Loveland, CO 80537
Phone: 970-962-2543
Moses.Garcia@cityofloveland.org
c/c Stephen C. Adams, City Manager
Steve.Adams@cityofloveland.org

CREDITOR/CLAIMANT:
Eyoel-Dawit: Matios, in sui juris Capacity,
A living man with common-law Rights
c/o 1312 Castlerock drive
c/o Fort Collins, Colo. Republic near [80521]
Within the united States of America
Non-Domestic/Non-Assumpsit
Phone: 970-402-7027
edmforshort0551@yahoo.com

March 26th , 2021

Re: Contract No.: EDM-08211975-E10673-LVLD

Attention: Moses Garcia (City Attorney),

    This communication is to inform all parties involved concerning the **"Notice of Verified Claim for Relief and Money Demand"** i.e. Contract No.: EDM-08211975-E10673-LVLD, that an electronic arbitration hearing was held on Wednesday, January 20, 2021 at Orange County, California.  On March 1, 2021 a Final Arbitration Award was awarded in favor of the Claimant, Eyoel-Dawit: Matios (copy enclosed).

    If you have any questions or comments, feel free to contact me at the e-mail or the address provided above.

Submitted this ___26th___ day of March 2021.

All Rights Reserved without Prejudice, UCC 1-308

By: _____ ,
Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
A living man who has reserved all common law rights

Enclosures:
    copy of the Final Arbitration Award
    corrected Proof of Service

Notification of Final Arbitration Award   Page 1 of 2

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___26th___ day of March, 2021, I Eyoel-Dawit: Matios verify that I served a true and accurate copy of the foregoing: "Notification of Final Arbitration Award", a copy of the "Final Arbitration Award"  Re: Contract No: EDM-08211975-E10673-LVLD, and a corrected Proof of Service by placing same in the US Mail, sent by Certified Mail to the following Debtor(s)/Respondent(s):

## CITY OF LOVELAND

Cert. Mail No.: 70180360000018328780
To: Moses Garcia, City Attorney
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

Copy sent
To: Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

All Rights Reserved without Prejudice, UCC 1-308

By: _____,
        Eyoel-Dawit: Matios, Claimant in sui juris Capacity,
        A living man who has reserved all common law rights

Notification of Final Arbitration Award    Page 2 of 2



**SENDER: COMPLETE THIS SECTION**

☒ Complete items 1, 2, and 3.
☐ Print your name and address on the reverse so that we can return the card to you.
☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Moses Garcia, City Attorney
Stephen C. Adams, City Manager
c/o City of Loveland
c/o 500 E. 3rd Street, Suite 330
Loveland, CO 80537

9590 9402 5029 9063 0490 61

2. Article Number (Transfer from service label)

7018 0360 0000 1832 8780

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☒ Agent
                     ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
3-29-21

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

Loveland, CO 80537

Certified Mail Fee   $3.60
                                    0196
Extra Services & Fees (check box, add fee as appropriate)   01
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery   $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postage   $1.80

Total Postage and Fees   $8.25

03/26/2021

Sent To   Moses Garcia, City Attorney (City of Loveland)
Street and Apt. No., or PO Box No.   500 E. 2nd Street Suite 330
City, State, ZIP+4   Loveland CO 80537

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions