IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02194-WJM-NRN

EYOEL-DAWIT MATIOS, In Sui juris Capacity

Petitioner,

v.

CITY OF LOVELAND et al., in care of Stephen C. Adams, City Manager.

Respondent.

---

**REPORT AND RECOMMENDATION
ON MR. MATIOS' PETITION TO CONFIRM ARBITRATION AWARD (Dkt. #25), MR.
MATIOS' MOTION TO AMEND PETITION TO CONFIRM ARBITRATION AWARD
(Dkt. #30), AND THE CITY OF LOVELAND'S OBJECTION TO PETITION TO
CONFIRM FINAL ARBITRATION AWARD (Dkt. #15)**

**AND**

**ORDER ON MOTION TO VACATE ORDER TO SHOW CAUSE (Dkt. #31)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before the Court on Petitioner Eyoel-Dawit Matios' Motion to

Confirm Arbitration Award (the "Motion to Confirm") (Dkt. #25); his Motion to Amend

Petition to Confirm Arbitration Award (Dkt. #30), and his Motion to Vacate Order to

Show Cause (Dkt. #31). All three filings were referred to me for decision or

recommendation by Judge William J. Martinez on October 1, 2021. (*See* Dkt. #32.)

Respondent City of Loveland ("the City") has objected to the original Petition, arguing

that the arbitration award is unenforceable and fraudulent on its face. (*See* Dkt. #15.)

The City's Objection to the Petition and associated Motion to Vacate and Dismiss (Dkt.

#15) is also before me, having been referred by Judge Martinez for recommendation on September 8, 2021. (Dkt. #16.)

## I.      RELEVANT BACKGROUND

### A.  Background

This case involves what appears to be an extremely troubling fraudulent "arbitration" scheme whereby a supposed aggrieved party (Mr. Matios) presents an "arbitration contract" to the defending party (the City), while simultaneously declaring that a failure to respond to the contract will result, by tacit acquiescence, in a binding arbitration agreement. (*See* "Self-Executing Contract Agreement Fee Schedule Upon Contact of Public Servant", Dkt #1-2 at 37–38 (describing self-executing arbitration provision).) Of course, the responding party usually ignores the instructions on the purported "contract," and the aggrieved party then submits the matter to "arbitration" before what appears to be a fraudulent arbitration operation, called the Sitcomm Arbitration Association ("Sitcomm"). Sitcomm then sets the matter for a hearing. When the defending party is informed that an arbitration hearing has been set, it again generally ignores the notice (not ever having agreed to an arbitration in the first place) and Sitcomm subsequently issues a "Final, Binding, and Enforceable" arbitration award to the tune of millions of dollars in favor of the petitioner and against the responding party. That is essentially what happened in this case—although the City in fact had responded to each of Mr. Matios' notices, explaining that it owed no money, that it had not agreed to arbitration, that it would not be participating in any arbitration, and that the Sitcomm Arbitration Association "has been found to have filed fraudulent arbitration awards in several states." (Dkt. #1-2 at 100.)

On March 1, 2021, notwithstanding that the City never agreed to arbitration with Mr. Matios, Sitcomm issued a "Final Arbitration Award" in the amount of $300 million against the City and in favor of Mr. Matios. (Dkt. #1-2 at 102 *et seq.*) It is this $300 million Final Arbitration Award that Mr. Matios seeks to have confirmed under the Federal Arbitration Act ("FAA") and to which the City objects.

This is just one of the many cases in recent years where a federal court has been confronted with a similar arbitration award issued by Sitcomm. *See, e.g., Magee v. Nationstar Mortgage, LLC*, No. 5:19-MC-017-H, 2020 WL 1188445 (N. D. Tex. March 11, 2020) (refusing to confirm fraudulent Sitcomm arbitration award, vacating the arbitration award, and referring the order to the United States Attorney's Office for the Northern District of Texas and to the Attorney General Offices of Michigan, Mississippi, Hawaii, Virginia, Georgia, Wyoming, and Nevada); *Nichols v. U.S. Bank, Nat'l Ass'n*, No. 2:19-MC-162-KS-MTP, 2020 WL 61049 (S.D. Miss. Jan. 6, 2020) (denying a plaintiff's petition to confirm purported arbitration award from Sitcomm because there was no valid arbitration agreement); *Meekins v. Lakeview Loan Servicing, LLC*, No. 3:19cv501 (DJN), 2019 WL 7340300 (E.D. Va. Dec. 30, 2019) (denying petition to confirm Sitcomm arbitration award and vacating award because there was not even a "scintilla of mutual assent" to the underlying agreement to arbitrate); *Kalmowitz v. Fed. Home Mortg. Corp.*, No. 6:9-MC-00010-JCB-JDL, 2019 WL 6249298 (E.D. Tex. Oct. 22, 2019) (recommending denial of petition to confirm Sitcomm arbitration award and dismissal of case with prejudice because the arbitration documents had "no legal validity. . . rendering the arbitration proceedings and associated award meritless"), *report and recommendation adopted*, No. 6:19-MC-00010, 2019 WL 6249426 (E.D.

Tex. Nov. 21, 2019); *Brown v. Ally Financial, Inc.*, No. 2:18-cv-70-KS-MTP, 2019 WL 6718672 (S.D. Miss. Dec. 10, 2019) (denying motion to confirm and vacating purported Sitcomm arbitration award because there was no assent to underlying agreement to arbitrate), *appeal dismissed*, 2020 WL 4757041 (5th Cir. 2020). These courts have expressed skepticism regarding whether Sitcomm is a valid arbitration entity, and there is at least one lawsuit filed against Sitcomm in the United States District Court for the Southern District of Mississippi by a financial institution alleging that Sitcomm and its associates have engaged in a far-reaching, fraudulent arbitration scheme. *See PennyMac Loan Servs., LLC v. Sitcomm Arb. Ass'n*, No. 2:19-CV-193-KS-MTP (S.D. Miss. filed December 11, 2019).

In another case involving a Sitcomm arbitration award, similar to the instant case, the United States Court of Appeals for the Fifth Circuit explicitly rejected the notion that a binding arbitration agreement could be created via "tacit acquiescence." *See Imperial Indus. Supply Co. v. Thomas*, 825 F. App'x 204 (5th Cir. 2020) (affirming the vacatur of a Sitcomm arbitration award, explaining that "[t]acit acquiescence between relative strangers ignores the basic tenets of contract law," and citing the Restatement (Second) of Contracts § 17 (1981) for the point that, with certain exceptions, the formation of a contract requires a "manifestation of mutual assent").

### B. Relevant Chronology

Other courts that have dealt with arbitration awards from Sitcomm have comprehensively detailed the contours of the unilateral and deceptive arbitration scheme, and the Court notes that Mr. Matios' filings are similar to those made in other

cases. For completeness, the Court briefly recaps the events preceding Mr. Matios'
filing of the Motion to Confirm.

On April 20, 2020, Mr. Matios sent by certified mail to the City Manager and
Assistant City Attorney for the City, a "Self-Executing Contract Agreement Fee
Schedule Upon Contact of Public Servant" (the "Contract") purporting to demand
arbitration with the City over a traffic stop of Mr. Matios by a City police officer. (Dkt. #1-
2 at 2–3.) The document outlined several purported Colorado state torts, federal
constitutional rights violations, Colorado constitutional violations, and state and federal
crimes supposedly committed by the City. (*Id*. at 4–5.) The document asserted that Mr.
Matios was entitled to hundreds of millions of dollars in damages (calculated at $1.565
million per day from the start to the end of the violation). (*Id*. at 9–10.)

The Contract includes language warning that the "**arbitration process is
binding on all parties and is the <u>sole an exclusive remedy</u> for redressing any
issue associated with this agreement**." (*Id*. at 35 (emphasis in original).) The Contract
purported to require within twenty-one days a verified rebuttal/refutation from the City by
a sworn affidavit rebutting each claimed issue, "point for point." (*Id*. at 36.) The Contract
also declared itself to be a "self-executing agreement" and further declared that "a
general response, a nonspecific response, or a failure to respond with specificities [sic]
and facts and conclusions of common law . . . shall constitute a failure and a deliberate
and intentional refusal to respond and as a result thereby and or therein, expressing the
defaulting party's consent and agreement to said facts . . . ." (*Id*. at 37.) The Contract
outlined that it was a consensual binding agreement whereby the City agreed it would
"not argue, controvert, oppose, or otherwise protest ANY of the facts already agreed

upon by the parties set and established herein; . . . in ANY future remedial proceedings(s), action(s), **including binding arbitration** and confirmation of the award in the District Court of the United States at any competent court under original jurisdiction, in accordance with the general principles of non-statutory Arbitration." (*Id*. (emphasis in original.) The Contract also purported to constitute a "**self-executing binding irrevocable durable general power of attorney**." (*Id*. at 38 (emphasis in original).)

The Contract includes another paragraph purporting to make any arbitration decision binding on all parties:

> Any determination by the arbitrator is binding on all parties, and that all parties agree to abide by the decision of the arbitrator, that the arbitrator is to render a decision based upon the facts and conclusions as presented within he terms and conditions of the contract.

(*Id*. at 39.)

On April 22, 2020, the City, via a letter from its Risk Manager, Jason Smitherman, responded to Mr. Matios' "Notice of Verified Claim for Relief and Money Demand" stating that the City had completed its review of Mr. Matios' claim and was denying the claim. (Dkt. #15-1.)

Next, on May 23, 2020, Mr. Matios, again by certified mail, sent the City a "LEGAL NOTIFICATION NOTICE OF FAULT OPPORTUNITY TO CURE," informing the City that because the City had not responded to the Contract, it had "consented and agreed to all the terms and conditions contained therein." (Dkt. #1-2 at 59.) Pursuant to this document, the City was supposedly given 72 hours to "cure" its default. (*Id.*)

On May 27, 2020, the City's Risk Manager  wrote Mr. Matios saying that it had received the "Notice of Fault Opportunity to Cure" and stating, "The City rejects and denies the claim again and will not be paying any sum of money." (*Id*. at 64.)

On June 20, 2020, Mr. Matios sent the City a "Final Legal Notification Notice of Default" asserting that the City is a party to the 54-page Contract, that the City's non-response and partial response without rebuttal/refutation is "agreement," and the sum of $201,971,880 was then "currently due." (*Id*. at 66–67.)

The City, via its Risk Manager, responded on June 25, 2020, with a short letter to Mr. Matios stating, "The City has received the document titled 'Notice of Default.' The City is not in default and has denied all claims. Finally and most importantly, the City will not be paying any sum of money." (*Id*. at 72.)

On December 27, 2020, Mr. Matios appears to have prepared and filed with Sitcomm a "Request for Dispute Resolution on Complaint" which purports to be a request for arbitration between the Mr. Matios and the City. (*Id*. at 74–92.) The last page of this document designates the arbitrator as "THE SITCOMM ARBITRATION ASSOCIATION" and the "hearing location" as "Electronic at SAALimited.com." (*Id*. at 92.) The document concludes with Mr. Matios' plea asking that "this body accept My [sic] application and set a hearing date as soon as possible, and [. . .] that the Arbitrator notify the opposing party of my application, and of my request for speedy disposition." (*Id.*)

On January 6, 2021, Mr. Matios sent the City another notice by certified mail, this time informing the City that Sitcomm had set a hearing date for the arbitration. The notice states that the hearing was set for January 20, 2021 at 12:00 p.m. The named

arbitrator was "Rance Magee." (*Id.* at 94–95.) The notice tells the City that "in the event you need anything from this point forward, please contact support@saalimited.com." (*Id.* at 95.) This notice enclosed a formal "NOTICE OF ARBITRATION HEARING," dated January 3, 2022, purportedly signed by Rance Magee and setting an arbitration hearing for January 20, 2021 at 12:00 p.m. (*Id.* at 97.) Notably, the notice failed to set a location for the arbitration. The notice gave the City ten days to forward a response, specifically warning: "In the event that the Party(s) do not answer this Notice or request an extension within the time indicted [sic], the Arbitrator may proceed to enter an Arbitration Award based upon the supporting evidence and other related documentation." (*Id.*)

On January 22, 2021, the City wrote back to Mr. Matios, this time in a letter from Deputy City Attorney Alicia Calderon, explaining once again that the City had never agreed to arbitrate anything:

> Mr. Matios, the City has consistently responded to you denying all claims, for the third time on June 24, 2020. The City has received the latest documents, including the "*Notice of Arbitration Hearing*." The City has not agreed to arbitration, and the City will not be participating in arbitration as there are no valid claims.
>
> By this letter, we are notifying you that the City considers these documents to be fraudulent filings, as they have not been filed in any lawful court. Second, the Notice of Arbitration Hearing set a date but did not provide a location or a method of responding. Third, Sitcomm Arbitration Association has been found to have filed fraudulent arbitration awards in several states.
>
> As stated previously, we find no merit in any of the stated claims. The City cannot be unilaterally required to participate in arbitration. The City is not in default and has denied all claims. Finally and most importantly, the City will not be paying any sum of money nor will the City be participating in arbitration.

*Id.* at 127.

Next, on March 1, 2021, Sitcomm issued its "Final Arbitration Award," purportedly under "the Common Law of the BILL OF RIGHTS." Rather than the previously-named Rance MaGee, the named arbitrator was Brett "Eeon" Jones,[1] and the purported location for the "Electronic Hearing" was Orange County, California. *Id*. at 102. After fifteen pages of questionable, non-sensical legal mumbo-jumbo and "word salad," Sitcomm's "award" commands the City to pay Mr. Matios $300 million. (*Id*. at 117.) The award document is mostly incoherent and obviously was created by cutting-and-pasting from other documents, including one extensive section which refers to a dispute between a union and a county, rather than between Mr. Matios as claimant and the City as respondent. (*See id*. at 118 ("In making that argument, the Union has reserved the right to present additional evidence regarding Issue 1 if the Arbitrator does not rule in the Union's favor on the basis of the County's case alone . . ."); *id*. at 119 ("The Arbitrator agrees with the Union that the County's processing of the grievance at the various pre-arbitral steps without preserving he timeliness defense on which it relies in its brief, constitutes a waiver of that defense.").)

---

[1] This supposed arbitrator, Brett "Eeon" Jones, is a convicted sex offender who was sentenced on May 30, 2019 to three years and eight months in prison in Monterey County California for failing to register as a sex offender and driving without a valid driver's license. (*See* Dkt. #15-2.) On June 15, 2021, the Anti-Defamation League (the "ADL," an anti-hate organization) on its website published an article explaining that bogus arbitration awards or rulings (like Sitcomm's) are a new tactic being used by the anti-government sovereign citizen movement. The ADL identifies Brett "Eeon" Jones as the leader of Sitcomm, and further explains that "[t]hese 'rulings' and 'damages' serve to intimidate and harass creditors and other victims and are also designed to further clog a court system sovereigns believe is illegitimate." *New Sovereign Citizen Bogus "Arbitration" Tactics Appearing in Many States*, Anti-Defamation League (June 15, 2021), https://www.adl.org/blog/new-sovereign-citizen-bogus-arbitration-tactics-appearing-in-many-states (last visited November 9, 2021). The sheer number of reported federal court cases involving bogus Sitcomm arbitration awards supports the ADL's statements about Sitcomm and its tactics.

On March 26, 2021, Mr. Matios sent the City a Notification of Final Arbitration Award, stating that an electronic arbitration hearing was held on January 20, 2021 in Orange County, California and a Final Arbitration Award was awarded in favor of the Claimant, Eyoel-Dawit Matios. (*Id*. at 125.)

Mr. Matios filed the Petition to Confirm Final Arbitration Award in this Court on August 12, 2021. (Dkt. #1.)

## C. The Order to Show Cause

On August 30, 2021, the Court *sua sponte* issued an Order to Show Cause (Dkt. #13) ordering Mr. Matios to show cause before September 13, 2021, why the Petition should not be dismissed for two reasons. First was failure to state a claim, given that, after review of the Petition, it did not appear that the alleged arbitration award was based on any enforceable agreement between Mr. Matios and the City given the lack of any mutual assent to contract. Second was the lack of subject matter jurisdiction. The FAA "does not create any independent federal-question jurisdiction," so "there must be diversity of citizenship or some other independent basis for federal jurisdiction before a federal court can act under the FAA." *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (internal citations and quotations omitted).

Mr. Matios responded to the Order to Show Cause on September 17, 2021 with an objection to the Order to Show Cause. (*See* Dkt. #17.) Mr. Matios' objection failed to meaningfully address the apparent jurisdictional defect in the Petition or the lack of an enforceable arbitration agreement. The objection instead focused on other issues, such as the fact that a petition should be treated as a motion, rather than a civil complaint, (s*ee* Dkt. #17 at 26), and the City's request to vacate the award should be denied

because it was not filed within 90 days of receiving notice of the award. (*Id*. at 25.) To the extent Mr. Matios addressed jurisdiction, he relied again on the FAA itself as creating a basis for jurisdiction. (Dkt. #17 at 3.)

In a later submission filed on September 23, 2021, titled "Motion to Vacate Minute Order" (Dkt. #23), Mr. Matios appeared to recognize that the FAA does not itself create federal jurisdiction. He argued nonetheless that there was federal question jurisdiction over his Petition under 28 U.S.C. § 1331 because his underlying dispute with the City raised "constitutional rights violations, specifically, the Fifth and Fourteenth Amendments."

Based on this argument, the Court will discharge the Order to Show Cause as it related to jurisdiction. The question of the enforceability of the arbitration award is addressed in more detail in section II, *infra.*

### D.  Petitioner's Failure to Appear at Status Conference

On October 1, 2021, the Court held a status conference in this case but Mr. Matios did not appear. The Court gave Mr. Matios notice of the status conference and specifically ordered him to appear in person. (*See* Dkt. #21.) Evidencing that he had adequate notice of the status conference, on September 23, 2021, Mr. Matios filed a motion to vacate the status conference. (Dkt. #23.) In the order denying this motion (Dkt. #29), the Court specifically told Mr. Matios that at the October 1, 2021 status conference, he should be prepared to discuss all pending motions and that a "[f]ailure to appear at the status conference may result in sanctions, including a recommendation of dismissal." (Dkt. #29.) Mr. Matios failed to appear as ordered. (*See* Courtroom Minutes, Dkt. #33.) When Mr. Matios did not appear at the status conference, the courtroom

deputy clerk attempted to reach Mr. Matios by telephone at the number reflected in the Court's records. Mr. Matios did not answer the telephone call. (*Id.*)

## II.   LEGAL STANDARD

Under the FAA, an application to a court to confirm an arbitration award is to be made and heard "in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. The Court will therefore treat Mr. Matios' petition to confirm his claimed "arbitration award" as it would any motion.

The FAA's principal purpose is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citations omitted). As a result of the FAA, there is a strong federal policy favoring arbitration. However, the language of the FAA indicates a "contract" or "agreement" is necessary to invoke the mandatory arbitration provision. See 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339 (recognizing the "fundamental principle that arbitration is a matter of contract").

Due to the strong federal policy favoring arbitration, judicial review of an arbitration award normally is very narrow. However, "[b]ecause arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate," which is "governed by ordinary state-law contract principles." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (internal quotations and citations omitted); *see also Howard v. Partners, L.P.*, 748 F.3d 975, 979 (10th Cir. 2014).

In other words, the federal policy favoring arbitration may be applied only after the existence of a valid agreement to arbitrate is found. "[T]he question of arbitrability –

whether a [contract] creates a duty for the parties to arbitrate the particular grievance –
is undeniably an issue for judicial determination." *Daugherty v. Encana Oil & Gas*, 2011
WL 2791338, *3 (D. Colo. July 15, 2011) (quoting *Riley Mfg. Co. v. Anchor Glass
Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)); *see also Will-Drill Res., Inc. v.
Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) (holding that when "a party attacks
the very existence of an agreement . . . the courts must first resolve that dispute").

    Under the FAA, a court may confirm an arbitration award "[i]f the parties in their
agreement have agreed that a judgment of the court shall be entered upon the award
made pursuant to the arbitration . . . ." 9 U.S.C. § 9. Thus, in order to obtain
confirmation, Section 13 of the FAA requires that the moving party file the agreement,
the award, and each notice, affidavit, or other paper used to confirm, modify or correct
the award. "This allows the Court to determine whether a valid arbitration agreement
and award exist upon which it can base its judgment." *Meekins*, 2019 WL 7340300 at
*2.

### III.    ANALYSIS

    It is clear on the face of the materials submitted by Mr. Matios that there was no
valid agreement between him and the City. The City never agreed to arbitrate anything.

    In Colorado, for there to be a binding contract, there must be mutual assent
between the parties as to all material terms. *See* CJI-Civ.4th 30:1 ("A contract is an
agreement between two or more persons."); *Denver Truck Exch. v. Perryman*, 307 P.2d
805 (Colo. 1957) (explaining that for an enforceable contract to exist, there must be
mutual assent to an exchange between competent parties, legal consideration, and

sufficient certainty with respect to the subject matter and essential terms of the agreement).

In addition, in Colorado, for there to be a valid contract with a municipality, there must have been actual municipal authority to enter into the contract. See *Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 519 (Colo. App. 1998) ("Contracts executed by municipal corporations are void when there is a failure to comply with the mandatory provisions of the applicable statutes or charters."). Self-evidently, a "self-executing contract" such as the one Mr. Matios unilaterally presented to the City, was not approved by any legitimate municipal authority. "A fundamental requirement for the enforcement of a municipal contract is that the municipality must have exercised its authority to enter into the contract within the scope of the powers conferred by statute." *Rocky Mt. Nat. Gas LLC v. Colo. Mt. Junior Coll. Dist.*, 385 P.3d 848 (Colo. App. 2014).

Here, there is no evidence of agreement by the City ever to enter into an arbitration agreement with Mr. Matios. Neither is there any evidence of consideration provided by Mr. Matios. Nor is there any evidence or even an allegation that anyone on behalf of the City had the authority to enter into a contract with Mr. Matios. The notion that Mr. Matios could simply send a letter to the City demanding a response and declaring that a failure to respond would constitute a self-executing, binding arbitration agreement is both fanciful and contrary to first legal principles. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960));

*Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) ("'In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause.'" (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 353 (5th Cir. 2003)).

Mr. Matios' instant attempt to enforce in federal court this non-existent arbitration "contract" and the accompanying patently ridiculous $300 million arbitration award is fraudulent, an undue imposition on the City, and an extreme waste of judicial resources. The supposed arbitration "award" in this case is of a piece with numerous other sham Sitcomm "awards" repudiated by other federal judges. As stated by a judge of the United States Court of Federal Claims, "tarradiddle and lack of clarity seems to be a recurring theme in Sitcomm's decisions." *Schlihs v. United States*, 146 Fed. Cl. 495, 497 n.1 (2020) (citation omitted); *see also Nichols*, 2019 WL 4276995, at *2–3 (describing a Sitcomm decision as "a 'bizarre jumble of inconsistent, nonsensical word salad' 'memorialized in 28 pages of uninformative blatherskite'").

Decisions by judges of other federal courts go even farther than the *Schlihs* decision in criticizing Sitcomm and its bogus arbitration awards. *See, e.g., Castro v. Bank of New York Mellon*, No. 3:20-CV-264-MOC-DSC, 2020 WL 2542864, at *1 (W.D.N.C. May 19, 2020) (denying the confirmation of a Sitcomm arbitration award and noting that "many institutions have recently been experiencing an influx of fake arbitration awards" and that "[t]his scam is being perpetrated across the country, and numerous courts have recognized that these purported awards are unenforceable"); *Rodrick v. Putnam Cty. Tax Collector*, No. 3:20-CV-174-J-20MCR, 2020 WL 2768779, at *1 (M.D. Fla. Apr. 27, 2020) (noting that "most, if not all, of the motions to confirm"

Sitcomm arbitration awards have been denied), *report and recommendation adopted*, No. 3:20-CV-174-J-20MCR, 2020 WL 2767573 (M.D. Fla. May 27, 2020). The United States District Court for the Southern District of Mississippi explained:

> Sitcomm is a sham arbitration organization that uses the guise of legitimacy to market itself as an authorized and legitimate arbitration company to attract paying customers and collect fees. After Sitcomm extracts an arbitration 'fee' from these customers, Sitcomm then issues fake exorbitant final arbitration awards against various entities, despite no arbitration hearing having ever been held, no arbitration provision existing that permits the parties to arbitrate their claims, and without proper notice or an opportunity for any party to be heard.

*PennyMac Loan Servs.*, 2020 WL 1469458, at *1 (internal reference omitted); *see also Meekins*, 2019 WL 7340300, at *3–4 (expressing "great skepticism about the validity of [Sitcomm] as an arbitration entity" and determining that the Sitcomm arbitrator "demonstrated a 'manifest disregard of the law' in reaching the Award" because "[m]ost of the language in the Award appears as an effort to convince a reviewing court of its legitimacy; yet, the language has the opposite effect . . . the Award has no legal validity and could only have been the product of undue means").

Thus, just as the other federal courts presented with these types of "self-executing" agreements and fraudulent Sitcomm arbitration awards have repudiated them, finding them to be unenforceable, so must this Court, for all of the same reasons. *See Harvey v. United States,* 149 Fed. Cl. 751, 773 (2020) (providing list of courts questioning Sitcomm's arbitration process and invalidating $60 million arbitration award); *Kalmowitz*, 2019 WL 6249298, at *3–4 (stating Sitcomm does not appear to be a valid entity of arbitration); *Martinez v. Trump,* No. 20-CV-9651 (CM), 2021 WL 797645, at *1 (S.D.N.Y. Feb. 26, 2021) (same)*; Magee*, 2020 WL 1188445, at *3 (stating "the Court notes its concern with the extent and breadth of Sitcomm's seemingly

fraudulent activity…Using the court system to file fraudulent claims burdens defendants, wastes judicial resources, and weakens the public's perception of the judicial branch. Accordingly, the Court will alert the United States Attorney's Office . . . ."); *Teverbaugh v. Lima One Capital, LLC*, No. CV 2019MC159KSMTP, 2020 WL 448259, at *2 n.1 (S.D. Miss. Jan. 28, 2020) ("There has been a recent rash of cases involving arbitration awards issued by arbitrators with [Sitcomm] filed not only in this Court but also in other jurisdictions."); *Brown*, 2019 WL 6718672, at *3 n.1 (referring to awards issued by Sitcomm as "parts of a larger fraudulent enterprise" and warning parties "that it will not permit anyone to waste judicial resources by seeking enforcement of fraudulent 'arbitration awards'"); *United States v. Hallman*, No. 3:05-376, 2021 WL 3773335 (D. S.C. August 25, 2021) (rejecting attempt to use an unenforceable $6.1 billion Sitcomm arbitration award to obtain expungement of federal criminal offense); *Nelson v. Walzl*, No. 21-cv-1169 (CRC), 2021 WL 3662905, at *1 (August 18, 2021) ("The arbitration award itself appears to have been generated by 'Brett 'Eeon' Jones', an individual whose work as an arbiter one court has described as trying to 'make money by selling unwitting consumers fraudulent legal documents and also attempting—so far, unsuccessfully—to dupe a court into confirming one of its awards.'").

## IV.    AWARD OF ATTORNEYS' FEES IN FAVOR OF THE CITY

In its Objection to Petition to Confirm Final Arbitration Award and Motion to Vacate Fraudulent and Improper Award and Dismiss Action Under Rule 12(b)(6), the City asked that it be awarded its reasonable attorneys' fees and costs because Mr. Matios "acted in bad faith and for oppressive reasons." (Dkt. #15 at 15.)  Mr. Matios responded to this request in his Response to Motion to Dismiss, arguing that he was not

"financially responsible to reward her [the City's attorney] for committing fraud upon the court, and committing crimes and torts against him by filing a fraudulent document and abuse of process." (Dkt. #19 at 7.) He goes so far as to suggest that the Court impose sanctions against the City and that he be compensated under the "Colorado Crime Victims compensation fund for intentional infliction of emotional distress." (*Id.* at 6–7.)

The United States Supreme Court has acknowledged the inherent power of the courts includes the power to assess attorney's fees when a party has acted in bad faith, vexatiously or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). Here, Mr. Matios' entire course of conduct in this case demonstrates objective bad faith. The Petition from the very beginning was fatally flawed. The City had informed Mr. Matios that any arbitration award would be fraudulent and unenforceable. A simple Google search of the names "Rance Magee," "Brett 'Eeon' Jones," or "Sitcomm Arbitration" would have disclosed to Mr. Matios any number of published articles and court decisions putting him on notice that Sitcomm and its process of self-executing binding arbitration agreements and inflated arbitration awards was fraudulent and unenforceable.[2]

---

[2] For example, the third result in a Google search for the search term "Rance Magee arbitration" is an entry for Justia Law describing the *Rance Magee v. Nationstar Mortgage* case out of the Northern District of Texas and a decision issued March 11, 2020. The "Court Description" of this decision is enough to put anyone acting in good faith on notice of the fraudulent nature of Sitcomm's arbitration awards:

> The Court denies the Magees' motion to confirm with prejudice and grants Nationstar's motion to vacate. In doing so, the Court notes its concern with the extent and breadth of Sitcomm's seemingly fraudulent activity. Arbitration documents involving Sitcomm have been filed in federal courts throughout the nation. Along with the Northern District of Texas, they have appeared in the Eastern District of Texas, Eastern District of Virginia, Southern District of Mississippi, Northern District of Oklahoma, Northern

Mr. Matios has raised objectively frivolous arguments, either knowingly or recklessly, in his attempt to have the Court confirm a fraudulent arbitration award. As described in detail above, multiple other courts have examined Sitcomm's supposed arbitration process and found it to be bogus. Yet, with multiple filings and objections, Mr. Matios continued to utilize the resources of this Court in his stubborn attempt to have his purported arbitration award confirmed. Perhaps most notably, both the City (in its letters) and the Court (by its Order to Show Cause) put Mr. Matios on notice that the purported arbitration award was likely fraudulent and gave Mr. Matios the opportunity to voluntarily dismiss his Petition. In response, Mr. Matios merely doubled down, pressing forward with his insistence that the Court must confirm Sitcomm's $300 million award in his favor. Mr. Matios' conduct in this case is the very definition of frivolous, vexatious, bad faith litigation. There must be consequences for such an abuse of the court system. Mr. Matios' continued pursuit of confirmation of the purported arbitration award—despite indication from the Court that there are grave concerns with the legitimacy of the purported award—signals Mr. Matios' disregard for The City and the Court.

A further basis for finding Mr. Matios has acted in bad faith is his failure to comply with a specific Court directive ordering him to appear for the status conference in this

---

District of Illinois, and Federal Claims Court. Using the court system to file fraudulent claims burdens defendants, wastes judicial resources, and weakens the public's perception of the judicial branch.

*Magee et al v. Cooper et al, No. 5:2019mc00017 - Document 8 (N.D. Tex. 2020)*, Justia US Law, https://law.justia.com/cases/federal/district-courts/texas/txndce/5:2019mc00017/325581/8/ (last visited November 9, 2021). Thus, no dedicated legal research tools like Westlaw or Lexis-Nexis were required for Mr. Matios to learn that there was no validity to what he was trying to do.

case. If Mr. Matios truly believed he had a legitimate basis to pursue his Petition, he could have made his argument in person to the Court. Instead, after failing to have the status conference vacated, and after being specifically warned that a failure to appear would result in consequences (including, potentially, an award of sanctions), Mr. Matios failed to appear.

For all these reasons, the Court finds that Mr. Matios acted in bad faith. The Court is, therefore, inclined to grant attorneys' fees, including all attorneys' fees and costs incurred by the City since the Court issued its Order to Show Cause on August 30, 2021. However, the City must file a separate motion that complies with D.C.COLO.LCivR 54.3. Therefore, the Court **ORDERS** the City to submit its separate motion for attorneys' fees and supporting affidavit on or before November 23, 2021. Mr. Matios will have ten days from the submission of The City's attorneys' fees and costs to file a response.

## V.    RECOMMENDATION

For the foregoing reasons I **RECOMMEND** the following:

1. that Petitioner Eyoel-Dawit Matios' Petition to Confirm Final Arbitration Award (Dkt. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

2. that Petitioner's Motion to Confirm Arbitration Award (Dkt. #25) be **DENIED**;

3. that Petitioner's Motion to Amend Petition to confirm Arbitration Award (Dkt. #30) be **DENIED** as futile;

4. that the City of Loveland's Objection to the Petition (Dkt. #15) be **SUSTAINED** and Motion to Vacate Fraudulent and Improper Award (Dkt. #15) be **GRANTED** given that the purported award was procured by fraud.

## VI.   ORDER

Further, it is hereby **ORDERED** that:

1. Petitioner's Motion to Vacate [discharge] Order to Show Cause (Dkt. #31) is **GRANTED** and the Order to Show Cause is hereby **DISCHARGED** because the Court does find there is jurisdiction to address the merits of the Petition;

2. The City of Loveland shall file its separate motion for attorneys' fees and supporting affidavit on or before November 23, 2021; and

3. Mr. Matios shall file his response to the City's of Loveland's motion for attorneys' fees within ten (10) days of its submission.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: November 10, 2021

_____
N. Reid Neureiter
United States Magistrate Judge