## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.        1:21-CV-02194-WJM-NRN

EYOEL-DAWIT MATIOS, et al. In Sui juris Capacity,
Petitioner,
v.
CITY OF LOVELAND, et al. In care of Stephen C. Adams, City Manager,
Defendant or Respondent

## THE CITY OF LOVELAND'S RESPONSE TO AMENDED OBJECTION TO RECOMMENDATION

The City of Loveland ("City"), through Nathan Dumm & Mayer P.C., hereby submits its

Response to Amended Objection to Recommendation ("Petitioner's Objection") [ECF 45]:

## INTRODUCTION

Petitioner's Objection ignores the findings and conclusions provided in Magistrate Judge

Neureiter's Report and Recommendation—apparently because there is simply no objection that

can be made [ECF 37].  Petitioner refuses to acknowledge that there is no contract between him

and the City, that the City consistently informed him that it would not pay him any money, that it

would not participate in arbitration, and that the arbitration process Petitioner sought to use was

fraudulent.  Rather, Petitioner seeks to have this Court confirm a supposed $300 million dollar

arbitration award against the City that was procured through fraud—including the use of a

fraudulent arbitration operation called Sitcomm Arbitration Association ("Sitcomm") which has

been found by other federal courts to engage in a fraudulent arbitration scheme.[1]

---

[1] *See, e.g., Magee v. Nationstar Mortgage, LLC*, 2020 U.S. Dist. LEXIS 42608 (N.D. Tex. March 11, 2020) (rejecting request to confirm arbitration award and stating "the court notes its concern with the extent and breadth of Sitcomm's seemingly fraudulent activity…Using the court system to file fraudulent claims burdens defendants, wastes judicial resources, and weakens the public's perception of the judicial branch.  Accordingly, the court will alert the United States Attorney's Office…."); *Harvey v. U.S.*, 149 Fed. Cl. 751, 773 (Fed. Cl. 2020) (providing list of courts

For the reasons provided below, and in conjunction with the arguments set forth in the City's Objection to Petition to Confirm Final Arbitration Award and Motion to Vacate Fraudulent and Improper Award and Dismiss Action Under Rule 12(b)(6) briefing [ECF 15 & 28[2]], the City requests that this Court adopt Magistrate Judge Neureiter's Report and Recommendations.

## **RELEVANT FACTUAL BACKGROUND**

Petitioner's Notice of Verified Claim of Rights and Status (the "Notice"), which was sent to the City on April 20, 2020, is predicated on a traffic stop and speeding ticket Petitioner received that he claims was unlawful, for which he refused to pay the citation issued, and for which he was required to engage in the City's Municipal Court process related to the traffic citation. [ECF 1-2 at 2-3]. The Notice alleged these events resulted in several purported tort, federal constitutional, Colorado constitutional, and state and federal criminal violations Petitioner asserted against the City. [*Id.* at 4-5]. The Notice also stated that Petitioner was entitled to hundreds of millions of dollars-worth of damages using an absurd method of calculation. [*Id.* at 9-10].

The Notice purported to be a "Self-Executing Contract Agreement and Fee Schedule," and demanded that the City (presumably because the Notice is not clear) respond "by sworn affidavit of someone with personal first-hand knowledge…rebutting each issue, point for point…," and that if the City did not do so within twenty-one days, the City "will be deemed to have agreed and consented through 'tacit acquiescence' to ALL of the facts and claims asserted. [*Id.* at §§5.2-5.5].

---

questioning Sitcomm and finding invalid arbitration award); *Kalmaowitz v. Fed. Home Mortg. Corp.*, 2019 U.S. Dist. LEXIS 202712 (E.D. Tex. Nov. 21, 2019) (finding Sitcomm does not appear to be a valid entity of arbitration); *Meekins v. Lakeview Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 222801, at *3 (E.D. Va. Dec. 30, 2019) (denying petition to confirm Sitcomm arbitration award and vacating award); *Nichols v. U.S. Bank, Nat'l Ass'n*, 2020 U.S. Dist. LEXIS 1332 (S.D. Miss. Jan. 6, 2020) (denying Sitcomm arbitration award because no valid arbitration agreement). Magistrate Judge Neureiter listed these as well as other cases on pages 3-4 of ECF 37.

[2] The City also responded to a number of additional pleadings Petitioner filed related to this action and which have some bearing on this matter [ECF 35].

The Notice further states that any controversy or claim related to the purported agreement would be settled by arbitration and that the "**arbitration process is binding on all parties and is the sole and exclusive remedy for redressing any issue associated with this agreement**." [*Id.* at 35 (emphasis in original). Other language in the Notice also emphasized the self-executing nature of the agreement and that an arbitrator's decision would be binding on the parties. [*Id.* at 38-39].

On April 22, 2020, the City's Risk Manager responded to Petitioner and informed him that it had reviewed Petitioner's Notice and denied the claim.[3] [ECF 15-1]. Subsequently, on May 23, 2020 Petitioner sent the City a "Notice of Fault Opportunity to Cure," giving the City 72-hours to "cure" its supposed default. [ECF 1-2 at 59-61]. The City's Risk Manager responded on May 27, 2020 informing Petitioner that the City rejected and denied Petitioner's claim and would not be paying any money. [*Id.* at 64]. Then on June 20, 2020, Petitioner sent a "Notice of Default," to which the City responded on June 25, 2020 that it was not in default and had denied Petitioners claims and would not be paying any money. [*Id.* at 66-72]. Despite the City's consistent responses and position, Petitioner unexplainedly and without any support refused and continues to refuse to accept the City's correspondence as sufficient. As such, on December 27, 2020 Petitioner claims to have submitted a "Request for Dispute Resolution on Complaint," wherein he elected Sitcomm as arbitrator. [*Id.* at 74-92]. The associated "Notice of Arbitration Hearing" that was forwarded to the City failed to provide information as to how or where any supposed hearing would be held, other than to give Sitcomm's website address, and was signed by "Rance Magee."[4] [*Id.* at 94-97].

---

[3] Although Petitioner claims that the April 22 letter was not legally sufficient, he provides no support for that assertion. Not only does the Notice not require a response from a specific individual at the City, but there is no legal requirement Petitioner has cited that the City's Risk Manager did not have authority to respond to the frivolous Notice.
[4] Mr. Magee was a plaintiff in *Magee v. Nationstar Mortgage, LLC*, 2020 U.S. Dist. LEXIS 42608, at *4 (N.D. Tex. Mar. 11, 2020), which case also involved an invalid and fraudulent arbitration award issued by Sitcomm. Petitioner does not address that interesting fact other than to say that Mr. Magee was apparently going to arbitrate this matter on

Even though the City had never entered into any contract or agreement to arbitrate with Petitioner, as clearly demonstrated by its written correspondence and actions related to Petitioner, after receiving the Notice of Arbitration Hearing and before the supposed arbitration award was issued, the City again expressly informed Petitioner by letter that it "has not agreed to arbitrate, and the City will not be participating in arbitration as there are no valid claims," and that "[b]y this letter, [the City is] notifying you that the City considers these documents to be fraudulent filings." [*Id.* at 127]. The City further informed Petitioner that Sitcomm had been found to have filed fraudulent arbitration awards in other states, that the City could not be required to participate in arbitration that it had never agreed to, and that the City would not be paying any money. [*Id.*].

Ignoring the City's letter, Petitioner proceeded with the arbitration process and on March 1, 2020 Sitcomm issued its "Final Arbitration Award," through Brett "Eeon" Jones.[5] As Judge Neureiter recognized, the alleged award was "non-sensical legal mumbo-jumbo and 'word salad,'" that "is mostly incoherent" and "obviously was created by cutting-and-pasting from other documents, including one extensive section which refers to a dispute between a union and a county, rather than between Mr. Matios as claimant and the City as respondent." [ECF 37 at 9]. There was no support or basis for the findings in the alleged award, including that a contract existed between Petitioner and the City that required arbitration. [ECF 1-2 at 104]. Ultimately, Mr. Jones decided, with no proper legal or factual support whatsoever, that the City had "consent[ed]" to the proceedings and that Petitioner should be awarded $300 million. [*Id.* at 117]. Petitioner requests

---

behalf of Sitcomm—which only provides additional support for the conclusion that Sitcomm is and has been involved in a nationwide fraudulent arbitration scheme of which Petitioner is now a part.

[5] Mr. Jones is a convicted sex offender who was apparently serving time in prison in Monterey County California when the supposed arbitration award was issued. [ECF 15-2 & 37 at 9 n.1]. Magistrate Judge Neurieter's Report also correctly notes that sources have identified Mr. Jones as Sitcomm's leader and the improper goals and tactics implemented by Sitcomm and Mr. Jones. [ECF 37 at 9 n.1].

that this Court confirm these irrational and absurd findings made through a fraudulent process and by a person and/or entity engaging in fraudulent tactics.  [ECF 1 & 25].

## **LEGAL ANALYSIS**

### 1.     **Standard of Review.**

Pursuant to Fed.R.Civ.P. 72(b)(3), "the district judge must determine *de novo* any part of the magistrate' judge's disposition that has been properly objected to."  The Tenth Circuit has found that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *U.S. v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, and Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The Tenth Circuit has "adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate [judge]."  *Glaser v. City & Cnty. of Denver*, 557 Fed. App'x 689, 697 (10th Cir. 2014) (quoting *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).  Indeed, [u]nder this rule, the failure to make timely objection waives…appellate review of both factual and legal questions."  *Id.* (quoting *Casanova*, 595 F.3d at 1123) (internal quotations omitted).

### 2.     **Magistrate Judge Neureiter Properly Dismissed Petitioner's Petition and Motion to Confirm Arbitration Award.**

As Magistrate Judge Neureiter recognized, while there is a strong federal policy favoring arbitration, "[b]ecause arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate," which is "governed by ordinary state-law contract principles."  [ECF 37 at 12 citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (internal quotations and citations omitted)]; *see also Howard v. Partners, L.P.* , 748 F.3d 975, 979 (10th

Cir. 2014) ("The FAA doesn't compel arbitration until it is proven the parties agreed to arbitrate –

and that the existence (or nonexistence) of an agreement to arbitrate is judged by normal state law

contract formation principles.").  So, when there is a question as to whether a contract requiring

arbitration exists, the court must determine that question first.  *See Daugherty v. Encana Oil &*

*Gas*, 2011 U.S. Dist. LEXIS 76802, at \*9 (D. Colo. July 15, 2011) (quoting *Riley Mfg. Co. v.*

*Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)).

 Petitioner fails to provide any evidence or information that the City agreed to or that anyone

on behalf of the City had the authority to enter into a contract with Petitioner.[6]  Moreover, as Judge

Neureiter stated, Colorado requires mutual assent between the parties to all material terms for there

to be a binding contract—something which Petitioner does not dispute.  [ECF 37 at 13 citing CJI-

Civ. 4th 30:1 and *Denver Truck Exch. V. Perryman*, 307 P.2d 805 (Colo. 1957)].  Not only is there

no evidence of mutual assent, but there is clear evidence to the contrary in that the City consistently

denied Petitioner's claims and told him it could not be required to arbitrate as it had never agreed

to such a process.  There is absolutely no legal support for Petitioner's claim that he could force

the City to enter into a contract and arbitrate the supposed disagreement as a result of the City's

alleged "tacit acquiescence."  In fact, Petitioner's theory of contract has been explicitly rejected

by courts and he has failed to provide any relevant support to the contrary.[7]

---

[6] The longstanding rule in Colorado has been that an agreement entered without actual municipal authority is void, and that "[a] fundamental requirement for the enforcement of a municipal contract is that the municipality must have exercised authority to enter into the contract within the scope of the powers conferred by statute."  *See Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 519 (Colo. App. 1998); *Rocky Mt. Nat. Gas LLC v. Colo. Mt. Junior Coll. Dist.*, 385 P.3d 848 (Colo. App. 2014).  In that respect, Petitioner's arguments concerning public official's oaths of office is meritless as "an oath of office does not equate with a demonstration of willingness to enter into a contract with an individual…[and] does not constitute an offer that another person can accept to form a contract."  *Ginter v. Jonson*, 2013 U.S. Dist. LEXIS 186548, at \*11 (D. Utah Dec. 20, 2013).

[7] *Magee*, 2020 U.S. Dist. LEXIS 42608, at \*5 (finding "this theory of contract formation is contrary to hornbook contract law and does not give rise to a valid agreement to arbitrat[e]."); *see also U.S. Bank Nat'l Ass'n v. Nichols*,

Further, the alleged arbitration award provides no valid factual or legal basis supporting the existence of a contract.  Rather, the alleged award provides nothing but illogical, nonsensical and unsupported statements that ignore the City's many responses to Petitioner.  [ECF 1-2 at 112].

Given there is no evidence that a contract between Petitioner and the City ever existed, the arbitration process Petitioner engaged in was nothing but a frivolous and fraudulent exercise.  The City, therefore, requests that Magistrate Judge Neureiter's determination that no contract existed and there was no requirement that the City engage in arbitration be affirmed.

**3.      Magistrate Judge Neureiter Correctly Granted the City's Request to Vacate the Fraudulent Award.**

Along with the fact that no contract ever existed which required the City to engage in arbitration, the process by which Petitioner sought to arbitrate this matter and the arbitration award that Petitioner claims was issued were nothing but a sham.  As Magistrate Judge Neureiter found,

> [Petitioner's] instant attempt to enforce in federal court this non-existent arbitration 'contract' and the accompanying patently ridiculous $300 million arbitration award is fraudulent, an undue burden imposition on the City, and an extreme waste of judicial resources.  The supposed arbitration 'award' in this case is of a piece with numerous other sham Sitcomm 'awards' repudiated by other federal judges.

[ECF 37 at 15-17]. Petitioner's sole response to the City's arguments and the findings in Magistrate Judge Neureiter's Report is that the City lacks standing to challenge his Petition and that 9 U.S.C. § 9 requires that the Court confirm his arbitration award.  These arguments are meritless.

First, Petitioner misunderstands how standing is applied.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  As this court well knows, at a minimum, standing consists of three elements

---

2019 U.S. Dist. LEXIS 154049, at *4 (N.D. Okla. Sept. 10, 2019) (concluding "tacit acquiescence" to a "conditional acceptance for value" does not create a contractual relationship).

which a plaintiff must prove to be able to bring a claim. *Id.* While Petitioner claims the City lacks standing to object to his Petition and/or Motion to Confirm because it did not object within the statutory timeframe set forth in the Federal Arbitration Act ("FAA"), that argument misses the mark. As there was never any contract or requirement to arbitrate in the first place, the City had no obligation to object to the alleged arbitration award. Its objection and request to vacate are based on fraud and not the assumption that the award was validly reached in the first place. Thus, Petitioner's standing arguments fail as a matter of law.

Second, while Petitioner may be confusing standing with statute of limitations, again the City's and Magistrate Judge Neureiter's arguments and conclusions do not implicate the standard analysis provided under the FAA, but rather center on the sham process and bogus arbitration award itself. [ECF 37 at 15-17]. And even if a standard analysis under the FAA were considered as to the statutory timeframe Petitioner argues applies, equitable tolling principles come into play. *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007).[8] As the City repeatedly informed Petitioner that it had denied his claims, that it was not going to pay him any money and would not arbitrate, and that any arbitration would be fraudulent, the City diligently enforced its position and should not be punished for not initiating litigation related to arbitration it expressly disavowed from the start. As such, any limitations period should be tolled.

Third, Petitioner fails to address the Tenth Circuit's judicially created reasons for vacating an arbitration award. Those include that the award is against public policy, is in "manifest

---

[8] Petitioner argues that equitable tolling does not apply to Section 12 of the FAA and relies on a case from Maryland. However, that case is not persuasive much less dispositive. *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*, 647 F.Supp. 2d 587, 594 (Dist. Md. 2009) (discussing implications from the Fourth Circuit, but concluding that the parties did not argue equitable tolling applied and so it was not decided).

disregard" of the law[9], and that there was no fundamentally fair hearing.[10]  *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001); *Legacy Trading Co. v. Hoffman*, 363 Fed. Appx. 633, 635-36 (10th Cir. 2010). While not expressly stated in Magistrate Judge Neureiter's Recommendations, all of these reasons for vacating this fraudulent arbitration award apply.  Specifically, it would be against public policy to force a governmental entity to engage in the process Petitioner has dictated or face hundreds of millions of dollars in an arbitration award based on nothing other than illogical and unsupported nonsense.  Further, Mr. Jones knew that courts have consistently rejected the existence of a contract based on "tacit acquiescence," as he himself has been involved in such litigation, and he intentionally disregarded that law and found in a conclusory fashion that a contract did exist.[11]  Mr. Jones also intentionally disregarded and ignored what is required for a municipality in Colorado to enter into a contract, or what legal standards apply to tort and constitutional claims against governmental entities and/or their employees.  These decisions, or lack thereof, were done in manifest disregard of the law.  Lastly, there was no fundamentally fair process with respect to the alleged arbitration as the City never agreed to participate, was not involved in the selection of the arbitrator, and did not receive any necessary specifics as to the

---

[9] *Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) (providing that to vacate an arbitration award where the arbitrator acts "in manifest disregard" of the law, the moving party must show the arbitrator "knew the law and explicitly disregarded it.").

[10] *See Legacy Trading Co.*, 363 Fed. Appx. At 636 (stating fundamentally fair process requires notice, opportunity to be heard and present relevant and material evidence and argument, and that the decision-maker is not infected with bias).

[11] *U.S. Bank Nat'l Ass'n v. Nichols*, 2019 U.S. Dist. LEXIS 154049, at *1 (N.D. Okla. Sept. 10, 2019) (finding that Sitcomm as the arbitrator determined a contract was formed by failure to respond, "which is a legally bizarre determination contrary to hornbook contract law."); *Domino v. Barr*, 2021 U.S. Dist. LEXIS 64811, at *2 (D. Minn. Feb. 8, 2021) (stating Brett "Eeon" Jones was arbitrator and court found that no implied contract plausibly existed); *Nelson v. Walzl*, 2021 U.S. Dist. LEXIS 155364 (Dist. D.C. Aug. 18, 2021) (referencing Brett Eeon Jones as an arbitrator trying to "make money by selling unwitting consumers fraudulent legal documents and also attempting—so far unsuccessfully—to dupe a court into confirming one of its awards."); *Magee v. Nationstar Mortgage, LLC*, 2020 U.S. Dist. LEXIS 42608, at *4 (N.D. Tex. Mar. 11, 2020 (discussing tacit acquiescence improper method for forming a contract).

hearing process itself, including when and how the hearing would be held.  For all of these reasons, the alleged arbitration award could and was correctly vacated.

In sum, even though Petitioner argues that the City should have no legal remedy whatsoever because of the time that passed between the alleged arbitration award and the City's Objection, which shows the absurdity of this matter in and of itself, the City has established that the entirety of the process and award Petitioner seeks to have confirmed is based on a sham.  As a result, even if the alleged arbitration award is considered, it must be vacated.

**4.**      **The City is Entitled to its Attorney's Fees and Costs.**

Consistent with the City's request that it be awarded its attorney's fees and costs because Petitioner "acted in bad faith and for oppressive reasons," Magistrate Judge Neureiter determined Petitioner's "entire course of conduct in this case demonstrates objective bad faith."[12]  [ECF 15 at 15 & ECF 37 at 18].  Given the Petitioner's course of conduct Judge Neureiter clearly laid out, it is proper for this Court to exercise its inherent authority and award attorney fees.  *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975).

<u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above and in ECF 15 and 28, the city respectfully requests that this Court adopt Magistrate Judge Neureiter's Report and Recommendations [ECF 37], as well as any other and further relief this Court deems just and proper.

---

[12] Contrary to Petitioner's arguments, the bad faith conduct at issue is his conduct in using this court to try to confirm a sham arbitration award despite the clear legal and factual support that he was and has been provided and continually ignored related to that sham award.

Respectfully submitted this 21st day of December, 2021.

s/Ashley Hernandez-Schlagel
Ashley Hernandez-Schlagel
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Phone Number: (303) 691-3737
Fax: (303) 757-5106
Attorneys for Respondent City of Loveland

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2021, I electronically filed the foregoing **THE CITY OF LOVELAND'S RESPONSE TO AMENDED OBJECTION TO RECOMMENDATION** with the Clerk of Court using the CM/ECF system to the following via US Mail:

Eyoel-Dawit Matios
1312 Castlerock Drive
Fort Collins, CO 80521
970-691-7656
PRO SE

*s/Ashley Hernandez-Schlagel*
Ashley Hernandez-Schlagel
Attorney for Respondent
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number:  (303) 691-3737
Facsimile:  (303) 757-5106
ASchlagel@ndm-law.com