IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02194-WJM-NRN

EYOEL-DAWIT MATIOS, In Sui juris Capacity

Petitioner,

v.

CITY OF LOVELAND et al., in care of Stephen C. Adams, City Manager.

Respondent.

---

**ORDER ON
DEFENDANT'S MOTION FOR ATTORNEYS' FEES
(Dkt. #39)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on the City of Loveland's (the "City") Motion for Attorneys' Fees. (Dkt. #39.) The Motion for Attorneys' Fees was referred to me by Judge William J. Martinez on November 24, 2021. (Dkt. #40.) On December 1, 2021, Petitioner Eyoel-Dawit Matios ("Mr. Matios") filed his response to the Motion for Attorneys' Fees. (Dkt. #42.)

## BACKGROUND

On November 10, 2021, I issued a Report and Recommendation recommending denial of Mr. Matios' Petition to Confirm Arbitration Award. (Dkt. #37.) In that Recommendation, I found that Mr. Matios was trying to obtain court confirmation of a bogus $300 million arbitration award against the City, without the City ever having agreed to arbitrate anything. I found that Mr. Matios' attempt to "enforce in federal court

this non-existent arbitration 'contract' and the accompanying patently ridiculous $300 million arbitration award is fraudulent, an undue imposition on the City, and an extreme waste of judicial resources." (Dkt. #37 at 15.)

On February 1, 2022, Judge Martinez adopted in substantial part my Recommendation, agreeing that there was no valid agreement to arbitrate, and ultimately denying both Mr. Matios' Petition to Confirm Arbitration Award and his Motion to Confirm Arbitration Award. (*See* Dkt. #47 at 7.) Final judgment was granted in favor of the City and against Mr. Matios on February 1, 2022. (Dkt. #48.) The matter is now on appeal.

In my Recommendation, in addition to finding no valid agreement to arbitrate, I specifically found that Mr. Matios had acted in bad faith by attempting to enforce a patently fraudulent arbitration award. For ease of reference, I repeat those findings here:

> Here, Mr. Matios' entire course of conduct in this case demonstrates objective bad faith. The Petition from the very beginning was fatally flawed. The City had informed Mr. Matios that any arbitration award would be fraudulent and unenforceable. A simple Google search of the names "Rance Magee," "Brett 'Eeon' Jones," or "Sitcomm Arbitration" would have disclosed to Mr. Matios any number of published articles and court decisions putting him on notice that Sitcomm, and its process of self-executing binding arbitration agreements and inflated arbitration awards, was fraudulent and unenforceable.
>
> Mr. Matios has raised objectively frivolous arguments, either knowingly or recklessly, in his attempt to have the Court confirm a fraudulent arbitration award. As described in detail above, multiple other courts have examined Sitcomm's supposed arbitration process and found it to be bogus. Yet, with multiple filings and objections, Mr. Matios continued to utilize the resources of this Court in his stubborn attempt to have his purported arbitration award confirmed. Perhaps most notably, both the City (in its letters) and the Court (by its Order to Show Cause) put Mr. Matios on notice that the purported arbitration award was likely fraudulent and gave Mr. Matios the opportunity to voluntarily dismiss his Petition. In response, Mr.

> Matios merely doubled down, pressing forward with his insistence that the Court must confirm Sitcomm's $300 million award in his favor. Mr. Matios' conduct in this case is the very definition of frivolous, vexatious, bad faith litigation. There must be consequences for such an abuse of the court system. Mr. Matios' continued pursuit of confirmation of the purported arbitration award—despite indication from the Court that there are grave concerns with the legitimacy of the purported award—signals Mr. Matios' disregard for The City and the Court.
>
> A further basis for finding Mr. Matios has acted in bad faith is his failure to comply with a specific Court directive ordering him to appear for the status conference in this case. If Mr. Matios truly believed he had a legitimate basis to pursue his Petition, he could have made his argument in person to the Court. Instead, after failing to have the status conference vacated, and after being specifically warned that a failure to appear would result in consequences (including, potentially, an award of sanctions), Mr. Matios failed to appear.
>
> For all these reasons, the Court finds that Mr. Matios acted in bad faith.

(Dkt. #37 at 18–20.)

## THE CITY'S MOTION FOR FEES

The City's Motion for Fees (Dkt. #39) includes the affidavit of attorney Ashley Hernandez-Schlagel of the law firm Nathan Dumm and Myer, P.C. (*See* Dkt. #39-1.) Ms. Hernandez-Schlagel was the primary attorney responsible for the representation of the City in this matter. (*Id.* at 1, ¶ 1.) That affidavit recounts that she and senior attorney J. Andrew Nathan did the substantive legal work on this matter. (*Id.* at 1–2, ¶¶ 3, 6.) Two paralegals, Alesandra Sanchez and Kirsten Weihman, also were involved in the defense of the case. (*Id.* at 2, ¶ 4.)

The Hernandez-Schlagel affidavit explains that the Nathan Dumm & Mayer firm has a pre-arranged fee agreement with the Colorado Intergovernmental Risk Sharing Agency ("CIRSA"). (*Id.*, ¶ 5.) Per that agreement, the rates charged in this case were $220 per hour for Ms. Hernandez-Schlagel and $250 per hour for Mr. Nathan. Ms.

3

Sanchez's and Ms. Weihman's paralegal time was charged at $105 per hour. (*Id.*) It is represented that these rates are at or below the prevailing market rates for attorneys in civil practice with the described background and experience. (*Id.*)

Also included in with the City's Motion for Fees are invoices reflecting the time spent by the Nathan Dumm & Myer legal professionals on various tasks needed to defend the case. (*See* Dkt. #39-2.) Those invoices provide a description of the work performed, the amount of time it took to perform the work, and the associated hourly rate charged for the work completed. Per Ms. Hernandez-Schlagel's affidavit, the hours spent were reasonably necessary to defend the matter. (*See* Dkt. #39-1 at 3, ¶ 9.)

The invoices show that a total of 56.50 hours were spent defending the matter, with the vast majority of those hours expended by Ms. Hernandez-Schlagel researching the underlying issues and preparing the City's motion to dismiss (Dkt. #15) and its consolidated response to Mr. Matios' other excessive motions. (Dkt. #35.) Multiplying the total hours by the hourly rates for the legal professionals involved results in a claimed attorneys' fee award of $11,764.50. (*See* Dkt. #39-2.)

Mr. Matios' Response to the Motion for Attorneys' Fees (Dkt. #42), does not address either the reasonableness of the hourly rates charged or the amount of time spent by defense counsel defending the matter. Instead, Mr. Matios merely attempts to reargue the underlying case; asserting, among other things, that the City lacks standing to seek fees or to even contest the confirmation of the Sitcomm arbitration award because it failed to file a motion to vacate the arbitration award within the ninety days required by 9 U.S.C. § 12. (*Id.* at 4.) Mr. Matios also disputes that he had engaged in any conduct that would constitute an abuse of the legal process. (*Id*. at 7–11.) And

finally, relying on *Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758 (10th Cir. 1997), Mr. Matios claims that because the allegedly bad faith acts here occurred pre-litigation, they did not constitute an abuse of the judicial process that would justify an award of attorneys' fees. Mr. Matios argues that the claimed bad faith is not based on any conduct taken *in the course* of the proceedings, "instead, [the City's] complaint is about the legal process of the arbitration itself." (Dkt. #42 at 12.)

## ANALYSIS

While dismissal terminates a court's subject-matter jurisdiction over the substantive merits of an action, the court nonetheless "retains the inherent authority to issue orders on matters collateral to the merits." *Lundahl v. Halabi*, 600 F. App'x 596, 605 (10th Cir. 2014). This authority extends to conducting proceedings to address requests for sanctions and imposing "any sanction for abusive conduct for which sanctions are authorized by the federal rules of procedure or federal statutes, including awarding costs or attorney's fees." *Id*. at 605–06.

Federal courts have certain "inherent powers" which are not conferred by rule or statute "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Among these powers is a court's "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *see also Rice v. NBCUniversal Media*, LLC, 2019 WL 3000808, at *3–4 (S.D.N.Y. July 10, 2019) (imposing sanctions pursuant to court's inherent powers). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. But it is undisputed that "a court may assess attorney's fees

5

when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id*. at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)).

One permissible sanction is an assessment of attorneys' fees, requiring the party that has engaged in misconduct to reimburse the legal fees and costs of the other party. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Such a sanction must be compensatory rather than punitive in nature, and any attorneys' fee award is limited to the fees "the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have occurred but for the bad faith." *Id*. at 1184.

Sanctions under this Court's inherent authority require a finding of bad faith on the part of the attorney or party to be sanctioned. *See Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246 (10th Cir. 2015) (upholding sanction award under the court's inherent authority finding bad faith by a party in failing to comply with order enforcing settlement); *Chambers*, 501 U.S. 32 (1991) (holding there was no abuse of discretion in district court's resort to inherent power to impose sanctions for bad-faith conduct, even though some conduct was also sanctionable under the rules of civil procedure).

I have already determined that the Mr. Matios' prosecution of this case was frivolous, without any basis in fact, and conducted in bad faith. It is therefore appropriate to sanction Mr. Matios by requiring him to pay the attorneys' fees reasonably incurred in the defense of this lawsuit. Mr. Matios' reliance on the Tenth Circuit's *Towerridge* case is not persuasive. Though Mr. Matios' procurement of the fraudulent arbitration award necessarily occurred before the litigation, his attempt to have this Court confirm the

fraudulent arbitration award is *itself* an abuse of the litigation process that merits the imposition of sanctions. Thus, the sanction imposed here "does not reach purely prelitigation bad-faith conduct." *Towerridge*, 111 F.3d at 766.

As to the reasonableness of the specific amount of fees requested, Mr. Matios does not challenge either the hourly rates or the hours spent defending the case. Courts in the Tenth Circuit apply the so-called "lodestar method" to assess whether a proposed fee request is reasonable. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990). The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which produces a presumptively reasonable fee." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010). The party seeking fees is to make a good faith effort to exclude from the fee request "hours that are excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). And a court is to approach the reasonableness inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). But a trial judge must not merely "eyeball" a fee request and cut it down by an arbitrary percentage. *Id*. Factors to be considered in assessing the reasonableness of a fee after accepting the lodestar as a starting point include (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Id*.

I have carefully reviewed the invoices for legal fees incurred by the City. Further, based on my own experience with other matters and other decisions of this Court, I agree that the rates charged for work performed in this matter were at or below the prevailing market rates for civil lawyers and paralegals in Denver, Colorado. *See, e.g., Restore Life USA, Inc. v. Life News.com*, No. 1:18-cv-02472-DDD-MEH, 2020 WL 5221766, at *2 (D. Colo. Aug. 17, 2020) (approving rates of $425 an hour for partner in a national law firm with 14 years of experience and $205–$250 for associates at the same national firm in prosecuting a sanctions motion); *Waller v. Lovingier*, No. 14-cv-02109-WYD-NYW, 2017 WL 11545516, at *5 (D. Colo. Dec. 5, 2017) (approving rates of $450 per hour for lead counsel); *White v. Chafin*, No. 13-cv-01761-CMA-MJW, 2016 WL 9735066, at *4 (D. Colo. Sept. 23, 2016) (approving rates of $500 per hour for lead counsel and $275–$450 per hour for co-counsel); *Ebonie S. v. Pueblo Sch. Dist. 60*, No. 09-cv-0858-WJM-MEH, 2016 WL 1110442, at *3 (D. Colo. March 22, 2016) (approving rates of $260-$475 per hour for attorneys with varying years of experience); *Martinez v. Valdez*, 125 F. Supp. 3d 1190, 1212 (D. Colo. 2015) (approving rates of $300–$500 per hour for counsel); *Barnett v. Bd. of Cnty. Comm'rs of Montrose*, No. 14-cv-01765-JAP-GPG, 2015 WL 13614118, at *5 (D. Colo. Dec. 14, 2015) (approving rates of $400 per hour for lead counsel with nine years of experience and $300 per hour for two attorneys with seven years' experience).

Additionally, I find that the tasks performed were reasonably necessary to the defense of this case. On close inspection, it may have been apparent from the beginning that Mr. Matios' claim that the City was obligated to pay him $300 million based on a Sitcomm arbitration award was frivolous. But the recognition that a claim is

8

baseless is one thing. Explaining the frivolity of the claim to a court while responding to and refuting the various arguments raised by Mr. Matios is another. Mr. Matios' filings had at least a superficial patina of legitimacy to them. Researching and explaining why the arbitration award itself was fraudulent and why Mr. Matios was not entitled to the relief sought took the attorneys' time and the City's money. That was money that the City never should have had to spend, and it is money that Mr. Matios will be ordered to reimburse as a sanction for his bad faith conduct.

## CONCLUSION

It is hereby **ORDERED** that on or before May 2, 2022, the Petitioner, Eyoel-Dawit Matios, shall pay to the Respondent, the City of Loveland, the sum of $11,764.50 as a sanction for having brought, in bad faith, a frivolous petition for confirmation of a fraudulently obtained arbitration award.

**NOTICE: Rule 72(a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a Magistrate Judge to hear and decide, the Magistrate Judge must issue a written order stating the decision. Within fourteen (14) days after service of a copy of this Minute Order, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order.** *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.* **989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders);** *but see Morales-Fernandez v. INS,* **418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice**

**require review, such as when a "***pro se*** litigant has not been informed of the time period for objecting and the consequences of failing to object").**

Date: April 5, 2022

N. Reid Neureiter
United States Magistrate Judge